Kevin J. McInerney, Esq., SBN 46941
Kelly McInerney, Esq., SBN 200017
Charles A. Jones, Esq., SBN 224915
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Telephone:      (775) 849-3811
Facsimile:      (775) 849-3866
kevin@mcinerneylaw.net
kelly@mcinerneylaw.net
caj@mcinerneylaw.net

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOM CHAU,** individually and on behalf of all others similarly situated, | CASE NO. C 07-03541 MMC |
| Plaintiffs, | **PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S MOTION FOR SUMMARY JUDGEMENT** |
| v. | Date: November 30, 2007 |
| **INTERNATIONAL BUSINESS MACHINES,** a Corporation, and DOES 1-20, inclusive, | Time: 9:00 a.m. |
| Defendants. | Honorable Maxine M. Chesney |

# TABLE OF CONTENTS

Table of Contents.................................................................... i

Table of Authorities ............................................................... ii

I.    Introduction.................................................................1

II.   Movant Has Failed To Prove That There Are

No Disputed Material Issues....................................................... 2

III.  A Genuine Issue Of Material Fact Exists Because The Payment

Of The Plaintiff's Final Wages Was Conditioned On The Plaintiff

Signing The Release................................................................. 2

IV.   The Release Is Void........................................................ 3

A.  California Law................................................................ 4

1.  The Legislative History Of §206.5 Confirms That

Waivers/Releases Of Wages Are Void............................... 8

2.  Federal Law Concurs And Confirms The Public Policy

Behind The Prompt Payment Of All Wages Owed................ 9

a.  *Reid*, *Sullivan*, and *Reynov* are Inapposite

With Respect To §206.5.................................. 12

b.  The Recent Decisions In Warner v. Experian

And Zheng v. Siebel Provide Persuasive Reasoning

That The Release Is Void and Unenforceable............. 16

Conclusion.......................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*D.A. Shulte, Inc. v. Ganji*
(1946) 328 U.S. 108................................................................. 8, 10

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*
(2001) 2001 WL 1403007 (N.D. Ill.)...................................... 10

*Lerwill v. Inflight Services*
(1974) 379 F. Supp. 690........................................................ 10

*Lynn's Food Stores, Inc. v. United States*
(11th Cir. 1982) 679 F. 2d 1350............................................ 8, 10

*O'Brien v. Encotech Const. Services, Inc.*
(2002) 183 F.Supp.2d 1047................................................... 10

*Oubre v. Entergy Operations, Inc.*
(1998) 522 U.S. 422.............................................................6

*Reynov v. ADP Claims Services Group, Inc.*
(2007) U.S. Dist. LEXIS 31631 (N.D. Cal. Apr. 30, 2007)............................ *infra*

## STATE CASES

*Bell v. Farmers Ins. Exchange*
(2001) 87 Cal.App.4th 805.................................................... 11

*Boothby v. Atlas Mechanical, Inc.*
(1992) 6 Cal.App.4th 1595.................................................... 20

*California Grape and Tree Fruit League v. Industrial Welfare Commission*
(1969) 268 Cal.App.2d 692.................................................. 6

*City of Saratoga v. Hinz*
(2004) 115 Cal.App.4th 1202............................................... 5

*Cuadra v. Millan*
(1988) 17 Cal.4th 855.......................................................... 6

*Earley v. Superior Court*
(2000) 79 Cal.App.4th 1420.................................................. 6

*Gentry v. Superior Court (Circuit City)*
(2007) 42 Cal.4th 443..................................................... 7

*Ghory v. Al-Lahham*
(1989) 209 Cal.App.3d 1487.............................................. 6

*Industrial Welfare Com. v. Superior Court*
(1980) 27 Cal.3d 690.................................................... 6

*Ramirez v. Yosemite Water Co.*
(1999) 20 Cal. 4th 785.................................................. 5

*Reid v. Overland Machined Products*
(1961) 55 Cal.2d 203............................................... *infra*

*Skyline Homes, Inc. v. Department of Industrial Relations*
(1985) 165 Cal.App.3d 239.............................................. 6

*Sullivan v. Del Corte Masonry Co.*
(1965) 238 Cal.App.2d 630............................................. 20

*Vikco Insurance Services, Inc. v. Ohio Indemnity Co.*
(1999) 70 Cal.App.4th 55............................................... 5

*Warner v. Experian*
Los Angeles Superior Court Case No. BC362599.........................16

*Woods v. Fox Broadcasting Sub., Inc.*
(2005) 129 Cal.App.4th 344............................................ 20

*Zheng v. Siebel*
San Mateo Superior Court Case No. 435601........................*infra*

## CALIFORNIA STATUTES

Cal. Civil Code §1668................................................ 8, 20

Cal. Labor Code §98.2................................................... 7

Cal. Labor Code §98.2(e)............................................... 7

Cal. Labor Code §206.............................................. *infra*

Cal. Labor Code §206.5............................................ *infra*

Cal. Labor Code §1193.5.......................................................................... 7

Cal. Labor Code §1194................................................................*infra*

## OTHER REFERENCES

*7 Witkin, Calif. Procedure (4th Ed. 1997), Judgment §315 and §321*.................. 7

# I.

## INTRODUCTION

The Defendant employer seeks summary judgment relying on a waiver executed by the Plaintiff at the time of his layoff from IBM. Defendant's sole evidentiary submission is the Declaration of Keith Williams. That declaration lacks foundation, is conclusory, and is incompetent. Its specific defects are spelled out in our concurrently filed Plaintiff's Objections to and Motion to Strike the Declaration of Keith Williams. The movant's contention that there is no disputed issue of material fact is dependent upon the viability of the Williams declaration.

