Kevin J. McInerney, Esq., SBN 46941
Kelly McInerney, Esq., SBN 200017
Charles A. Jones, Esq., SBN 224915
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Telephone:     (775) 849-3811
Facsimile:      (775) 849-3866
kevin@mcinerneylaw.net
kelly@mcinerneylaw.net
caj@mcinerneylaw.net

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM CHAU, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES, a Corporation, and DOES 1-20, inclusive,<br><br>             Defendants. | CASE NO. C 07-03541 MMC<br><br>DECLARATION OF TOM CHAU IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT IBM'S MOTION FOR SUMMARY JUDGEMENT<br><br>Date:  November 30, 2007<br>Time: 9:00 a.m.<br><br>Honorable Maxine M. Chesney |

I, Tom Chau, declare as follows:

1. I was hired by International Business Machines (IBM) as a computer salesman at the end of 2000. Prior to working for IBM I had worked in computer sales for Oracle. When I was hired by IBM, my manager told me he expected me to work from 7 a.m. to 7 p.m. Over the following years I routinely worked well over forty (40) hours per

week spending the majority of my time each week working on sales from IBM offices and my home.

2. I was laid off by IBM in approximately February of 2004. At that time I had been earning over $75,000 a year. I was paid on a regular salary basis plus a modest amount from commissions.

3. The way I learned of the layoff was I received a call from my manager to meet her at IBM's Menlo Park office. This woman, whose name I recall as Kathy Hanson, had been my manager for approximately one month. I had never met with her before and I thought that this first meeting was to discuss sales issues in my sales territory.

4. I went to the Menlo Park office of IBM and met with her. She explained that IBM was doing a reduction in force and that I was one of the people being laid off. She gave me a thick package of materials of about fifty pages. She said "I have two checks – one for salary and unused vacation and one for the layoff benefit. Before we give you your checks, you have to sign this" or very similar words to that effect. I asked her if I was eligible for re-hire and she stated that there was nothing in my file that indicated I was not.

5. Kathy Hanson took my badge, which had allowed me access to IBM buildings, and told me to turn in my business laptop, which I gave to her. I was no longer an employee.

6. I was really taken aback by this layoff. I wasn't anticipating it and I had no job prospects because I had not been contemplating any change in employment. I was going through a divorce, was separated, and was paying the mortgage on our home.

2

DECLARATION OF TOM CHAU IN SUPPORT OF PLAINTIFF'S OPPOSITION                                Case No.
TO DEFENDANT IBM'S MOTION FOR SUMMARY JUDGEMENT                                             C07-03541 MMC

7. I had worked in computer sales for some time and I thought that I would have an extremely difficult time finding new employment. It was my understanding that most computer companies that employed sales people generally planned their reorganization and budgets so that they did new hires in January. I had been laid off in February, a point at which most companies had their sales teams set up and organized.

8. I did give my situation some thought but there didn't seem to be any option. I knew I would need money and it was clear the only way I could get paid my salary and vacation money was to sign the separation package. I telephoned the manager back, told her I would sign the package, and was instructed to drive back to the Menlo Park office to get the two checks. She came out to meet me, I gave her the signed package, and she handed me the two checks. I know now that the papers I signed included a waiver. The check I received for $9,681.55 was the amount that IBM owed me under the company policy of providing a layoff benefit to employees based on the length of their tenure.

9. I started looking for a new job almost immediately. I did try to get re-hired in other departments of IBM but was told there were no openings. Although I thought I had been a good sales person, it took me three months to find new employment.

10. At no time during my employment or during the events involving my layoff was I aware of even a possibility that I had been improperly classified by IBM as exempt or that I could be entitled to overtime. Had I been aware of these issues, they would

have been a significant factor in deciding whether to simply sign the separation papers or reject them.

11. The first I ever learned of any notion that computer sales persons might be misclassified and therefore entitled to overtime came about a year after my layoff from IBM.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this _28_ day of _November_, 2007 at _San Francisco_ California.

_____
Tom Chau