Kevin J. McInerney, Esq., SBN 46941
Kelly McInerney, Esq., SBN 200017
Charles A. Jones, Esq., SBN 224915
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Telephone:    (775) 849-3811
Facsimile:    (775) 849-3866
kevin@mcinerneylaw.net
kelly@mcinerneylaw.net
caj@mcinerneylaw.net

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOM CHAU,** individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>**INTERNATIONAL BUSINESS MACHINES,** a Corporation, and DOES 1-20, inclusive,<br><br>        Defendants. | CASE NO. C 07-03541 MMC<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date:  November 30, 2007<br>Time: 9:00 a.m.<br><br>Honorable Maxine M. Chesney |

Plaintiff Tom Chau, by and through his attorney, hereby requests the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of the following:

    A.  Department of Industrial Relations May 28, 1959 correspondence to the Governor's office;

    B.  Defendant's Motion for Summary Judgment in *Reynov v. ADP Claims Services Group, Inc.* (Document 50).

Dated: November 9, 2007                Respectfully submitted,

                                    /s/ Kevin J. McInerney
                                    Kevin J. McInerney, Esq.
                                    *Attorney for Plaintiff*

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**                          **Case No.**
                                                                   **C07-03541 MMC**

# EXHIBIT A

STATE OF CALIFORNIA

SAN FRANCISCO 3

## Inter-Departmental Communication

To:   Mr. Julian Beck
      Legislative Secretary
      Governor's Office
      State Capitol
      Sacramento, California

Date: May 28, 1959

Subject: Assembly Bill 302

From:  Department of Industrial Relations
       965 Mission Street

     Assembly Bill 302 adds Section 206.5 to the Labor Code providing that it will be a misdemeanor for an employer to require execution of a release of claim for wages, unless payment thereof is made.  It further nullifies any release made in violation of such provision.

     It also adds Section 7110.1 to the Business and Professions Code providing for disciplinary action for the requiring on the part of an employer that such release of claim be executed in violation of the new Section 206.5.

     This bill is designed to provide remedy against abuses on the part of an employer who requires an employee to release his claim for wages as a condition of settlement of the claim for an amount less than the wages actually due. It will aid the Division of Labor Law Enforcement in securing full payment of unpaid wages in behalf of claimants even though they had previously waived part of what was justly due them.

     I recommend that this bill be signed by the Governor.

John F. Henning
Director

JFH:ga
cc: Mr. Arywitz
    Mr. Corten

# EXHIBIT B

1   MORGAN, LEWIS & BOCKIUS LLP
    REBECCA EISEN, State Bar No. 96129
2   ERIC MECKLEY, State Bar No. 168181
    One Market, Spear Street Tower
3   San Francisco, CA 94105-1126
    Tel: 415.442.1000
4   Fax: 415.442.1001

5
    DAVID F. FAUSTMAN, State Bar No. 081862
6   KAREN L. STEPHENSON, State Bar No. 205664
    FOX ROTHSCHILD LLP
7   50 California Street, Suite 1500
    San Francisco, California 94111
8   Telephone: (415) 296-3885
    Facsimile: (415) 296-3886
9   dfaustman@foxrothschild.com
    kstephenson@foxrothschild.com
10

11  Attorneys for Defendants
    ADP Claims Services Group, Inc.
12  Automatic Data Processing, Inc.

13              UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16  Vincent Reynov,                      | **Case No. C06-02056 CW**

17              Plaintiff,               | **DEFENDANTS' MOTION FOR
                                         | SUMMARY JUDGMENT OR, IN THE
18          vs.                          | ALTERNATIVE, PARTIAL SUMMARY
                                         | JUDGMENT**
19  ADP CLAIMS SERVICES GROUP, INC.;
    AUTOMATIC DATA PROCESSING,           | **FRCP RULE 56(b)**
20  INC., and each of their subsidiaries doing
    business in California, and DOES 1   | Date:       April 26, 2007
21  through 50,                          | Time:       2:00 p.m.
                                         | Judge:      Hon. Claudia Wilken
22              Defendants.              | Courtroom: 2, 4th Floor

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                                      Case No. C06-02056 CW

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. RELEVANT UNDISPUTED FACTS ....................................................................... 2

    A. ADP Claims Services Group, Inc. Employed Reynov As An Exempt Employee.............................................................................................................. 2

    B. Reynov Became Unhappy with His Work Environment and, In the First Quarter of 2005, Threatened Litigation Against CSG ........................................... 3

    C. Between January and April 20, 2005, Reynov Consulted with and Retained Attorney Scott A. Miller to Represent Him In a Lawsuit Against the Company for Alleged Labor Code Violations, Including a Claim for Alleged Unpaid Overtime ........................................................................................ 3

    D. Reynov Continued to Negotiate a Separation From CSG and, In May of 2005, Executed a General Release and Waiver of All Claims Against Defendants............................................................................................................. 4

III. ARGUMENT ............................................................................................................... 6

    A. Plaintiff Executed a Valid and Enforceable Release Of His Claim for Alleged Unpaid Overtime and, As a Result, His Claim Must Be Dismissed ......... 6

        1. The language of the release demonstrates that the release encompassed any claims for alleged unpaid overtime.............................. 6

        2. Labor Code Section 206.5 does not invalidate the release or render it unenforceable...................................................................................... 8

    B. Reynov's Claims for Waiting Time Penalties Under Labor Code Section 203 and Meal and Rest Period Penalties Under Labor Code Section 226.7 Are Barred by the Release........................................................................................ 14

        1. Reynov cannot recover waiting time penalties ......................................... 14

        2. Reynov cannot recover meal and rest period penalties............................. 14

    C. Reynov Has No Private Right of Action to Recover Civil Penalties Pursuant to Labor Code Section 558........................................................................ 16

    D. The Release Bars Reynov's Claim for Unfair Competition Under California Business and Professions Code Section 17200.................................... 16

    E. Each of Reynov's Claims Is Barred by the Doctrine of Estoppel........................ 18

IV. CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court,*
  2007 Cal.App. LEXIS 274, *2 (February 28, 2007)..................................................16

*Bowen v. Linuxcare, Inc.,*
  2006 WL 2089916, at *6 (Cal. App. 1 Dist. July 28, 2006)...................................10

*Corder v. Houston's Restaurants, Inc.,*
  424 F.Supp.2d 1205 (C.D. Cal. 2006).................................................................15

*Cortez v. Purolator Air Filtration Products Co.,*
  23 Cal. 4th 163 (2000).......................................................................................17

*Domby v. Hoyt,*
  2004 WL 2801587, at *4 (Cal. App. 2 Dist. Dec. 7, 2004)..................................10

*Estate of Anderson,*
  60 Cal.App.4th 436 (1997).................................................................................18

*Farmers Ins. Exchange v. Zerin,*
  53 Cal. App. 4th 445 (1997)..............................................................................17