Beyond this, however, is the reality that the Plaintiff, in his responsive declaration, makes it clear that IBM conditioned the payment of his last salary check on his signing the waiver. Because his salary was undisputed wages owed, this withholding was a glaring violation of the California Labor Code Section 206. This is certainly a fact that is material and one which IBM is unlikely to accede to at this juncture. That IBM's conduct was illegal and that the resultant release void is made clear by the very cases relied upon by the Defendant. *Reid v. Overland Machined Products* (1961) 55 Cal.2d 203, 206-207; *Del Conte Masonry Co.* (1965) 238 Cal.App.2d 630, 633-634.

Finally, even if there were no disputed issues of fact, counsel for the Plaintiff submit that the *Reynov* case was *sui generis* and that Labor Code Sections 206.5 and 1194 prohibits the enforcement of the waiver in this case with respect to overtime.

\\\

\\\

\\\

\\\

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S
MOTION FOR SUMMARY JUDGMENT**

**Case No.
C07-03541 MMC**

## II.

## MOVANT HAS FAILED TO PROVE THAT THERE ARE
## NO DISPUTED MATERIAL ISSUES

To meet its burden of showing that there are no disputed issues of material fact, the movant relies solely upon the declaration of Keith Williams. That very brief document is, however, not admissible. It lacks the most rudimentary element of admissibility – foundation. It is also conclusory at critical junctions and is overarchingly incompetent. Plaintiff files concurrently with the Opposition a separate Plaintiff's Objections to and Motion to Strike the Declaration of Keith Williams. That Motion to Strike points out the specific deficiencies of the Williams Declaration paragraph by paragraph. Because the movant has failed to meet its burden, the Motion for Summary Judgment should be denied.

## III.

## A GENUINE ISSUE OF MATERIAL FACT EXISTS BECAUSE
## THE PAYMENT OF THE PLAINTIFF'S FINAL WAGES WAS CONDITIONED
## ON THE PLAINTIFF SIGNING THE RELEASE

A genuine issue of material fact does exist in this case, precluding summary judgment in Defendant's favor. Contrary to Defendant's assertion that "Chau did not need to release his claims against IBM to receive his Final Wages" [Defendant's Motion for Summary Judgment, page 2, lines 14-15], the Plaintiff asserts that in order to receive his salary and earned vacation ("Final Wages") through his last day of employment, he had to sign Defendant's release. As set forth in his declaration, his manager, when informing him that he was being laid off due to a reduction in the workforce, stated that in order to receive his two checks (his Final Wages and severance payment), he had to first sign the layoff package which apparently contained a release. Chau Declaration ¶4. IBM then terminated the Plaintiff. Chau Declaration ¶¶4, 5. It

2

was not until the Plaintiff later informed his manager that he would sign the release that he was told he could come pick up his two checks. Chau Declaration ¶8.  In fact, it was not until the Plaintiff handed over his signed release to his manager that he was given his two checks.  Chau Declaration ¶8.  As can be seen by Defendant's papers, the Plaintiff signed the release on the same day (February 6, 2004) that Defendant states IBM paid the Plaintiff his salary and earned vacation. [Defendant's Motion for Summary Judgment, page 2, lines 13-14; signed General Release attached as Exhibit A to the Declaration of Keith Williams.]

For this reason alone, Defendant's Motion for Summary Judgment cannot be granted because there is a disputed issue of material fact.  Moreover, any release signed by the Plaintiff is void under Labor Code §206, as discussed at length below, because the Defendant conditioned the Plaintiff receiving his Final Wages on him signing the release.  Even if this were not the situation, the release would still be void under Labor Code Sections 206.5 and 1194, as discussed below.   In assessing the discussion below, the Court is respectfully asked to note that Mr. Chau has submitted admissible testimony that he was nonexempt under the California Labor Code and entitled to overtime.  Chau Declaration ¶1.  IBM has submitted no admissible evidence on this issue.  This means that the Plaintiff's entitlement to overtime pay within the context of the instant summary judgment motion is <u>not</u> in dispute and, therefore, could not be subject to a proper waiver.

## IV.

## THE RELEASE IS VOID

Overtime laws (state and federal) are remedial legislation that set forth minimum working conditions for employees.  Despite the fact that overtime entitlement cannot be waived

3

under either state or federal law, Defendant claims that Plaintiff waived or released his overtime entitlement. The waiver/release being relied upon by Defendant is attached to the Declaration of Keith Williams as Exhibit A to Defendant's Motion for Summary Judgment.

## A.    CALIFORNIA LAW

**Statutory Construction**

Three California statutes are directly implicated by Defendant's motion for summary judgment—Labor Code §§206, 206.5 and 1194. Those statutes read as follows:

**§206.  Payment of undisputed amount; failure to pay determined amount; treble damages.**

    (a)    In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed.

    (b)    If, after an investigation and hearing, the Labor Commissioner has determined the validity of any employee's claim for wages, the claim is due and payable within 10 days after receipt of notice by the employer that such wages are due. Any employer having the ability to pay who willfully fails to pay such wages within 10 days shall, in addition to any other applicable penalty, pay treble the amount of any damages accruing to the employee as a direct and foreseeable consequence of such failure to pay.

**§206.5.  Prohibition against, and invalidity of, release of claim for wages; Violation as misdemeanor.**

No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wages has been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

**§1194.  Recovery by employee of unpaid balance of full amount of minimum wage or overtime compensation.**

PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S
MOTION FOR SUMMARY JUDGMENT

Case No.
C07-03541 MMC

(a)   Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest therein, reasonable attorney's fees, and costs of suit.