*Hess v. Ford Motor Co.,*
  27 Cal. 4th 516 (2002).........................................................................................6

*Murphy v. Kenneth Cole Productions, Inc.,*
  36 Cal.Rptr.3d 418 (2005)..................................................................................15

*Pacific Greyhound Lines v. Zane,*
  160 F.2d 731 (9th Cir. 1947)................................................................................7

*Palmquist v. Mercer,*
  43 Cal. 2d 92 (1954)............................................................................................7

*Potter v. Pacific Coast Lumber Co.,*
  37 Cal. 2d 592 (1951)..........................................................................................6

*Pulido v. Coca-Cola Enterprises, Inc.,*
  2006 WL 1699328, at *4-5 (C.D. Cal. 2006).......................................................15

*Reid v. Overland Machined Products,*
  55 Cal. 2d 203 (1961)..........................................................................8, 9, 10, 11

*Reynolds v. Bement,*
  36 Cal.4th 1075 (2005).......................................................................................16

*Schulze v. Schulze,*
  121 Cal. App. 2d 75 (1953).................................................................................18

*Skrbina v. Fleming Companies, Inc.,*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1
2

# TABLE OF AUTHORITIES
(continued)

Page

3       45 Cal. App. 4th 1353, 1366 (1996) ................................................................... 7

4   *Smith v Occidental & Oriental Steamship Co.,*
        99 Cal. 462 (1893) ........................................................................................... 7

5   *Solis v. Kirkwood Resort Co.,*
6       94 Cal. App. 4th 354 (2001) ........................................................................... 6

7   *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
        17 Cal. 4th 553 (1998) ..................................................................................... 17

8
9   *Sullivan v. Del Conte Masonry Co.,*
        238 Cal. App. 630 (1965) ...................................................................... 8, 9, 10, 11

10  *Tompkins v. Ramona Auto Services, Inc.,*
        2003 WL 22905330, at *9-10 (Cal. App. 4 Dist. Dec. 10, 2003) ............................... 10

11

12  **Statutes**

13  Business & Professions Code Section 17001 ......................................................... 17

14  Business & Professions Code Section 17200 ..................................................... 16, 17

15  California Labor Code Section 203 ....................................................................... 14

16  California Labor Code Section 206 ................................................................... 8, 9, 10

17  California Labor Code Section 206(a) ..................................................................... 8

18  California Labor Code Section 206.5 ................................................................ passim

19  California Labor Code Section 226.7 ................................................................ 14, 15

20  California Labor Code Section 558 ........................................................................ 16

21  Civil Code Section 1635 ....................................................................................... 6

22  Civil Code Section 1636 ....................................................................................... 6

23  Civil Code Sections 1521-1543 ............................................................................. 6

24  Code of Civil Procedure Section 1542 ............................................................... passim

25  Code of Civil Procedure Section 340 ..................................................................... 16

26  Federal Rule of Civil Procedure 56(b) .................................................................... 1

27
28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    **PLEASE TAKE NOTICE** that on April 26, 2007 at 2:00 p.m., or as soon thereafter as

2    the matter may be heard in Courtroom 2 of the above-entitled court, located at 1301 Clay Street,

3    Oakland, California, 94612, Defendants ADP Claims Services Group, Inc. ("CSG") and

4    Automatic Data Processing, Inc. ("Automatic") (together hereinafter as "Defendants") will, and

5    hereby do, move this Court for an order granting summary judgment, or in the alternative, partial

6    summary judgment in favor of Defendants and against Plaintiff Vincent Reynov ("Plaintiff"),

7    pursuant to Federal Rule of Civil Procedure 56(b) and Northern District of California Civil Local

8    Rules 7-2, 7-4 and 56(b).[1]

9        Defendants seek the following relief/action by the Court:  Entry of summary judgment in

10   favor of Defendants and against Plaintiff on the grounds that the evidence before the Court

11   demonstrates that there is no genuine issue as to any material fact and that Defendants are entitled

12   to judgment as a matter of law.  In the alternative, Defendants request entry of partial summary in

13   favor of Defendants as to those claims for which the Court finds that there is no genuine issue as

14   to any material fact and that Defendants are entitled to judgment as a matter of law.

15                    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

16   I.    <u>**INTRODUCTION**</u>

17       Plaintiff Vincent Reynov ("Plaintiff" or "Reynov") signed a valid and enforceable release

18   and waiver of all of his claims against Defendants Automatic Data Processing, Inc. and ADP

19   Claims Services Group, Inc.  All of his claims are barred by the plain language of this release, and

20   the Court should dismiss this lawsuit in its entirety.

21   \\\

22   \\\

23   \\\

24

25

26

27

28

---

[1] Defendant Automatic Data Processing, Inc. has concurrently filed a separate Motion to Dismiss under FRCP 12(b)(2).  In the event that Defendant Automatic's Motion to Dismiss is denied by the Court, Defendant Automatic hereby joins as a moving party in this Motion for Summary Judgment, as the same arguments which support entry of judgment in favor of Defendant CSG apply equally to support entry of judgment in favor of Defendant Automatic. Defendant Automatic thus joins in the present motion *only* in the event that the Court finds personal jurisdiction exists as to Automatic.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                          - 1 -                   Case No. C06-02056 CW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## II.     RELEVANT UNDISPUTED FACTS[2]

### A.     ADP Claims Services Group, Inc. Employed Reynov As An Exempt Employee

In November of 2003, Plaintiff Vincent Reynov ("Plaintiff" or "Reynov") began his employment with CSG as a Senior QA Engineer. Ware Decl. ¶5; Blazquez Decl. ¶4; Ex. 2. CSG classified Reynov as an exempt employee and paid him an annual salary of approximately $76,000. Ware Decl. ¶¶5, 13; Meckley Decl. ¶9, Ex. 11.

Plaintiff performed QA ("quality assurance") and testing functions on CSG's internal financial-related computer software. Blazquez Decl. ¶¶3, 7. The work Plaintiff performed related solely to CSG's internal business computer systems, which were used by CSG employees working in departments such as finance, billing, marketing, sales, etc. Blazquez Decl. ¶7. Plaintiff did *not* work on computer software which was sold to or used by CSG's customers. *Id.* Thus, Plaintiff performed office or non-manual work directly related to CSG's general business operations. *Id.*

Plaintiff performed his work at CSG under only general supervision. Blazquez Decl. ¶8. As a Senior QA Engineer, Plaintiff was responsible for, among other things, the entire quality assurance life cycle for testing the end-to-end applications and reports for the Oracle eBusiness applications and extensions, which involved preparing and documenting test designs/test cases, performing interoperability, compatibility and load testing and regression testing, and analyzing and documenting requirements and designing solutions for this process. Blazquez Decl. ¶¶5, 9; Ex. 3. As a result, Plaintiff performed work along specialized and technical lines which required special training, experience and knowledge.[3] *Id.*

CSG expected, and Reynov's job duties required, that he customarily exercise independent judgment and discretion in performing his work at CSG. Blazquez Decl. ¶10. CSG

---

[2] Citations to Plaintiff's deposition are in the format "Depo. [page]:[line]". Citations to declarations are in the format "[Declarant's last name] Decl. ¶ [paragraph number]". Exhibits are attached to the declarations being filed herewith. Relevant excerpts from Reynov's deposition, as well as copies of exhibits which Reynov authenticated during his deposition, are attached to the Declaration of Eric Meckley.