The task of this Court is to use the well-established rules of statutory construction in order to guide statutory interpretation. Any inquiry regarding statutory meaning "begins by giving the statutory language its ordinary everyday meaning, construed in the context of the purposes and objectives of the Legislature." *Vikco Insurance Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App. 4th 55, 62. The rules of interpretation further instruct that:

> In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such cases, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 910-911, 108 Cal.Rptr.2d 165, 24 P.3d 1191, quoting *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272, 105 Cal.Rptr.2d 457, 19 P.3d 1196.)

*City of Saratoga v. Hinz* (Cal.App. 6 Dist., 2004) 9 Cal. Rptr.3d 791, 800-801.

Under the circumstances presented here, <u>special</u> interpretive considerations apply. *Ramirez v. Yosemite Water Co, Inc.* (1999) 20 Cal.4th 785, 794 - 795, held (ellipsis in orig. internal cites omitted):

> "[P]ast decisions…teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the

5

statutory provisions are to be liberally construed with an eye to promoting
such protection."

The state's minimum wage and wage payment laws involve public rights and embody the state's public policy. There is "a clear public policy . . . that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of the workers." (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1429-30.) Public policy has long favored the "full and prompt payment of wages due an employee." (*Cuadra v. Millan* (1988) 17 Cal.4th 855.). California's public policy, which favors the "full and prompt payment of wages due an employee," is codified within Labor Code §§206 and 206.5.[1]

Neither contract jurisprudence nor principles of equity can vitiate a statutory mandate. (*Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487). Statutory restrictions on employee waivers of statutory rights are strictly and scrupulously enforced. (*Ghory v. Al-Lahham, supra*; cf. *Oubre v. Entergy Operations, Inc.* (1998) 522 U.S. 422).

> The statutory command is clear: An employee "may not waive" a [statutory] claim unless the waiver or release satisfies the [statutory] requirements. The policy of the [statute]…is designed to protect the rights and benefits of…workers. The [statute] implements Congress's policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word.

> (*Oubre,* 522 U.S. at pp. 426-427).

---

[1] In fact, this Court cannot conduct the proper statutory interpretation in this case without taking into account the special rules of statutory construction applicable to this remedial legislation. Many courts have commented on this well recognized legal principle – all with the same result – *Skyline Homes, Inc. v. Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 250 ["Premium pay for overtime is the primary device for enforcing limitations on the maximum hours of work. (*citation omitted.*) Remedial statutes should be liberally construed to promote the general object sought to be accomplished. (*citation omitted.*)]; *California Grape and Tree Fruit League v. Industrial Welfare Commission* (1969) 268 Cal.App.2d 692, 698 ["Remedial statutes such as those under consideration are to be liberally construed. (*citation omitted.*) They are not construed within narrow limits of the letter of the law, but rather are to be given liberal effect to promote the general object sought to be accomplished."]; *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702 ["past decisions additionally teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection."].

---

6

1    It is clear from the statutory mandates that an agreement which purports to release all or

2    any portion of a valid statutory overtime claim is tantamount to an "agreement to work for a

3    lesser wage," and therefore violates the prohibition in §1194(a) on contractually depriving an

4    employee of the right to establish that there are statutory overtime wages due that have not

5    been paid.  Section 206.5 expressly provides that a "claim...on account of wages due" cannot

6    be released "unless payment of such wages has been made."  Plaintiff's overtime claim is

7    entitled to even ***more*** protection than general wage claims subject to Labor Code §206.  Labor

8    Code §1194 imposes a minimum, or floor, for certain wage entitlements (i.e., minimum wages

9    and overtime wages).  In unequivocal language, §1194 prohibits "any agreement to work for a

10   lesser wage..." than that imposed by the statutory legal minimums.  As the California Supreme

11   Court wrote very recently, "In short, the statutory right to receive overtime pay embodied in

12   Section 1194 is unwaivable."  *Gentry v. Superior Court (Circuit City)* (2007) 42 Cal.4th 443,

13   456.[2]  Labor Code §1194 leaves <u>no room</u> for Defendant's attempt to enforce an overtime-

14   related release.

---

[2] The Court reiterated, "The public importance of overtime legislation has been summarized as follows: 'An employee's right to wages and overtime compensation clearly have different sources.  Straight-time wages (above the minimum wage) are a matter of private contract between the employer and employee.  Entitlement to overtime compensation, on the other hand, is mandated by statute and is based on an important public policy... 'The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. [Citations.] California courts have long recognized [that] wage and hour laws 'concern not only the health and welfare of the workers themselves, but also the public health and welfare.' ... Furthermore, the Legislature's decision to criminalize certain employer conduct reflects a determination [that] the conduct affects a broad public interest....Moreover, the overtime laws also serve the important public policy goal of protecting employees in a relatively weak bargaining position against 'the evil of overwork.'" *Id.* at 456.

There are only <u>two contexts</u> in which the statutory prohibitions on releases are not operative – neither of which are alleged by Defendant here.  These two exceptions contain certain safeguards that temper the policies underlying the anti-waiver provisions.  First, California law authorizes and validates employee wage settlements that are entered into under the supervision of the Labor Commissioner, whether this involves administrative oversight of remedial payments agreed to by an employer (Lab. Code §1193.5, subd. (b)) or the approval of settlement agreements reached in pending administrative proceedings (Lab. Code §98.2(e)).  Second, California law will enforce an employee wage settlement entered into in a pending adversarial civil action where the stipulated settlement provides for and supplements a final resolution of the action through the entry of a dismissal with prejudice or a judgment in favor of one of the parties.  (*7 Witkin, Calif. Procedure (4th Ed. 1997), Judgment* §315, at pp. 865-867, and §321, at pp. 872-873; cf. Lab. Code §98.2, subd. (b)).  As with many areas of wage and

---

7

**PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S**
**MOTION FOR SUMMARY JUDGMENT**

**Case No.**
**C07-03541 MMC**

In other words, these statutory enactments for the protection of workers <u>explicitly</u> preclude the "waiver and release" affirmative defenses being alleged by Defendant. Under the anti-waiver provisions of Labor Code §§206.5 and 1194, a privately negotiated waiver or release is null and void.