[3] Reynov had an undergraduate Bachelor of Science degree in Economics and a Master's degree in Electrical Engineering and more than 13 years of experience in the IT industry with an emphasis on QA testing and analysis at the time he joined CSG. Blazquez Decl. ¶9; Meckley Decl. ¶8, Ex. 10.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                          2                    Case No. C06-02056 CW
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   also expected, and Reynov's job duties required, that he spend more than one-half of his working

2   time performing exempt-level job duties. *Id.*

3       **B.    Reynov Became Unhappy with His Work Environment and, In the First**
            **Quarter of 2005, Threatened Litigation Against CSG**
4

5       Mr. Reynov was dissatisfied with his work environment. Reynov believed that his

6   manager was "evil and . . . should be punished." Depo. 46:24-47:1. Beginning in late 2004,

7   Reynov kept a personal calendar on which he documented his "overtime" by calculating his hours

8   "every day," "as soon as [he] left" work. Depo. 169:4-12, 172:14-25; Meckley Decl. ¶10, Ex. 12.

9       On February 2, 2005, Reynov wrote a letter to CSG's Director of Human Resources,

10  Samantha Ware, describing the problems with his manager and stating that he sometimes worked

11  "10 to 12 hours a day." Depo. 53:1-54:7; Meckley Decl. ¶7, Ex. 9; Ware Decl. ¶6. Reynov stated

12  that he was "willing to seek legal help to file charges and complaints outside the company unless

13  the grievance process is available to resolve the matter internally." *Id.* Reynov explained that he

14  was trying to "bring attention" to the problem with his manager, and that a lawsuit was "the next

15  step" he would take. Depo. 62:8-13. Ms. Ware offered to help Reynov establish a better

16  relationship with his supervisor, but his discontent continued. Depo. 53:1-54:7.

17      On March 28, 2005, Mr. Reynov wrote a letter to the "ADP Ethics Program" stating that

18  this was his "last attempt" to solve the problems within the Company. Meckley Decl. ¶7, Ex. 9.

19  In attempt to settle the dispute, a representative of the Company, David Turetsky, contacted

20  Reynov. Depo. 63:6-16. Reynov bargained with Mr. Turetsky, promising not to sue the

21  Company in exchange for being compensated. Depo. 65:11-21. In the course of these

22  communications, Reynov disclosed that he had consulted a lawyer. Depo. 64:6-8.

23      **C.    Between January and April 20, 2005, Reynov Consulted with and Retained**
            **Attorney Scott A. Miller to Represent Him In a Lawsuit Against the**
24          **Company for Alleged Labor Code Violations, Including a Claim for Alleged**
            **Unpaid Overtime**
25

26      "During the first quarter of 2005" (i.e., January-March of 2005), Reynov called attorney

27  Scott A. Miller to consult with him about possible claims against CSG. Miller Decl. ¶4.[4] During

─────────────────────────────

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[4] As the Court may recall, Plaintiff submitted the Declaration of Scott A. Miller to this Court in connection with

1-SF/7454244.1                    3                    Case No. C06-02056 CW

1   this telephone call with Attorney Miller, "Reynov complained of a number of Labor Code

2   violations by defendants". Miller Decl. ¶5. Attorney Miller told Reynov that he (Miller) was

3   "interested in pursuing this matter". Miller Decl. ¶6.

4          Describing his communications with and hiring of Attorney Miller, Reynov stated:

5          "I contacted attorney Scott Miller and consulted with him about whether I had any
           claims against the defendants in this case. As a result of my discussions with Mr.
6          Miller, I learned that I had a claim for overtime and I hired him as my counsel to
           file a class action lawsuit for unpaid overtime and other claims. He prepared, and
7          I signed, an engagement letter."

8   Reynov Decl. ¶1.[5]

9          Attorney Miller sent Reynov a "class action retainer agreement", which Reynov signed on

10  April 20, 2005 and returned to Mr. Miller. Depo. 22:1-23:22; Miller Decl. ¶¶7; Reynov Decl. ¶1.

11  The "Attorney Retainer Agreement" stated that Reynov had retained Mr. Miller to represent him

12  "in all claims for violations of the Labor Code and any other related laws against Automatic Data

13  Processing, Inc." Meckley Decl. ¶4, Ex. 6. Reynov acknowledged that this "Attorney Retainer

14  Agreement" is the document with which he hired Mr. Miller as his attorney to file a class action

15  lawsuit for unpaid overtime and other claims.[6] Depo. 23:12-24:9, 26:24-27:7.

16         **D.   Reynov Continued to Negotiate a Separation From CSG and, In May of 2005,**
                **Executed a General Release and Waiver of All Claims Against Defendants**
17

18         Reynov eventually reached an oral agreement with the Company which contemplated that

19  he would receive a severance package in exchange for resigning from CSG. Depo. 65:11-21.

20  Reynov then stopped actively working and his last actual active day of work was May 20, 2005.

21  Ware Decl. ¶¶7, 8.

22         On May 23, 2005, Ann McKenzie, a Senior Human Resources representative with CSG

23

24  Plaintiff's Opposition to Defendant's Motion to Dismiss, which was heard by the Court on December 1, 2006. For
    the Court's convenience, a copy of Mr. Miller's declaration is attached as Exhibit 4 to the Meckley Declaration.
25  [5] As with the Declaration of Mr. Miller, the Court may recall that Reynov himself filed a declaration in Opposition to
    Defendant's Motion to Dismiss. Reynov's declaration – in which he made the above-quoted representations to this
26  Court under penalty of perjury – is attached as Exhibit 5 to the Meckley Declaration filed herewith.

27  [6] Reynov previously filed the Attorney Retainer Agreement with this Court in order to demonstrate that Reynov had
    authorized the filing of a class action suit for overtime and to rebut Defendant's Motion to Dismiss. See, Plaintiff's
28  Memorandum in Opposition to Defendant's Motion to Dismiss, 3:17-23, 4:17-27; Declaration of Scott A. Miller, ¶¶
    4-10.

MORGAN, LEWIS &
BOCKIUS LLP          1-SF/7454244.1                              4                          Case No. C06-02056 CW
ATTORNEYS AT LAW
SAN FRANCISCO
                                        DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  sent Reynov a cover letter along with a proposed "Letter Agreement and Release" (the "Release"

2  or "Letter Agreement") in connection with Reynov's mutually agreed upon separation from

3  employment. Depo. 72:3-73:23; Meckley Decl. ¶5, Ex. 7; Ware Decl. ¶9.