Civil Code §1668 also plays a key role in this kind of analysis. Civil Code §1668 holds: "All contracts *which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Italics added.) Defendant's release, purporting to relieve the employer from the unambiguous statutory minimum overtime requirements of California law, falls within the ambit of that code section and should be rejected by this Court.

## 1.     THE LEGISLATIVE HISTORY OF §206.5 CONFIRMS THAT WAIVERS/RELEASES OF WAGES ARE VOID.

When one does look at the legislative history behind §206.5, it is clear that the intent of §206.5 was entirely consistent with the plain language of the statute. Section 206.5 was

---

hour law, the California approach largely mirrors the approach followed under federal law, which bars the enforcement of employee wage settlements unless they have been entered into under the supervision of the Department of Labor pursuant to a stipulation approved by the court in a pending civil action. (*Lynn's Food Stores, Inc. v. United States, supra; Schulte, Inc. v. Ganji, supra*). Under both the California and federal approaches, the existence of either administrative agency oversight or adversarial litigation proceedings serves to ensure that statutory wage and hour protections will not be abridged or eroded and that the willingness of an employee to invoke those protections will not be overborne by the superior bargaining power or overreaching of an employer.

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, ... the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching... But to approve an "agreement" between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of FLSA.

(*Lynn's Food Stores, Inc. v. United States, supra*, 679 F. 2d at 1354).

8

added to the California Labor Code in 1959 following legislative passage of Assembly Bill

302. Assembly member Edward Gaffney introduced assembly Bill 302. An inter-

departmental communication from the Department of Industrial Relations to the Legislative

Secretary in the Governor's Office summarizes best the intent of §206.5:

> This bill is designed to provide remedy against abuses on the part of an employer who requires an employee to release his claim for wages as a condition of settlement on the claim or an amount less than the wages actually due. **It will aid the Division of Labor Law Enforcement in securing full payment of unpaid wages on behalf of claimants even though they had previously waived part of what was justly due to them**. (Emphasis added).[3]

In seeking the above passage, the Department of Industrial Relations confirmed the

intent of §206.5 is: 1) "to provide remedy against abuses on the part of an employer who

requires an employee to release his claim for wages as a condition of settlement on the claim or

an amount less than the wages actually due"; and 2) to aid the DLSE in securing full payment of

wages on behalf of claimants even though they had previously waived them.

### 2.    FEDERAL LAW CONCURS AND CONFIRMS THE PUBLIC POLICY BEHIND THE PROMPT PAYMENT OF ALL WAGES OWED.

Federal law deals with this issue when interpreting and enforcing the federal wage and

hour laws in the same manner. Federal law also strictly forbids enforcement of such wage

releases. The overriding purpose of these state and federal statutory prohibitions on releases is

to secure employer compliance with the wage and hour laws and to prevent employers from

using their superior economic power to abridge or diminish critical wage and hour protections;

accordingly, the federal legislature has determined that implementation of these policy

objectives is to be accomplished by treating privately negotiated releases as completely

---

[3] A true and correct copy of the Department of Industrial Relations correspondence to the Governor's office is marked and attached to Plaintiff's Request for Judicial Notice as Exhibit 1.

PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S                    Case No.
MOTION FOR SUMMARY JUDGMENT                                  C07-03541 MMC

1   ineffectual and an absolute nullity.  (See *Lynn's Food Stores, Inc. v. United States* (11th Cir

2   1982) 679 F. 2d 1350; *D.A. Schulte, Inc. v. Ganji* (1945) 328 U.S. 108).

3          Under the federal minimum working condition laws embodied in the Fair Labor

4   Standards Act (FLSA), any release or waiver of overtime compensation by employees has no

5

6   effect because as a matter of law, employees may not waive their right to overtime

7   compensation.

8

9              … The legislative history of the FLSA…show[ed] an intent on the part
            of Congress to protect certain groups of the population from
10           substandard wages and excessive hours ... [and t]he statute was a
            recognition of the fact that due to the unequal bargaining power as
11           between employer and employee, certain segments of the population
            required compulsory legislation to prevent private contracts on their
12           part which endangered national health and efficiency...*Id.* at 706.  In
            light of this purpose, the Court concluded that to allow waiver of
13           statutory wages by agreement or waiver of the employee's right to
            liquidated damages "would nullify the purposes of the Act." *Id.* at 707;
14           *see also Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728,
            740 (1981) ("This Court's decisions interpreting the FLSA have
15           frequently emphasized the non-waivable nature of an individual
            employee's right to a minimum wage and to overtime pay under the
16           Act."); *Walton,* 786 F.2d at 306  (The FLSA "is designed to prevent
            consenting adults from transacting about minimum wages and
17           overtime pay.  Once the Act makes it impossible to agree on the
            amount of pay, it is necessary to ban private settlements of disputes
18           about pay. Otherwise the parties' ability to settle disputes would allow
            them to establish sub-minimum wages.") (citing *Lynn's Food Stores,*
19           *Inc. v. United States,* 697 F.2d 1350, 1352 (11th Cir.1982)).
20

21          *Ladegaard v. Hard Rock Concrete Cutters, Inc.* (2001) 2001 WL 1403007 (N.D. Ill.) at

22   *4.  See also *Lerwill v. Inflight Services* (1974) 379 F. Supp. 690.