4        In Ms. McKenzie's cover letter to Reynov, she stated in part:

5        "Enclosed for your consideration is a proposed confidential Letter Agreement and
         Release that deals with your employment separation from ADP. This agreement is
6        intended to provide you with certain benefits you would not otherwise receive and
         resolve any remaining issues between you and ADP. Please read it and consider it
7        carefully."

8        The Release itself stated in pertinent part as follows:

9        "[Y]ou agree to forever release, acquit and discharge Automatic Data Processing, Inc.
         and all its subsidiaries, affiliates, divisions and its and their employees, officers,
10       directors and shareholders and its and their predecessors, successors and assigns from
         and against all claims, actions and causes of action (collectively the "claims"), of
11       every kind, nature and description, which exist as of the date you sign this Letter
         Agreement, arising out of or related to your employment and the termination thereof
12       ... . Except as set forth herein, you further acknowledge, represent and warrant that
         ADP owes you no other wages, commissions, bonuses, vacation pay or other
13       compensation or payments of any nature, other than that specifically provided for in
         this Letter Agreement."
14
         . . .
15       "Waiver of Civil Code Section 1542:
         You acknowledge that you are familiar with section 1542 of the California Civil
16       Code, which reads as follows:

17       A general release does not extend to claims which the creditor does not know or
         suspect to exist in his favor at the time of executing the release, which if known by
18       him must have materially affected his settlement with the debtor.

19       You acknowledge that you are releasing unknown claims and waive all rights you
         have or may have under civil code section 1542 or any other statute or common law
20       principle of similar effect.

21       Please review this Letter Agreement carefully. You are advised to consult with your
         attorney before signing this Letter Agreement."

22       "Your signature below indicates your acceptance of this Letter Agreement and shall
         cause this Letter Agreement to be binding on you, your heirs, representatives and
23       assigns. Your signature shall also signify that you have read and understand the
         Letter Agreement, have reviewed it with your attorney or have elected not to do so."

24       On May 26, 2005, Reynov signed and dated the Release and returned it to CSG. Depo.

25  72:3-73:23; Meckley Decl. ¶5, Ex. 7. Prior to signing the Release, Reynov read it "carefully,"

26  making handwritten notations in the margins of the letter. Depo. 75:13-17, 88:6-10, 89:2-9.

27        In exchange for executing the Release, Reynov received consideration to which he was

28  not otherwise entitled; specifically, a payment in excess of $22,000, 5 months extended vesting of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                               5                        Case No. C06-02056 CW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  stock options and participation in the Employee Savings-Stock Purchase Plan, among other

2  benefits. Ware Decl. ¶12; Ex. 7.

3      Reynov knew that by signing the Release, he was releasing all of the claims for which he

4  had retained Attorney Miller in April of 2005. Depo. 85:20-25; 89:12-16. Reynov testified in his

5  deposition that he assumed that the Company would dispute his overtime claim "because nobody

6  like pay money back." [sic] Depo. 61:9-12. After Reynov signed the Release, he continued to

7  deal with Ms. McKenzie about the details of his severance payments. Depo. 73:24-75:12,

8  Meckley Decl. ¶6, Ex. 8. Pursuant to its terms, the Release became effective on June 3, 2005,

9  which was the eighth day after Reynov signed the document. Ex. 7.

10      CSG paid Reynov all salary, unused/accrued vacation and float time, and other wages

11  which were concededly owed to him through the effective date of his termination -- these

12  payments were not conditioned or dependent upon him signing the Release. Ware Decl. ¶¶10, 11;

13  Ex. 1.

14  **III.    ARGUMENT**

15      **A.    Plaintiff Executed a Valid and Enforceable Release Of His Claim for Alleged**
          **Unpaid Overtime and, As a Result, His Claim Must Be Dismissed**
16

17          **1.    The language of the release demonstrates that the release encompassed**
              **any claims for alleged unpaid overtime**

18      It is well-settled that parties may compromise a claim by an agreement to pay and accept

19  consideration different from that allegedly owed. Civil Code §§1521-1543; *Potter v. Pacific*

20  *Coast Lumber Co.*, 37 Cal. 2d 592, 602-603 (1951).

21      California Civil Code Section 1635 provides that "[a]ll contracts, whether public or

22  private, are to be interpreted by the same rules, except as otherwise provided by this Code."

23  California courts have consistently applied this maxim to releases and determined the scope of a

24  release using long-standing rules of contract interpretation. *See, e.g., Hess v. Ford Motor Co.*, 27

25  Cal. 4th 516, 524 (2002); *Solis v. Kirkwood Resort Co.*, 94 Cal. App. 4th 354, 360 (2001). These

26  rules provide that a "contract must be so interpreted as to give effect to the mutual intention of the

27  parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

28  Civil Code §1636.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                                      6                        Case No. C06-02056 CW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   "'The general rule is that when a person with the capacity of reading and
2 understanding an instrument signs it, he is, in the absence of fraud and imposition,
  bound by its contents, and is estopped from saying that its provisions are contrary
3 to his intentions or understanding.'"

4 *Palmquist v. Mercer*, 43 Cal. 2d 92, 98 (1954), quoting *Smith v Occidental & Oriental Steamship*

5 *Co.*, 99 Cal. 462, 470-471 (1893).

6     In the present case, the language of the Release clearly and unambiguously provided that

7 Reynov was releasing "Automatic Data Processing, Inc. and all its subsidiaries, affiliates,

8 divisions" "from and against all claims, actions and causes of action (collectively the "claims"),

9 of every kind, nature and description, which exist as of the date you sign this Letter Agreement,

10 arising out of or related to your employment." CSG was a corporate subsidiary of Automatic and,

11 thus, one of the entities released by Reynov. *See*, Singer Decl. ¶6.[7]

12     Moreover, Reynov testified in his deposition:

13    Q.:   Did you understand when you signed this document that you were promising
        not to sue the Company.
14    A.:   Yes, I do - - I did.
15 Depo. 77:19-21

16     The Release also contained a clear, explicit and express waiver of all rights under

17 California Civil Code Section 1542. This broad language clearly encompassed any claims for

18 alleged unpaid overtime. Reynov's last day of actual work was May 20, 2005 -- he did not

19 worked any "overtime" subsequent to that date. Thus, the Release (which was signed on May 26

20 and became effective on June 3, 2005) clearly extinguished and released any prior claim he may

21 have had for alleged overtime under the California Labor Code.

22   "In general, a written release extinguishes any obligation covered by the release's
  terms, provided it has not been obtained by fraud, deception, misrepresentation,
23 duress or undue influence."

24 *Skrbina v. Fleming Companies, Inc.*, 45 Cal. App. 4th 1353, 1366 (1996).