23          In *O'Brien v. Encotech Const. Services, Inc.* (2002) 183 F.Supp.2d 1047, 1048

24   (N.D.Ill.), the Court echoed the important public policy concerns regarding laws established to

25

26   ensure the full and prompt payment of all wages owed to employees.

27

28           Such laws provide a floor, both as to amount and frequency, below which
            parties are precluded from contracting with respect to payment for labor
            services.  Such laws, by their very nature, deny parties the right to contract

for the payment of wages at amounts less, and at intervals less frequent, than the law requires; it is their manifest public policy to limit freedom of contract with respect to the payment of wages in order to serve more important public purposes. Permitting an employer to violate a minimum wage law, and escape legal consequences by paying an employee something to forget about the violation, undermines the proper functioning of these laws almost as effectively as simply failing to follow them in the first instance.

California has long looked to the federal law when interpreting California's wage and hour laws. In *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 817, the court held:

In *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658, our high court noted, "Federal decisions have frequently guided our interpretation of state labor provisions the language of which parallels that of federal statutes." Court of Appeal decisions add: "Because the California wage and hour laws are modeled to some extent on federal laws, federal cases may provide persuasive guidance." (*Nordquist v. McGraw-Hill Broadcasting Co., supra,* 32 Cal.App.4th at p. 562.) "California courts have recognized that California's wage laws are patterned on federal statutes and that the authorities construing those federal statutes provide persuasive guidance to state courts." (*Monzon v. Schaefer Ambulance Service, Inc., supra,* 224 Cal.App.3d at p. 31; *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 726, fn. 1; *Alcala v. Western Ag Enterprises* (1986) 182 Cal.App.3d 546, 550.).

An agreement which releases all or any portion of a valid statutory overtime claim is tantamount to an "agreement to work for a lesser wage," and therefore violates the prohibition in §1194(a) against contractually depriving an employee of the right to establish that there are statutory overtime wages due that have not been paid.

Section 206.5 expressly provides that a "claim...on account of wages due" cannot be released "unless payment of such wages has been made." In other words, this statutory enactment for the protection of workers explicitly precludes an employee from releasing a claim which seeks to recover wages that have not been paid. Under the anti-waiver provisions

of Labor Code §§206.5 and 1194, *a privately negotiated release is null and void even if it is the product of a bona fide dispute between the employer and employee*.

In the case at bar, the Defendant conditioned the receipt by Plaintiff of his Final Wages on him signing the release. As discussed at the beginning of this Opposition, the Plaintiff was told that he could receive neither check, i.e., neither his wages and vacation due and owing through his last day of employment nor his severance payment, until he signed the release. As such, this clearly violates Labor Code §206.5. Even if the Defendant had not conditioned his receipt of his Final Wages on the Plaintiff's signature of the release, the release would still be void for the reasons set forth below.

### a. *Reid, Sullivan,* And *Reynov* Are Inapposite With Respect To §206.5

The Defendant relies on *Reid v. Overland Machined Products* (1961) 55 Cal.2d 203 and *Sullivan v. Del Corte Masonry Co.* (1965) 238 Cal.App.2d 630 to the effect that an "employer and employee may…compromise a bona fide dispute over wages."[4] This language in *Reid* neither considered nor addressed: a) Labor Code §206.5, which could not apply since the events in *Reid* predated the statute's enactment; or b) Labor Code §1194(a) which had not yet been enacted. *Reid* is not authority for how the provisions of §§206.5 and 1194 would be applied to employee settlements of wage claims.

It is clear that the *Sullivan* decision, in turn, was a mirror image of *Reid*; there, the court simply repeated the statement from *Reid* in the course of adopting *Reid's* rationale and holding - which were based exclusively upon an application of Labor Code §206. Once again, the statement was dicta; and although the court quoted §206.5, it is clear from the opinion that the

---

[4]Not only was the statement in *Reid* dicta, but it was based exclusively upon the court's consideration and application of Labor Code §206, not §206.5. That section does not deal with waivers or releases of statutory rights; rather it imposes a duty on the employer to unconditionally pay any wages conceded to be due, and leave the employee whatever remedies the employee may have as to any wages that are disputed.

12

court's decision was based entirely on the reasoning in *Reid* and on the *Reid* court's interpretation and application of only §206.  In other words, in following *Reid*, which omitted any mention of §206.5, the *Sullivan* court also did not address that section's import or significance.  *Sullivan*, of course, also did not consider §1194, since that statute had not yet been enacted.[5]  In short, *Sullivan* was entirely controlled by *Reid* and did not extend beyond the confines of *Reid's* declaration of the effect to be accorded Labor Code §206.  It follows that *Sullivan* is likewise not authority for how §§1194 and 206.5 would be applied to employee wage settlements.

Defendant hangs its hat on *Reynov v. ADP Claims Services Group, Inc.* 2007 U.S. Dist. LEXIS 31631 (N.D. Cal. Apr. 30, 2007), claiming that the decision is "strikingly similar" [Defendant's Motion for Summary Judgment, page 5, line 21].  However, *Reynov* is actually strikingly different.  To say that Reynov's attorneys were improvident in bringing that action would be an understatement.  While *Reynov* also involved a summary judgment motion, the facts there were far more developed.  We have attached the Defendant's Motion for Summary Judgment and its reply and ask that this Court take judicial notice of this document.  It is Document 50 filed in that case (C 06-02056 CW) in this District.  As can be seen from those documents, ADP had provided admissible evidence that Reynov was in fact an exempt employee (Doc. 50, p. 2-3).  Reynov believed while he was still employed that he was entitled to overtime and began keeping a personal calendar in which he noted his hours worked.  Before his termination, he wrote to the human resources department claiming that he had worked overtime and threatening to bring a lawsuit.  After Reynov had consulted with an attorney, he signed a retainer with that attorney to file a class action for unpaid overtime and other claims.