25     An express waiver of all rights under California Civil Code Section 1542 is valid in the

26 absence of actual fraud. *Pacific Greyhound Lines v. Zane*, 160 F.2d 731, 736 (9th Cir. 1947).

27

28 [7] The Robert Joel Singer Declaration is being filed concurrently herewith, along with Defendant Automatic's Motion to Dismiss.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
1-SF/7454244.1      7      Case No. C06-02056 CW
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1     Reynov cannot claim that CSG obtained the Release through fraud, deception, duress, etc.

2     Reynov was advised in writing to consult with and review the Release with his attorney before

3     signing the Release and, in fact, had actually consulted with and retained an attorney to file a

4     lawsuit against the Company more than one month *before* signing the Release. Moreover,

5     Reynov admitted he reviewed the Release "carefully" before signing it. Reynov also had seven

6     days after signing the Release in which to reconsider and rescind the Release.[8]

7     Quite simply, the Release in this case represents a negotiated arms-length settlement of

8     disputed claims reached between the Company and Mr. Reynov, who at the time had formally

9     retained and was represented by counsel. The Court should uphold and enforce the terms of the

10    Release and dismiss Plaintiff's claims.

11    ## 2.    Labor Code Section 206.5 does not invalidate the release or render it unenforceable

12

13    Plaintiff may contend that his Release agreement with CSG is unenforceable based upon

14    Labor Code Section 206.5. Such an interpretation of Section 206.5 would be contrary to settled

15    law and common sense. To accept this interpretation would be to hold that disputed wage claims

16    can never be compromised in California. It has long been clear, however, that employers and

17    employees may compromise bona fide disputes over wages so long as any amounts the employer

18    concedes are due have been unconditionally paid. *Reid v. Overland Machined Products*, 55 Cal.

19    2d 203, 208 (1961); *Sullivan v. Del Conte Masonry Co.*, 238 Cal. App. 630, 634 (1965).

20    Labor Code Section 206.5 purports to void any required release of a claim for "wages

21    due," unless payment of such wages has been made. Section 206.5, however, must be interpreted

22    in conjunction with Labor Code Section 206(a). *Sullivan*, 238 Cal. App. 2d at 633 (reading

23    Sections 206(a) and 206.5 together). Section 206(a) provides:

24        "In case of a dispute over wages, the employer shall pay, without condition and
          within the time set by this article, all wages, or parts thereof, conceded by him to
25        be due, leaving to the employee all remedies he might otherwise be entitled to as
          to any balance claimed."
26

27    The California Supreme Court has interpreted Section 206 to permit the compromise of

28

---

[8] Reynov has *never* sought to rescind the release on any ground, including fraud or duress.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                    8                    Case No. C06-02056 CW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   wage disputes so long as any amounts concededly due to the employee have been paid.  In *Reid*,

2   55 Cal. 2d 203, the Court noted that "[o]rdinarily the conditional payment of either an amount

3   concededly owed or an amount in excess of that concededly owed is sufficient consideration for a

4   settlement of a bona fide disputed claim."  However, the court in *Reid* held that Section 206

5   "places wage claims in a separate category:"

> Hence in a dispute over wages the employer may not withhold wages concededly
> due to coerce settlement of the disputed balance.  An employer and employee may
> of course compromise a bona fide dispute over wages but such a compromise is
> binding only if it is made after the wages concededly due have been
> unconditionally paid.

9   55 Cal. 2d at 207.

10   Because the parties in *Reid* had stipulated that the employer actually owed commissions in

11   the amount which was tendered to the employee in exchange for a release of all claims, the court

12   held that the release was void.[9]

13   Similarly, in *Sullivan v. Del Conte Masonry Co.*, the court followed *Reid* in interpreting

14   Section 206.5 in light of Section 206.  In *Sullivan*, a former employee brought an action seeking

15   an accounting and payment of money due under an employment agreement.  *Id.* at 631.  The

16   employer argued that its debt had been discharged because he paid the employee $6,984.98, and

17   the check had the following endorsement "paid in full all money owing to this date, 11/8/61."  *Id.*

18   at 631-32.  The court phrased the issue as whether the sum tendered by the employer conditioned

19   on a release of claims "was concededly due respondent as wages.  If concededly due, then the

20   condition attached, namely that the check was tendered 'in full payment' was invalid, and one that

21   could not be imposed upon respondent."  238 Cal. App. 2d at 633.  The Court stated that "upon

22   termination of an employee's services, [an] employer is bound to pay the employee all wages

23   conceded to be due, and can require no condition in connection with payment."  *Id.* at 633.  The

24   Court found that because the sum of $6,984.98 was concededly due respondent as wages, the

25   condition attached to the check, namely that the check was tendered "in full payment," was

[9]Although the claim in *Reid* arose prior to the enactment of Section 206.5, the *Reid* court found that, in the context of Labor Code § 206, no accord and satisfaction could result from the retention or cashing of either of two checks from defendant because they were sent to plaintiff as a single conditional payment in satisfaction of his claim for wages. 55 Cal.2d at 208.  Plaintiff was concededly due $792.14, therefore that payment could not be conditioned on the release of all additional liability.  *Id.*

1  invalid under the provisions of the Labor Code, and could not be imposed upon respondent. *Id.* at

2  633-34. For that reason, and that reason alone, the court declared the release invalid under the

3  provisions of the Labor Code.

4      The lesson of *Sullivan* and *Reid* is that Section 206.5 invalidates a release of wages *only*

5  where the employer obtains the release by withholding wages concededly due until the employee

6  executes the release. The purpose of the statute as interpreted by the courts is to prevent

7  employers from using their greater economic strength to coerce a release from employees who

8  cannot afford to go without wages long enough to seek relief against the employer.[10]

9      This reading is in accord with the legislative history of Section 206.5, which demonstrates

10  that the statute was intended to address only a very narrow set of circumstances. As noted by the

11  chief proponent of the bill that added Section 206.5 to the Labor Code,

12      Testimony before legislative committees developed the fact that there exists a

13  rather widespread use of general release forms, particularly in the building industry in Southern California, whereby an individual, as a condition of

14  receiving his payment, is required to forego all his defenses and agree that the payment is full and complete.

15      Not infrequently the payments were made by bad checks, and accordingly the

16  labor commissioner's office was without power to process the case because of the signing of the release agreement.