---

[5] *Reid* and *Sullivan* did not involve statutory wage claims.  *Reid* and *Sullivan* involve bonus wage computations, and do not implicate Section 1194.

PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S
MOTION FOR SUMMARY JUDGMENT

Case No.
C07-03541 MMC

Reynov was not being laid off and ADP was under no obligation, either by statute or by company policy, to pay Reynov any money. However, Reynov met with an ADP representative, months after he had retained the attorney, and bargained with ADP and finally arrived at a written agreement under which he would resign from ADP, release ADP from any and all claims, known and unknown, and agreed to accept payment of $22,000 above and beyond the salary and accrued vacation time that were paid to him (Doc. 50, p. 3-6). It was after Reynov became aware of his overtime claim, had retained a class action attorney to sue for overtime, had negotiated for a separation payment which was not owed to him under company policy, had accepted that extra payment, and signed a release that Reynov's attorney filed a class action suit against ADP with Reynov as the lead plaintiff. It is not surprising, therefore, that Judge Wilken upheld the waiver and granted summary judgment to the employer. It is somewhat amazing that her opinion was not more critical of the plaintiff and his counsel.

The factual scenario in our case is almost 180 degrees different. The Plaintiff was laid off and this came as a surprise to him. He was owed salary and unused vacation time and he was also owed additional compensation under the company's layoff policies. However, he was told that to get checks for these sums he first had to execute the layoff package papers which included a release. He was terminated first and then signed the layoff papers so that he could get his checks. At the time he signed these papers he was unaware that he had a claim for misclassification and overtime pay. Unlike the motion in *Reynov*, we have here an issue of whether his wages due were withheld and conditioned upon his execution of a release. The only admissible evidence (Chau's declaration) is that this is what happened. And, unlike in

---

14

*Reynov*, the defendant has put nothing in the record to show that Chau was exempt and, therefore, not entitled to receive overtime.

Unlike the defendant in the *Reynov* case, the Defendant here has failed to make even the most basic evidentiary showing in its Motion for Summary Judgment that the Plaintiff was properly classified as exempt. In *Reynov*, the defendant at least submitted the Blazquez declaration setting forth that the plaintiff "performed specialized and technical work which required special training, experience and knowledge...[and] regularly exercised independent judgment and was only under general supervision." *Reynov, supra*, at *2-3. Simply referring to one paragraph in its Answer falls woefully short of the need to present <u>evidence</u> to establish that a bona fide dispute as to Chau's entitlement to overtime exists or existed.[6]

Third, and perhaps most important, is the fact that the plaintiff in *Reynov* retained an attorney to represent him "in all claims for violations of the Labor Code and any other related laws against Automatic Data Processing, Inc." <u>prior</u> to signing the release. *Id.* at *3. The plaintiff had submitted "evidence in a sworn declaration to this Court that he was aware of his potential overtime claims when he signed the [release]." *Id.* at *10, fn.4. As a result, the Court found plaintiff's argument that he was unaware of his potential overtime claims when he signed the release to be unavailing. However, contrary to the facts in *Reynov*, in the instant case, the plaintiff has provided evidence in a sworn declaration that at the time he signed the release for IBM, he was unaware of his potential overtime claims and he did not become aware of them until much later. Chau Declaration ¶10.

\\\

\\\

---

6 The Declaration of Keith Williams, the only purported evidence submitted by IBM, says only that "IBM <u>classified</u> Mr. Chau as an exempt employee...". Williams Declaration ¶3 (emphasis added.).

15

1

2

b.  **The Recent Decisions In *Warner v. Experian* And *Zheng v. Siebel*
Provide Persuasive Reasoning That The Release Is Void And
Unenforceable.**

3

4

5

Although certainly not binding precedent for this Court, Plaintiff has provided copies of

two recent decisions by California trial courts grappling with this purported waiver of wages.

6

Plaintiff contends that, given the facts of this case, the decisions in *Warner v. Experian*, Los

7

Angeles Superior Court Case No. BC362599 issued by Hon. Carolyn B. Kuhl on September 21,

8

9

2007 and *Zheng v. Siebel*, San Mateo Superior Court Case No. 435601 issued by Hon. Marie S.

10

Weiner on May 31, 2006, contain more pertinent reasoning than that of *Reynov*.

11

In *Warner v. Experian* the court stated:

12

13

> The relationship between Section 206.5 and Section 206 is
> at the heart of the disagreement between Plaintiff and Defendant,
> and is an appropriate starting point for this discussion.

14

15

16

17

18

19

> Labor Code section 206 was enacted prior to section 206.5
> and should be considered first.  Section 206 addresses the potential
> that an employer who disagrees with its employee over the amount
> of wages due may attempt to obtain leverage over the employee in
> the dispute by refusing to pay all wages, including amounts the
> employer concedes are due.  The statute establishes a more level
> playing field between employer and employee with respect to a
> wage dispute by requiring that undisputed wages be paid timely
> and unconditionally.  The employee then may pursue the disputed
> amount by filing suit or seeking other available remedies.

20

21

22

23

24

> Section 206 does not address how disputed wage claims
> should be resolved and does not consider whether such claims may
> be released.  Thus, section 206 does not resolve the issue raised by
> the demurrer in this case.  The complaint alleges that, at the time
> plaintiff left his employment with Experian, there was no dispute
> over overtime or other wages due.  By implication, Experian paid
> plaintiff all of the wages Experian conceded were due.  Indeed,
> plaintiff alleges no violation of section 206.

25

26

> Section 206, however, provides a background against
> which section 206.5 must be understood.  The statutory scheme
> enacted by the legislature should be considered as a whole,
> attempting to give effect to every part.