17      The bill is intended to correct this condition, but at the same time to permit

18  payment by check so long as it is honored.[11]

    Likewise, the author of the bill, Assemblyman Edward Gaffney, stated

19      This bill was given to me by the American Federation of Labor to meet previous

20  conditions of non-payment of wages by the devious methods of certain unscrupulous employers to require a release from an employee on termination of

21  employment and paying the man with a rubber check. The execution of the

---

22  [10] *See also Tompkins v. Ramona Auto Services, Inc.*, 2003 WL 22905330, at *9-10 (Cal. App. 4 Dist. Dec. 10, 2003)

23  (reading Labor Code Sections 206 and 206.5 together and interpreting the sections to mean that "in a dispute over wages the employer may not withhold wages concededly due to coerce settlement of the disputed balance" and finding that Section 206.5 would only bar application of a settlement agreement to plaintiffs' wage claims if

24  defendant had not otherwise paid all the wages that it conceded were owed to plaintiffs); *Domby v. Hoyt*, 2004 WL 2801587, at *4 (Cal. App. 2 Dist. Dec. 7, 2004) (affirming the enforcement of a settlement agreement and finding

25  that Labor Code Section 206.5 prohibits settlements of unpaid wage claims only if the parties agree the wages are due); *Bowen v. Linuxcare, Inc.*, 2006 WL 2089916, at *6 (Cal. App. 1 Dist. July 28, 2006) (stating that Labor Code

26  Section 206.5 "applies only when the dispute between the employer and employee involves the amount of wages due, and the employer coerces a settlement of that wage dispute by withholding payment of the portion the employer

27  concedes is due").

[11] Letter dated June 11, 1959 from C. J. Haggerty to Hon. Edmund G. Brown. *See*, Defendants' Request for Judicial

28  Notice Ex. A, filed herewith.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1         10          Case No. C06-02056 CW

1    release precludes further claim through the Labor Council.[12]

2    Thus, the legislative history for Labor Code Section 206.5 makes clear that this statute

3    was not intended to nullify any release of a wage claim, but rather was intended to address only

4    the narrow situation in which an unscrupulous employer withholds basic wages that are

5    concededly due to an employee unless and until the employee signs a release agreement with the

6    employer. It would run contrary to both the statute's legislative history and the decisions in *Reid*

7    and *Sullivan* to construe Section 206.5 in isolation as prohibiting all waivers of wage claims.

8    In contrast to the facts in *Reid* and *Sullivan*, this was not a case of an unscrupulous

9    employer holding wages concededly due a helpless employee in order to force the employee to

10   surrender all further wage claims. Rather, it is undisputed that CSG paid Reynov all of his wages

11   which were concededly due. Ware Decl. ¶11; Ex. 1. The payment to Reynov of his salary,

12   unused/accrued vacation and float time was not conditioned or dependent upon Reynov signing

13   the Release agreement. Ware Decl. ¶11. What distinguishes this case from the facts of *Reid* and

14   *Sullivan* is the undisputed fact that none of the alleged overtime wages claimed by Reynov in this

15   case were (or are) conceded by CSG to be due.

16   The court in *Reid* made clear that "[a]n employer and employee may of course

17   compromise a bona fide dispute over wages". Although the *Reid* court did not define the phrase

18   "bona fide dispute", the California Division of Labor Standards Enforcement ("DLSE") has in a

19   related context defined a "good faith dispute" for purposes of wage and penalty disputes as one

20   that occurs "when an employer presents a defense, based in law or fact which, if successful,

21   would preclude any recovery on the part of the employee." 8 C.C.R. §13520.

22   Here, the undisputed evidence demonstrates that the alleged overtime pay Reynov claims

23   that CSG owes him was and is subject to a "bona fide dispute" between Plaintiff and CSG. CSG

24   has always taken the position that Reynov was an exempt employee who was not entitled to

25   overtime. Ware Decl. ¶13; Blazquez Decl. ¶11. Specifically, the declaration of Reynov's

26   supervisor Margaret Blazquez and the exhibits attached thereto provide evidence that the job

27   duties performed by Reynov qualified for the administrative exemption under the California

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[12] Letter dated June 11, 1959 from Edward Gaffney to Hon. Edmund G. Brown. Req. for Judicial Notice Ex. A.

1-SF/7454244.1                          11                    Case No. C06-02056 CW

1    Industrial Welfare Commission ("IWC") Wage Orders.[13]  *See*, Blazquez Decl. ¶¶4-11; Exs. 2, 3.

2    If CSG correctly classified Reynov as exempt, then Reynov cannot recover any overtime wages

3    (nor can he recover on any of his other claims which are based entirely upon the allegation that

4    should have been classified as non-exempt).  As a result, the undisputed evidence demonstrates

5    the existence of a good faith/bona fide dispute as to Reynov's entitlement to overtime wages.

6         Reynov may assert that he did not know he had a claim for overtime at the time he signed

7    the Release agreement.  Such an assertion is irrelevant to the Labor Code Section 206.5 analysis.

8    First, as described above, the employee need not have known about or actually raised an issue

9    with respect to an alleged wage claim in order for a "bona fide dispute" to exist regarding his

10   entitlement to such wages.  Rather, a "bona fide dispute" exists any time an employer has a good

11   faith defense, based in law or fact, which would preclude an employee's recovery of the claimed

12   wages.  Nothing in the case law suggests that actual knowledge on the part of the employee is a

13   prerequisite to finding the existence of a bona fide dispute.  Moreover, the Civil Code Section

14   1542 language specifically allows the waiver of all claims, including *unknown* claims.

15        Second, even if employee knowledge about a potential claim was a requisite element for

16   finding a bona fide dispute, the undisputed evidence in this case shows that Reynov knew about a

17   potential claim for overtime at the time he signed the Release.  Specifically, in the declaration

18   Reynov previously submitted to this Court, he stated under penalty of perjury that:

19        "I contacted attorney Scott Miller and consulted with him about whether I had any
          claims against the defendants in this case.  As a result of my discussions with Mr.
20        Miller, I learned that I had a claim for overtime and I hired him as my counsel to
          file a class action lawsuit for unpaid overtime and other claims.  He prepared, and
21        I signed, an engagement letter."

22        The order and phrasing of the above-quoted language indicate that Reynov "learned that

23

---

24   [13] The IWC Wage Orders indicate that a person employed in an administrative capacity includes any employee
     whose duties and responsibilities involve:  The performance of office or non-manual work directly related to
     management policies or general business operations of his or her employer or his or her employer's customers, and
25   who is primarily engaged in duties which meet the test for the exemption, and who customarily and regularly
     exercised discretion and independent judgment; and  (1) who regularly and directly assists a proprietor, or an
26   employee employed in a bona fide executive or administrative capacity, or (2) who performs, under only general
     supervision, work along specialized or technical lines requiring special training, experience, or knowledge, or (3)
27   who executes.  An administrative employee must also earn a monthly salary equivalent to no less than two times the
     state minimum wage for full-time employment.  Here, Reynov earned a salary well in excess of that requirement.
     *See*, Exs. 1, 11.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

1-SF/7454244.1                              12                          Case No. C06-02056 CW

1    [he] had a claim for overtime" and "hired [Mr. Miller] as [his] counsel file a class action lawsuit

2    for unpaid overtime and other claims" *prior to* the time Mr. Miller "prepared" and Reynov

3    "signed [the] engagement letter" on April 20, 2005 – which, of course, was more than one month