27

28

> Experian argues that "[s]ection 206.5 applies only when the
> dispute between an employer and employee involves the amount of
> wages due, and the employer coerces a settlement of that wage

16

1  dispute by withholding payment of the portion the employer
2  concedes is due." (Experian's Reply Brief at p. 1.) But this
   argument only could be sustained by improperly adding words to
3  the statute. Section 206.5 does not say anything about withholding
4  wages to coerce settlement of a dispute. Moreover, section 206.5
   is not limited by its terms to situations in which there is a dispute
5  between employee and employer at the time the release is signed.
6       The omission of a reference to a dispute in section 206.5 is
   particularly significant because, in enacting 206.5, the legislature
7  was acting against the background of section 206, which addresses
8  employer conduct when a wage dispute has arisen. It can be
   inferred from the legislative context that, if the legislature had
9  intended section 206.5 to be limited to situations in which a dispute
10 had arisen at the time the release was signed, it would have
   expressed that limitation. Instead, the legislature precluded
11 requiring release of "any claim or right" to wages. (Labor Code
12 §206.5.) The release of a "right" can be required even when the
   person entitled to the right is not aware of that settlement. That is
13 the circumstance alleged in the Complaint; plaintiff states that
   when he signed the Release Agreement he was unaware he was
   entitled to overtime wages.
14      It follows, then, that section 206.5 is properly read,
15 according to its plain meaning, as applicable to "*any* release of *any*
   claim or right" to wages owed but not paid. (*Id.* (emphasis
16 added).) If such release is "require[d]" by the employer, it is null
   and void. (*Id.*)
17      Defendant argues that such a broad prohibition on release
18 of claims is contrary to the general policy of the law favoring
   settlement and enforcement of contracts. But section 206.5 is not
19 the only statute that makes an exception to the policy favoring
20 enforcement of contracts when the subject of the contract is
   employee wages. Labor Code section 1194(a) effectively voids all
21 contracts to provide work in return for a salary less than minimum
22 statutory standards. California law is unabashedly paternalistic in
   protecting employees from substandard wages, regardless of an
23 employee's ignorance of his statutory rights or willingness to
   forego those rights. (*Cf.*, Labor Code §5001 (worker's
24 compensation benefits may not be compromised without approval
   of the appeals board or referee).)
25      Interpreting Labor Code section 206.5 to nullify a release
26 of unknown wage claims if the release is "require[d]" is consistent
   with relevant case law. In *Reid v. Overland Machined Products*
27 (1961) 55 Cal.2d 203, the defendant employer sent plaintiff
   employee a check for wages concededly due, but with a restrictive
28 endorsement noting that the check represented payment in full of
   all commissions due. The plaintiff did not cash the check, and

17

sued the employer to recover all wages that plaintiff believed to be due.  The employer contended that plaintiff's retention of the check constituted an accord and satisfaction.  (55 Cal. 2d at 206-07.)  The Supreme Court rejected the employer's argument.  The Court noted that Labor Code Section 206 expressly precluded the type of activity undertaken by the employer – that is, attempting to coerce a settlement of disputed wages by offering conditional payment.  (*See id.*)

Defendant cites the following statement by the *Reid* court in support of its contention that the release at issue in this case should be enforced: "An employer and employee may of course compromise a bona fide dispute over wages but such a compromise is binding only if it is made after the wages concededly due have been unconditionally paid."  (*Reid*, *supra*, 55 Cal.2d at 207.)  However, the *Reid* Court did not take into account the effect of Labor Code section 206.5, because the facts at issue in that case occurred before the enactment of section 206.5 and thus could not have been subject to that statute.  (*See id.* at 206 (events giving rise to the case occurred in 1954); Stats. 1959, c. 1066, p. 3127 (memorializing enactment of section 206.5).)  Moreover, as discussed below, section 206.5 does not preclude compromise of a "bona fide dispute over wages."

In *Sullivan v. Del Conte Masonry Co.* (1965) 238 Cal.App.2d 630, plaintiff brought an action against his former employer seeking an accounting and payment of money due under an employment agreement. (*Id.* at 631.)  As in *Reid*, the plaintiff employee was sent a check for wages concededly due, but with a restrictive endorsement.  This plaintiff struck out the endorsement, cashed the check, and sued for additional wages he alleged were due.  (*Id.* at 632.)  The *Sullivan* court relied on *Reid* to reject the defendant employer's contention that the check constituted an accord and satisfaction.  (*Id.* at 633.)

As pointed out by the *Sullivan* court, the situation presented was a dispute over negotiation of a check for wages concededly due, which was governed by Labor Code section 206. (*See id.* at 631.)  However, the Court of Appeals did state, relying on *Reid*: "This is not to say …that an employer and employee may not compromise a bona fide dispute over wages.  But such a compromise is binding only if made after wages concededly due have been unconditionally paid."  (*Id.* at 634, *citing Reid*, *supra*, 55 Cal.2d at 208.)  This statement is not inconsistent with this court's interpretation of Labor Code section 206.5.

As discussed above, section 206.5 is utterly general in its applicability to "*any* release of *any* claim or right…."  (Labor Code §206.5 (emphasis added).)  The act prohibited is an employer's "requir[ing] the execution" of a release of a wage claim.  Labor

18

Code section 206 expressly determines that it is improper for an employer to withhold wages concededly due to gain leverage in seeking a release of a disputed wage claim. Construing the statutory provisions together, section 206.5 should be interpreted to preclude at least that which section 206 does not allow. That is, an employer's withholding of wages concededly due while asking for a release of all wage claims should be considered "requir[ing]" execution of a release.