4    *prior to* his "carefully reviewing" and signing the Release agreement on May 23, 2005. *See also,*

5    Depo. 20:7-23, 22:4-23:22. There is no other logical interpretation of Reynov's statement.

6          The declaration of Mr. Miller further supports the fact that Reynov knew about potential

7    overtime claims against CSG prior to signing the Release agreement. Specifically, in the

8    declaration he submitted to this Court, Attorney Miller stated under penalty of perjury that

9    "[d]uring the first quarter of 2005" Reynov spoke with him and "complained of a number of

10   *Labor Code violations* by defendants". Miller Decl. ¶5 (emphasis added). It is important to note

11   that the overtime and other wage-related requirements of California law are contained in the

12   Labor Code (see, e.g., Labor Code Sections 200-202, 510, 512, 1194, 1197, etc.). Claims for

13   discrimination based upon age or other protected characteristics are contained in the California

14   *Government Code*, not the Labor Code. Thus, if Reynov had complained to Mr. Miller about age

15   discrimination, then one would expect Mr. Miller would have accurately stated in the declaration

16   he submitted to this Court that Reynov had "complained of a number of Government Code

17   violations". Mr. Miller did not do so; rather, he specifically indicated that Reynov complained

18   about "Labor Code violations" during the first 3 months of 2005. Moreover, the "Attorney

19   Retainer Agreement" which Reynov signed on April 20, 2005 stated that Mr. Miller would

20   represent him "in all claims for *violations of the Labor Code* and any other related laws."[14]

21         It would be absolutely disingenuous for Reynov to assert that his alleged entitlement to

22   overtime wages was not (and is not) the subject to a bona fide dispute. Labor Code Section 206.5

23   does not render the Release in this case void or unenforceable. As a result, all of Reynov's claims

24   should be dismissed.

25   \\\

26   \\\

27

---

[14] It is further relevant to note that Reynov testified that Mr. Miller was "angry" that Reynov had signed the Release. Depo. 80:4-12.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                          13                    Case No. C06-02056 CW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**B.   Reynov's Claims for Waiting Time Penalties Under Labor Code Section 203
and Meal and Rest Period Penalties Under Labor Code Section 226.7 Are
Barred by the Release**

Even *assuming arguendo* that Labor Code Section 206.5 could be interpreted as impacting
the enforceability of the Release as to Reynov's claim for overtime pay, Section 206.5 cannot
serve to invalidate the Release as to Reynov's claim for penalties under Labor Code Sections 203
and 226.7.[15]

**1.   Reynov cannot recover waiting time penalties**

"If an employer willfully fails to pay … any wages of an employee who is discharged or
who quits, the wages of the employee shall continue *as a penalty* from the due date thereof at the
same rate until paid or until an action therefor is commenced; but the wages shall not continue for
more than 30 days." Labor Code §203 (emphasis added).

As discussed in detail *supra*, the purpose of Section 206.5 is to prevent an employer from
conditioning the payment of wages concededly due to the employee on the employee executing a
release agreement. As evidenced by its plain language, Section 206.5 relates only to the release
of claims for "wages due". Section 203 pertains to payment of a "penalty", not a wage. It would
be inconsistent with the statutory language and intent of Section 206.5 to extend its application to
invalidate a release of claims for penalties under Section 203. To Defendants' knowledge, no
federal or state court to date has interpreted Section 206.5 as applying to (let alone invalidating) a
release agreement as it relates to claims for penalties. As a result, Plaintiff's claim for penalties
under Labor Code Section 203 should be dismissed because Plaintiff has waived and released this
claim.

**2.   Reynov cannot recover meal and rest period penalties**

Exempt employees are not entitled to meal and rest breaks under the law. As for non-
exempt employees, Labor Code Section 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest
period mandated by an applicable order of the Industrial Welfare Commission.

---

[15] The Release specifically provides: "If any part or any provision of this Letter Agreement is determined to be
invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the
extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision
or the remaining provisions of this Letter Agreement."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                    14                    Case No. C06-02056 CW
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1       (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Payments for missed meal and rest periods are not considered "wages", but rather are treated as penalties. The California Supreme Court is presently reviewing this issue in *Murphy v. Kenneth Cole Productions, Inc.* 36 Cal.Rptr.3d 418, 440 (2005) *review granted* 40 Cal.Rptr.3d 750 (Feb. 22, 2006). However, federal district courts have held that the payment specified in Section 226.7 is a penalty. Specifically, in *Corder v. Houston's Restaurants, Inc.*, 424 F.Supp.2d 1205, 1210 (C.D. Cal. 2006), the Court based its decision on the following factors: the legislative history and purpose of the payment mandated by Section 226.7 reveal that it was intended by the Legislature to be a penalty, employers have no discretion in granting meal or rest periods, the mandated payment does not compensate an employee for additional services rendered, and the DLSE views the payment as a penalty. *Id.* at 1208-10. "In sum, the payment mandated by Labor Code section 226.7(b) is unquestionably a penalty. The California Legislature clearly intended for the payment to be a penalty and it certainly has all the features of one. It is imposed as a result of an employer's violation of the law and it is a fixed amount not dependent on the amount of time that the employee was improperly required to work by the employer."[16] *Id.* at 1210.

For the same reasons explained above, because Section 226.7 does not provide for the payment of wages, but rather provides for payment of penalties, the release of such claim is not encompassed within the scope of Section 206.5. Moreover, Labor Code Section 226.7 became effective on January 1, 2001 - - more than 40 years after the legislature enacted Section 206.5; thus, the legislature could not have intended the scope of Section 206.5 to extend to invalidate a release of penalty claims under Section 226.7. As a result, Plaintiff's claim for penalties under

---

[16] Similarly, in *Pulido v. Coca-Cola Enterprises, Inc.*, 2006 WL 1699328, at *4-5 (C.D. Cal. 2006), the Court ruled that "payments ordered under section 226.7 are properly considered a penalty." *Id.* at *5. In explaining its decision, the Court stated that "[i]t is scarcely logical to classify the statutory damages as a wage when a court need not examine the actual amount of time worked by the employee." *Id.* The Court also noted that the legislative history reflects the desire to curb employers' abuse of employees' meal and rest periods, in other words, to penalize such employers. The Court agreed with *Corder* that since Section 226.7(a) clearly prohibits employers from requiring employees to work during break periods, the violation of that prohibition "must be considered a penalty." *Id.* at *6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1          15          Case No. C06-02056 CW
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Labor Code Section 226.7 should be dismissed.

2    **C.    Reynov Has No Private Right of Action to Recover Civil Penalties Pursuant to Labor Code Section 558**

3

4    Plaintiff seeks to recover penalties under Labor Code Section 558. *See*, Complaint, Prayer

5    for Relief, 12:1-13.