By implication, section 206.5 also should be interpreted to bar a release of wage claims demanded by an employer in exchange for any employment benefit to which the employee is entitled. That is, a release of wage claims is "require[d]" within the meaning of section 206.5 when an employee must sign the release to obtain any employment benefits otherwise due. While section 206.5 should be interpreted to prohibit that which section 206 also precludes, section 206.5 should not be interpreted to prohibit only releases that would be improper under section 206, because the limitations of section 206.5 would be superfluous.

Conversely the statements in *Reid* and *Sullivan* strongly suggest that when there is a bona fide, actual dispute over wages between an employer and an employee, and the employer does not withhold benefits due the employee or otherwise coerce resolution of the disputed wage claim, the employer and employee may compromise that claim. But such a release is binding only if executed "after wages concededly due have been unconditionally paid." (*Sullivan, supra,* 238 Cal.App.2d at 634.)

The question then arises as to whether an employer "require[s]" release of a right to wages within the meaning of section 206.5 when the employer offers a severance payment to an employee in exchange for release of *unknown* wage claims. Such a release cannot be characterized as a compromise of a "bona fide dispute over wages." (*See, id.*) An employee cannot be said to have a bona fide dispute with his employer when the employee is unaware of his potential right to particular wages. The phrase "bona fide dispute" implies a good faith disagreement. A subjective attitude of good faith on the part of an employee and employer is not possible unless each side is aware of the subject of the dispute. Thus, an employer may not enforce a blanket release of unknown wage claims.

In *Zheng v. Siebel*, the defendant had approximately 145 employees execute releases upon their termination from Siebel Systems. The defendant contended that the releases waived all claims against Siebel, including the overtime wage claims raised in the class action law suit.

19

The defendant asserted that "as it did not agree that it owed any overtime wages, and so these were "disputed" wages, not wages due and owing, which *could* validly be waived, regardless of Section 206.5. [Page 2]. The court noted that, "[a]lthough enacted in 1959, there is little case law on Section 206.5. Indeed the Court has only been able to find three reported decisions in California even mentioning this statute." [Page 6]. The court then reviewed the decisions in detail, finding that one case (*Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4[th] 344) provided no guidance, another case (*Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal.App.4[th] 1595) suggested that a release executed by an employee would *not* release a claim for unpaid wages – as it would otherwise constitute a crime, and the third case (*Sullivan v. Del Conte Masonry Co.* (1965) 238 Cal.App.2d 630) was not directly on point due to the facts of the case. *Id.* at 6-7. Although the defendant asked the court to rely on *Reid v. Overland Machined Products* (1961) 55 Cal.2d 203, the court held the *Reid* case to be inapposite since it failed to discuss §206.5, especially since the case dealt with an employer's failure to pay employee commissions back in 1952 and 1953 – years before §206.5 was enacted. *Id.* at fn 3.

The court in *Zheng v. Siebel* stated that "if the purpose of the General Release was to absolve Defendant of its illegal failure to pay overtime wages, if liability is so proven by Plaintiff and the Class, the contract itself may be contrary to law and unenforceable" pursuant to Civil Code §1668 which states, "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or **violation of law**, whether willful or negligent, are against the policy of the law." *Id.* at fn 2 [emphasis in original].

The court noted that the defendant "makes the seemingly irrational contention that as long as an employer disputes that *any* more wages are due, then any payment made to the

employee conditioned by a release is effective" which is similar to Defendant's argument in this case. *Id.* at 7. Rejecting this argument, the court held:

> Such an interpretation would make Section 206.5 either superfluous or a nullity – neither of which is a proper interpretation of an enacted statute.
>
> Defendant attempts to link together Section 206 and Section 206.5, and notes that both are discussed together in <u>Sullivan</u>. But one is not dependent on the other. Section 206.5 explicitly provides that there can be no waiver of the right to *earned* wages – regardless of whether they are in dispute. This is also a more logical interpretation.
>
> Accordingly, any provisions in the General Release forms, to the extent that they seek a release or waiver of overtime claims, of failure to pay wages due, or as to misclassification as exempt employees, are null and void pursuant to Labor Code Section 206.5, and thus unenforceable.

## CONCLUSION

The moving party has completely failed to establish that there are no material disputed issues of fact. Its Motion for Summary Judgment should be denied.

Dated:  November 9, 2007                          Respectfully submitted,


                                                  /s/ Kevin J. McInerney

                                                  Kevin J. McInerney, Esq.

                                                  *Attorney for Plaintiff*

---

PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S
MOTION FOR SUMMARY JUDGMENT

Case No.
C07-03541 MMC

**PROOF OF SERVICE**
**Tom Chau v. International Business Machines**
**United States District Court, Northern District of California**
**Case No. C 07-03541 MMC**

I, the undersigned, declare as follows:

I am employed in the County of Washoe, State of Nevada. I am over the age of eighteen (18) years and not a party to the within action; my business address is 18124 Wedge Parkway, #503, Reno Nevada, 89511.

On November 9, 2007, I served the foregoing document(s) described as:

| | | |
|---|---|---|
| 1. | Plaintiff's Opposition to Defendant IBM's Motion for Summary Judgment |
| 2. | Declaration of Tom Chau in Support of Plaintiff's Opposition to Defendant IBM's Motion for Summary Judgment |
| 3. | Plaintiff's Objections to and Motion to Strike the Declaration of Keith Williams |
| 4. | Plaintiff's Compendium of Recent California Cases |
| 5. | Plaintiff's Request for Judical Notice |

on all interested parties in this action addressed to the addressee as follows:

Donna Mezias
Catherine Nasser
JONES DAY
555 California Street
San Francisco, CA 94105

Matthew W. Lampe
*Admitted Pro Hac Vice*
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215

___XX___ By CM/ECF. I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 9, 2007, at Reno, Nevada.


  /s/  Jennifer Smith
Jennifer Smith