6    Section 558 provides for civil penalties which may only be recovered in an action by the

7    California Labor Commissioner – individual employees do not have a private right of action

8    under Section 558. *See*, Labor Code §558(b). An employee seeking to recover the penalties

9    provided under Section 558 can do so only by filing a claim under the California Private

10    Attorneys General Act ("PAGA"), Labor Code Section 2699, et. seq., and complying with the

11    administrative exhaustion requirements mandated therein. *Reynolds v. Bement*, 36 Cal.4th 1075,

12    1085, 1089 (2005); *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 2007

13    Cal.App. LEXIS 274, *2 (February 28, 2007). Plaintiff has not filed a PAGA claim, nor can he

14    do so because the statute of limitations for such a claim has run. *See* C.C.P. § 340. Therefore,

15    Plaintiff cannot recover penalties under Section 558 and his claim for such penalties must be

16    dismissed as a matter of law.

17    **D.    The Release Bars Reynov's Claim for Unfair Competition Under California Business and Professions Code Section 17200**

18

19    Plaintiff's "Second Cause of Action" alleges that Defendants engaged in "unfair business

20    practices" and engaged in "unfair competition" and, in doing so, allegedly violated Business &

21    Professions Code Section 17200. *See*, Complaint ¶¶28-29.

22    Plaintiff's Business & Professions Code claim is encompassed within the broad range of

23    claims subject to the Release (i.e., "all claims, actions and causes of action (collectively the

24    "claims"), of every kind, nature and description, which exist as of the date you sign this Letter

25    Agreement, arising out of or related to your employment and the termination thereof"). The plain

26    language of the Release therefore compels the dismissal of this claim.

27    Reynov may argue that Labor Code Section 206.5 renders the Release ineffective as to his

28    Unfair Competition Law ("UCL") claim. Such argument must fail for several reasons. First, his

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                    16                    Case No. C06-02056 CW

1    UCL claim is derived from a completely different statutory framework than the Labor Code.

2    There is nothing in either the plain language or legislative history of Section 206.5 which

3    suggests that Section 206.5 was intended to invalidate a release of claims brought under an

4    entirely different statutory framework outside of the Labor Code.  Labor Code § 206.5 is intended

5    to ensure that employees receive wages which are concededly due.  The purpose of the UCL is

6    *not* to ensure that workers get paid their wages, but rather is to "foster and encourage

7    competition."  *See*, Business & Professions Code § 17001.

8         Second, the only available remedy under the Unfair Competition Law is restitution, not

9    wages per se.[17]  The fact that the Release bars any claim by Plaintiff for restitution in no way

10   limits or impairs any claim for wages under the provisions of the Labor Code.  An Unfair

11   Competition Law action is independent of a statutory claim for back wages.  *Stop Youth*

12   *Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 572-573 (1998).  Therefore, Section 206.5

13   cannot serve to invalidate a release of a restitutionary claim.

14        Third, an Unfair Competition Law claim is equitable in nature.  California Law recognizes

15   that: "it is axiomatic that one who seeks equity must be willing to do equity."  *Farmers Ins.*

16   *Exchange v. Zerin*, 53 Cal. App. 4th 445, 453 (1997).  A defendant to an Unfair Competition Law

17   claim may assert equitable defenses.  *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th

18   163, 180-181 (2000).  "Equitable estoppel may also be asserted when equitable relief is sought."

19   *Id.* at 180.

20        Here, Reynov wants to retain all of the consideration provided by CSG per the Release

21   agreement (e.g., more than $22,000 in severance, continued vesting of stock options, continued

22   participation in the Employees' Savings-Stock Purchase Plan, etc.), but also wants to deny CSG

23   the single-most important consideration provided by him per the Release agreement (e.g., a

24   legally enforceable release of any and all claims against CSG).  Quite simply, Reynov wants to

25   "have his cake and eat it, too."  Equity does not countenance such an unfair result.  Reynov

26   should not be allowed to maintain his Business & Professions Code claim given the clear

27

28

---

[17] Defendants acknowledge that wages are one element of restitution which may be recovered under Business & Professions Code §17200, *et seq.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                          17                    Case No. C06-02056 CW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1 | language of the Release agreement. Nothing in Labor Code Section 206.5 affects the validity of
2 | the Release as to his Business & Professions Code claim.

3 **E.    Each of Reynov's Claims Is Barred by the Doctrine of Estoppel**

4 "The foundation of estoppel is justice and good conscience." *Estate of Anderson*, 60
5 Cal.App.4th 436, 440 (1997). Estoppel functions "to prevent a person from asserting a right
6 where his conduct makes it unconscionable for him to assert it . . . ." *Id.* Quasi-estoppel "is
7 based upon the principle that one cannot blow both hot and cold, or that one with full knowledge
8 of the facts shall not be permitted to act in a manner inconsistent with his former position or
9 conduct to the injury of another." *Id.* at 442. For example, "'when a person with the capacity of
10 reading and understanding an instrument signs it, he is, in the absence of fraud and imposition,
11 bound by its contents and is estopped from saying that its explicit provisions are contrary to his
12 intentions or understanding.'" *Id.* at 441-42. In *Estate of Anderson*, the Court determined that the
13 appellant should not be allowed to renounce his marriage to decedent in order to remarry and
14 then, after thirty-eight years of separation, seek a judicial declaration that he is decedent's
15 surviving spouse in order to inherit an interest in decedent's estate. *Id.* at 442 (concluding that
16 because appellant procured the marriage license to marry his second wife by claiming that he had
17 never been married before, he was estopped from contesting the validity of that statement).

18 Here, Reynov should be bound by the Release agreement he "carefully read" and signed
19 the Release while represented by counsel. In signing the Release agreement, Reynov represented
20 that the Company owed him no other wages or payments of any nature. He cannot now "be
21 permitted to act in a manner inconsistent with his former position." *Id.* at 442; *see also Schulze v.*
22 *Schulze*, 121 Cal. App. 2d 75, 83 (1953) ("One to whom two inconsistent courses of action are
23 open and who elects to pursue one of them is afterward precluded from pursuing the other.").

24 **IV.    CONCLUSION**

25 Plaintiff Reynov consulted with an attorney and learned he had potential claims for
26 overtime against the Company, then formally hired and retained that attorney to bring claims
27 against Defendants for Labor Code violations. Reynov then later negotiated and signed a general
28 release of all claims against Defendants which included a waiver of all known and unknown

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1    18    Case No. C06-02056 CW

1  claims under California Civil Code Section 1542.

2      This Court should find the terms and conditions of the Release agreement are valid and

3  enforceable and enter judgment in favor of Defendants and dismiss Plaintiff's Complaint in its

4  entirety.

5  Dated: March 22, 2007                    MORGAN, LEWIS & BOCKIUS LLP

6                                           By

7                                               Eric Meckley
                                                Attorneys for Defendants
8                                               ADP Claims Services Group, Inc.
                                                Automatic Data Processing, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7454244.1                    19                    Case No. C06-02056 CW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT