# EXHIBIT A



165 P.3d 556                                                                                                      Page 1

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
(Cite as: 42 Cal.4th 443, 165 P.3d 556)

**H**
Gentry v. Superior Court
Cal.,2007.

Supreme Court of California
Robert GENTRY, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County,
Respondent;
Circuit City Stores, Inc., Real Party in Interest.
No. S141502.

Aug. 30, 2007.

**Background:** Retail store manager filed purported class action against employer seeking damages for conversion and statutory violations arising from employer's alleged failure to pay its managers overtime wages to which they were entitled. Employer filed motion to compel arbitration. The Superior Court, Los Angeles County, No. BC280631,Thomas L. Willhite, Jr., J., granted the motion. Manager filed petition for writ of mandate. The Court of Appeals initially denied petition. The Supreme Court granted manager's petition for review and remanded On reconsideration, the Court of Appeal denied petition. The Supreme Court granted review, superseding the opinion of the Court of Appeal.

**Holdings:** The Supreme Court, Moreno, J., held that:

(1) class arbitration waivers in employment agreements could not be enforced if court determined that class arbitration would be significantly more effective way of vindicating rights;

(2) remand was required for trial court to determine propriety of class arbitration; and

(3) arbitration agreement was not free from procedural unconscionability.

Judgment of the Court of Appeal reversed and cause remanded.

Baxter, J., filed a dissenting opinion, in which Chin and Corrigan, JJ., joined.

Opinion, 37 Cal.Rptr.3d 790, superseded.
West Headnotes
**[1] Alternative Dispute Resolution 25T ☜134(1)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity
                25Tk134 Validity
                    25Tk134(1) k. In General. Most Cited Cases
Class arbitration waivers in employment agreements, although not contrary to public policy per se, may not be enforced to preclude class arbitration to pursue unwaivable statutory rights to overtime pay, if court determines that class arbitration would be significantly more effective way of vindicating rights than individual arbitration; factors to be considered include modest size of potential individual recovery, potential for retaliation against members of class, fact that absent members of class may be ill informed about their rights, and other "real world" obstacles to vindication of class members' right to overtime pay through individual arbitration. West's Ann.Cal.Labor Code §§ 510, 1194.
*See 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, §§ 494, 500; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2006) ¶ 5:155.2e (*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

*CAADR Ch. 5-D); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 14:7.10 et seq. (CACIVP Ch. 14-A); Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2006) ¶ 18:671 ( CAEMPL Ch. 18-C); Cal. Jur. 3d, Arbitration and Award, § 35; Cal. Civil Practice (Thomson/West 2003) Procedure, § 26:46.*

**[2] Labor and Employment 231H ⇌2327**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime Pay
            231HXIII(B)4 Operation and Effect of Regulations
                231Hk2327 k. Waiver and Estoppel. Most Cited Cases
The rights to the legal minimum wage and legal overtime compensation conferred by the statute are unwaivable; the statute confirms a clear public policy that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers. West's Ann.Cal.Labor Code § 1194.

**[3] Labor and Employment 231H ⇌2372**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime Pay
            231HXIII(B)6 Actions
                231Hk2372 k. Parties; Standing. Most Cited Cases
Although overtime and minimum wage laws may at times be enforced by the Department of Labor Standards Enforcement (DLSE), it is the clear intent of the Legislature in the statute allowing employees to pursue an action to recover unpaid wages that minimum wage and overtime laws should be enforced in part by private action brought by aggrieved employees. West's Ann.Cal.Labor Code § 1194.

**[4] Alternative Dispute Resolution 25T ⇌134(1)**

25T Alternative Dispute Resolution
    25TII Arbitration

25TII(B) Agreements to Arbitrate
    25Tk131 Requisites and Validity
        25Tk134 Validity
            25Tk134(1) k. In General. Most Cited Cases
An employee is bound by a predispute arbitration agreement to adjudicate unwaivable statutory employment rights provided: (1) the arbitration agreement does not limit the damages normally available under the statute, (2) there is discovery sufficient to adequately arbitrate their statutory claim, (3) there is a written arbitration decision and judicial review sufficient to ensure the arbitrators comply with the requirements of the statute, and (4) the employer pays all types of costs that are unique to arbitration.

**[5] Parties 287 ⇌35.1**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.1 k. In General. Most Cited Cases
By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.

**[6] Parties 287 ⇌35.9**

287 Parties
    287III Representative and Class Actions
        287III(A) In General
            287k35.9 k. Discretion of Court. Most Cited Cases
Trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action.

**[7] Alternative Dispute Resolution 25T ⇌208**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
            25Tk204 Remedies and Proceedings for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

Enforcement in General
      25Tk208 k. Parties. Most Cited Cases
Class arbitration must meet the "community of interest" requirement for all class actions, consisting of three factors: (1) predominant common questions of law or fact, (2) class representatives with claims or defenses typical of the class, and (3) class representatives who can adequately represent the class.

**[8] Alternative Dispute Resolution 25T ☞114**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(A) Nature and Form of Proceeding
           25Tk114 k. Constitutional and Statutory Provisions and Rules of Court. Most Cited Cases

**Alternative Dispute Resolution 25T ☞208**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
           25Tk204 Remedies and Proceedings for Enforcement in General
                25Tk208 k. Parties. Most Cited Cases
Class actions are not incompatible with arbitration, and compelling class arbitration in the appropriate case does not violate the Federal Arbitration Act (FAA). 9 U.S.C.A. § 1 et seq.

**[9] Alternative Dispute Resolution 25T ☞213(6)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
           25Tk204 Remedies and Proceedings for Enforcement in General
                25Tk213 Review
                    25Tk213(6) k. Determination and Disposition. Most Cited Cases
After Supreme Court set forth rules for enforceability of class arbitration waivers in employment agreements, remand was required, in retail store manager's purported class action against employer for alleged failure to pay its managers statutory overtime wages, for trial court to

determine whether class arbitration would be significantly more effective means than individual arbitration actions of vindicating employees' right to overtime pay. West's Ann.Cal.Labor Code §§ 510, 1194.

**[10] Alternative Dispute Resolution 25T ☞140**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
           25Tk140 k. Severability. Most Cited Cases
Generally, when an arbitration agreement contains a single term in violation of public policy, that term will be severed and the rest of the arbitration agreement enforced.

**[11] Alternative Dispute Resolution 25T ☞140**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
           25Tk140 k. Severability. Most Cited Cases
Severance of an improper waiver of class arbitration from the remainder of an arbitration agreement is particularly appropriate because, unlike limitations on remedies or other limitations that are invalid on their face, such waivers will only be invalidated after the proper factual showing.

**[12] Alternative Dispute Resolution 25T☞ 134(6)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
           25Tk131 Requisites and Validity
                25Tk134 Validity
                    25Tk134(6) k. Unconscionability. Most Cited Cases
Arbitration agreement in employment contract was not free from procedural unconscionability notwithstanding employee's 30-day opt-out provision, thereby requiring scrutiny into substantive unconscionability; explanation in handbook was markedly one-sided in that it failed to show disadvantages of this agreement such as shortened limitations periods, limitations on remedies, maximum punitive damages against

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

employer, and unfavorable attorney fee provision, and agreement was structured so that employee would not feel free to opt out in light of employer's superior economic power.

**[13] Alternative Dispute Resolution 25T⟜133(2)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity
                25Tk133 Formal Requisites
                    25Tk133(2) k. Writing, Signature, and Acknowledgment. Most Cited Cases
Employee's signature on receipt of "issue resolution package," which included 30-day opt-out provision of arbitration agreement, was not mere acknowledgment of receipt of package, but constituted acceptance of arbitration agreement in light of his failure to opt out.

**[14] Contracts 95 ⟜1**

95 Contracts
    95I Requisites and Validity
        95I(A) Nature and Essentials in General
            95k1 k. Nature and Grounds of Contractual Obligation. Most Cited Cases
Doctrine of unconscionability of contract has both procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.

**[15] Contracts 95 ⟜1**

95 Contracts
    95I Requisites and Validity
        95I(A) Nature and Essentials in General
            95k1 k. Nature and Grounds of Contractual Obligation. Most Cited Cases
The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.

**[16] Contracts 95 ⟜1**

95 Contracts
    95I Requisites and Validity
        95I(A) Nature and Essentials in General
            95k1 k. Nature and Grounds of Contractual Obligation. Most Cited Cases
Procedural and substantive unconscionability must both be present in order for court to refuse to enforce contract or clause under the doctrine of unconscionability; but they need not be present in same degree, and the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

**[17] Contracts 95 ⟜1**

95 Contracts
    95I Requisites and Validity
        95I(A) Nature and Essentials in General
            95k1 k. Nature and Grounds of Contractual Obligation. Most Cited Cases
A finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.

**[18] Contracts 95 ⟜1**

95 Contracts
    95I Requisites and Validity
        95I(A) Nature and Essentials in General
            95k1 k. Nature and Grounds of Contractual Obligation. Most Cited Cases
A conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract because of its confidence that the contract was negotiated or chosen freely, that the party subject to a seemingly one-sided term is presumed to have obtained some advantage from conceding the term or that, if one party negotiated poorly, it is not the court's place to rectify these kinds of errors or asymmetries.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 P.3d 556

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

**776 Riordan & Horgan, Dennis P. Riordan, San Francisco; Righetti & Wynne, Righetti Law Firm, Matthew Righetti, San Francisco, John Glugoski; Law Offices of Ellen Lake and Ellen Lake, Oakland, for Petitioner.

Altshuler, Berzon, Nussbaum, Rubin & Demain, Michael Rubin, Dorthea Langsam, San Francisco; McGuinn, Hillsman & Palefsky and Cliff Palefsky, San Francisco, for International Brotherhood of Teamsters, Laborers International Union of North America, Service Employees International Union, Unite-Here and California Employment Lawyers Association as Amici Curiae on behalf of Petitioner.

Goldstein, Demchak, Baller, Borgen & Dardarian, Laura L. Ho, Oakland, and Jospeh E. Jaramillo, for Trial Lawyers for Public Justice, Asian Law Caucus, Asian Pacific American Legal Center, California Rural Legal Assistance Foundation, Hastings Civil Justice Clinic, Impact Fund, The Katherine and George Alexander Community Law Center, La Raza Centro Legal, Inc., Lawyers' Committee for Civil Rights of the San Francisco Bay Area, The Legal Aid Society of San Francisco-Employment Law Center and Mexican American Legal Defense and Educational Fund as Amici Curiae on behalf of Petitioner.

Law Office of Michael H. Crosby and Michael H. Crosby, San Diego, as Amici Curiae on behalf of Petitioner.

Edmund G. Brown, Jr., Attorney General, Tom Greene, Chief Assistant Attorney General, Albert Norman Shelden, Assistant Attorney General, Ronald A. Reiter and Michele R. Van Gelderen, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Berry & Block, Rex Darrell Berry, Scott M. Plamondon, Sacramento; Jones Day and Steven B. Katz, Los Angeles, for Real Party in Interest.

Littler Mendelson, Henry D. Lederman, Lisa C. Chagala and Harry M. Decourcy, Walnut Creek, for Ralphs Grocery Company as Amicus Curiae on behalf of Real Party in Interest.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Kelly L. Hensley and Melissa K. Lee, Los Angeles, for National Retail Federation and California Retailers Association as Amici Curiae on behalf of Real Party in Interest.

Deborah J. La Fetra and Timothy Sandefur, Sacramento, for Pacific Legal Foundation as Amicus Curiae on behalf of Real Party in Interest.

National Chamber Litigation Center, Robin S. Conrad; Constantine Cannon, W. Stephen Cannon, Raymond C. Fay; Mayer, Brown, Rowe & Maw and Donald M. Falk, Palo Alto, for Chamber of Commerce of the United States of America and Retail Industry Leaders Association as Amici Curiae on behalf of Real Party in Interest.

Jones Day, Elwood Lui and Harry I. Johnson III, Los Angeles, for Federated **777 Department Stores, Inc., as Amicus Curiae on behalf of Real Party in Interest.

Fulbright & Jaworski and James R. Evans, Los Angeles, for U-Haul Co. of California as Amicus Curiae on behalf of Real Party in Interest.

Morgan, Lewis & Bockius, Rebecca D. Eisen, Brett M. Schuman and John D. Battenfeld, Los Angeles, for Employers Group as Amicus Curiae on behalf of Real Party in Interest.

Stroock & Stroock & Lavan, Julia B. Strickland, James W. Denison and Andrew W. Moritz, Los Angeles, for California Bankers Association, American Bankers Association, Consumer Bankers Association and American Financial Services Association as Amici Curiae on behalf of Real Party in Interest.

MORENO, J.

*450 In this case we consider whether class arbitration waivers in employment arbitration agreements may be enforced to preclude class arbitrations by employees whose statutory rights to overtime pay pursuant to Labor Code sections 500 et seq. and 1194 [FN1] allegedly have been violated. We conclude that at least in some cases, the prohibition of classwide relief would undermine the vindication of the employees' unwaivable statutory rights and would pose a serious obstacle to the enforcement of the state's overtime laws. Accordingly, such class arbitration waivers should not be enforced if a trial court determines, based on the factors discussed below, that class arbitration would be a significantly more effective way of vindicating the rights of affected employees than individual arbitration. We therefore reverse the judgment of the Court of Appeal upholding the class arbitration waiver and remand for the above determination.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

FN1. All statutory references are to this code unless otherwise indicated.

Another issue posed by this case is whether a provision in an arbitration agreement that an employee can opt out of the agreement within 30 days means that the agreement is not procedurally unconscionable, thereby insulating it from employee claims that the arbitration agreement is substantively *451 unconscionable or unlawfully exculpatory. As explained below, a finding of procedural unconscionability is not required to invalidate a class arbitration waiver if that waiver implicates unwaivable statutory rights. But such a finding is a prerequisite to determining that the arbitration agreement as a whole is unconscionable. Plaintiff in this case argues that other terms of the arbitration agreement were substantively unconscionable and that the entire agreement should not be enforced. Contrary to the Court of Appeal, we conclude the present agreement has an element of procedural unconscionability notwithstanding the opt-out provision, and therefore remand for a determination of whether provisions of the arbitration agreement were substantively unconscionable.

## I. STATEMENT OF FACTS

The facts are for the most part not in dispute. On August 29, 2002, Robert Gentry filed a class action lawsuit in superior court against Circuit City Stores, Inc. (Circuit City), seeking damages for violations of the Labor Code and Business and Professions Code, as well as for conversion. Gentry filed suit on behalf of salaried customer service managers such as himself whom Circuit City had allegedly " illegally misclassified" as "exempt managerial/executive employees" not entitled to overtime pay, when in fact, they were " 'non-exempt ' non-managerial employees" entitled to be compensated for hours worked in excess of **778 eight hours per day and 40 hours per week.

When he was hired by Circuit City in 1995, Gentry received a packet that included an "Associate Issue Resolution Package" and a copy of Circuit City's " Dispute Resolution Rules and Procedures,"

pursuant to which employees are afforded various options, including arbitration, for resolving employment-related disputes. By electing arbitration, the employee agrees to "dismiss any civil action brought by him in contravention of the terms of the parties' agreement." The agreement to arbitrate also contains a class arbitration waiver, which provides: "The Arbitrator shall not consolidate claims of different Associates into one proceeding, nor shall the Arbitrator have the power to hear arbitration as a class action...." As will be explained at greater length below, the arbitration agreement also contained several limitations on damages, recovery of attorney fees, and the statute of limitations that were less favorable to employees than were provided in the applicable statutes. The packet included a form that gave the employee 30 days to opt out of the arbitration agreement. Gentry did not do so.

At that time, there was a split of authority in California on the enforceability of class action waivers in consumer contracts. (See *452*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 [waivers unconscionable]; *Discover Bank v. Superior Court* (2003) 105 Cal.App.4th 326, 129 Cal.Rptr.2d 393 [waivers must be upheld under the Federal Arbitration Act], overruled by*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100(*Discover Bank* ).) Circuit City moved to compel arbitration. The court acknowledged that the governing case law was "conflicting and in a state of flux," and elected to follow the Court of Appeal decision in *Discover Bank v. Superior Court.* The court did hold two provisions of the agreement (cost splitting and limitation of remedies provisions) substantively unconscionable based on federal case law. (*Morrison v. Circuit City Stores, Inc.* (6th Cir.2003) 317 F.3d 646.) The court severed those provisions from the agreement, ordered Gentry to "arbitrate his claims on an individual basis and submit to the class action waiver," and stayed the superior court action.

Gentry filed a mandate petition on September 9, 2003. The Court of Appeal denied the petition, noting that the issue of the enforceability of the class action waiver was before this court in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

*Discover Bank.* We granted Gentry's petition for review and deferred briefing pending our decision in *Discover Bank.* On June 27, 2005, we issued our decision in *Discover Bank, supra,* 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100. As discussed at greater length below, we held that "at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable" as unconscionable. ( *Discover Bank, supra,* 36 Cal.4th at p. 153, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) We remanded this case for reconsideration in light of *Discover Bank.*

On remand, the Court of Appeal again denied Gentry's petition for writ of mandate. It distinguished the class arbitration waiver in this case from the one found unconscionable in *Discover Bank* on two principal grounds. First, the court held that the agreement was not unconscionable because of the 30-day opt-out provision. Because of this provision, "the agreement at issue here does not have that adhesive element and therefore is not procedurally unconscionable."

Second, for reasons elaborated on below, it found the class arbitration waiver here was distinguishable from the one in *Discover Bank* and not substantively unconscionable**779 because the present case, unlike *Discover Bank,* did not involve "predictably ... small amounts of damages." ( *Discover Bank, supra,* 36 Cal.4th at p. 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100.)

We granted review to clarify our holding in *Discover Bank.*

### *453 II. DISCUSSION

#### A. Class Arbitration Waiver in Overtime Cases May Be Contrary to Public Policy

[1] In *Discover Bank,* the plaintiff sought to prosecute a class action against a credit card company that had allegedly defrauded a large number of customers for small amounts of money, as low as $29 in the plaintiff's case. (*Discover*

*Bank, supra,* 36 Cal.4th at p. 154, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) The credit card company had inserted into its agreement with its customers an amendment by sending a notice to its customers and informing them that continued use of the account would constitute acceptance of the terms of the amendment. The amendment required arbitration of all disputes and prohibited classwide arbitration. (*Id.,* at pp. 153-154, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) In finding such agreements generally unconscionable under California law, we started out reviewing the policies in favor of class actions and class arbitration [FN2] in consumer actions, quoting *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 808, 94 Cal.Rptr. 796, 484 P.2d 964(*Vasquez* ): " ' Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial.' " (*Discover Bank, supra,* 36 Cal.4th at p. 156, 30 Cal.Rptr.3d 76, 113 P.3d 1100.)

FN2. For the sake of economy, this opinion will sometimes refer to class action litigation and class arbitrations generically as "class actions."

Because of the importance of class actions in consumer litigation, we concluded that "at least some class action waivers in consumer contracts are unconscionable under California law. First, when, a consumer is given an amendment to its cardholder agreement in the form of a 'bill stuffer' that he would be deemed to accept if he did not close his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

account, an element of procedural unconscionability is present. [Citation.] Moreover, although adhesive contracts are generally enforced [citation], class action waivers found in such contracts may also be substantively unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy. As stated in Civil Code section 1668: 'All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility **\*454** for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.'...

"Class action and arbitration waivers are not, in the abstract, exculpatory clauses. But because, as discussed above, damages **\*\*780** in consumer cases are often small and because ' "[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit" ' [citation], ' "the class action is often the only effective way to halt and redress such exploitation." ' [Citation.] Moreover, such class action or arbitration waivers are indisputably one-sided. 'Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover [Bank], because credit card companies typically do not sue their customers in class action lawsuits.' [Citation.] Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable." (*Discover Bank, supra*, 36 Cal.4th at pp. 160-161, 30 Cal.Rptr.3d 76, 113 P.3d 1100, italics omitted.)

We clarified that "[w]e do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from

responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ.Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank, supra*, 36 Cal.4th at pp. 162-163, 30 Cal.Rptr.3d 76, 113 P.3d 1100.)

We also concluded in *Discover Bank* that it was unnecessary to abandon the arbitration forum in order to address the claims of a class of consumers. Rather, class arbitration was a well-accepted alternative to class litigation on the one hand and individual arbitration on the other. (*Discover Bank, supra*, 36 Cal.4th at pp. 157-158, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) We noted that class arbitration has been in use for the last 20 years and that rules concerning such arbitration have been incorporated into various dispute resolution services. (*Id.*, at p. 172, 30 Cal.Rptr.3d 76, 113 P.3d 1100.)

In *Discover Bank*, before discussing the general principles of unconscionability on which that decision was based, we noted that the Court of Appeal in *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 108 Cal.Rptr.2d 699 (*AOL*), had invalidated a Virginia choice-of-law provision in *\*455* a consumer contract with no arbitration agreement that effectively would have disallowed the pursuit of a class action. The plaintiff sought class relief pursuant to California's Consumer Legal Remedies Act (CLRA) ( Civ.Code, § 1750 et seq.), which specifically authorizes such class actions (Civ.Code, § 1781), and which further provides in Civil Code section 1751 that " '[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void.' " (*Discover Bank, supra*, 36 Cal.4th at p. 158, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) We noted that the plaintiff in *Discover Bank* did "not plead a CLRA cause of action and so does not invoke its antiwaiver provision; nor does he seek recovery under any other California statute as to which a class action remedy is essential"(*id.*, at p. 160, 30 Cal.Rptr.3d 76, 113 P.3d 1100, fn. omitted) apparently because the plaintiff sought to pursue a national class action suit and had made a strategic decision not to rely on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

a California statute. **781 (*Discover Bank, supra,* 36 Cal.4th at p. 160, fn. 2, 30 Cal.Rptr.3d 76, 113 P.3d 1100.)Accordingly, we had no occasion in *Discover Bank* to consider whether a class action or class arbitration waiver would undermine the plaintiff's statutory rights.

[2][3] In the present case, Gentry's lawsuit is pursuant to statute. Section 510 provides that nonexempt employees will be paid one and one-half their wages for hours worked in excess of eight per day and 40 per week and twice their wages for work in excess of 12 hours a day or eight hours on the seventh day of work. Section 1194 provides a private right of action to enforce violations of minimum wage and overtime laws.[FN3] That statute states: "*Notwithstanding any agreement* to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."(§ 1194, subd. (a), italics added.) By its terms, the rights to the legal minimum wage and legal overtime compensation conferred by the statute are unwaivable. "Labor Code section 1194 confirms 'a clear public policy ... that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers.' " ( *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 340, 17 Cal.Rptr.3d 906, 96 P.3d 194(*Sav-On Drug Stores* ).) Although overtime and minimum wage laws may at times be enforced by the Department of Labor Standards Enforcement (DLSE), it is the clear intent of the Legislature in section 1194 that minimum wage and overtime laws should be enforced in part by private action brought by aggrieved employees. (See *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 746, 9 Cal.Rptr.3d 544(*Bell* ) [noting declaration of former *456 chief counsel of DLSE indicating that without private enforcement through class actions department's resources to resolve claims would be overtaxed].)

FN3. Although Gentry pleads causes of action under Business and Professions Code section 17200 et seq. as well as for common law conversion, these actions are based on Circuit City's alleged violation of the overtime laws, which section 1194 is intended to enforce. We therefore focus on the ability of employees to vindicate their rights pursuant to section 1194.

The public importance of overtime legislation has been summarized as follows: "An employee's right to wages and overtime compensation clearly have different sources. Straight-time wages (above the minimum wage) are a matter of private contract between the employer and employee. Entitlement to overtime compensation, on the other hand, is mandated by statute and is based on an important public policy....'The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. [Citations.] California courts have long recognized [that] wage and hours laws "concern not only the health and welfare of the workers themselves, but also the public health and general welfare." [Citation.] ... [O]ne purpose of requiring payment of overtime wages is " 'to spread employment throughout the work force by putting financial pressure on the employer....' " [Citation.] Thus, overtime wages are another example of a public policy fostering society's interest in a stable job market. [Citation.] Furthermore ... the Legislature's decision to criminalize certain employer conduct reflects a determination [that] the conduct affects a broad public interest.... Under Labor Code section 1199 it is a **782 crime for an employer to fail to pay overtime wages as fixed by the Industrial Welfare Commission.' " (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430, 95 Cal.Rptr.2d 57.) Moreover, the overtime laws also serve the important public policy goal of protecting employees in a relatively weak bargaining position against " 'the evil of "overwork." ' " (*Barrentine v. Arkansas-Best Freight System* (1981) 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 [commenting on overtime provision of the federal Fair Labor Standards Act].)

[4] In short, the statutory right to receive overtime pay embodied in section 1194 is unwaivable. In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669(*Armendariz* ), we held that when an employee is bound by a predispute arbitration agreement to adjudicate unwaivable statutory employment rights (in that case, rights conferred by the Fair Employment and Housing Act (FEHA)), the arbitration will be subject to certain minimal requirements. As we summarized in a subsequent case: "(1) the arbitration agreement may not limit the damages normally available under the statute ( *Armendariz, supra,* 24 Cal.4th at p. 103[, 99 Cal.Rptr.2d 745, 6 P.3d 669] ); (2) there must be discovery 'sufficient to adequately arbitrate their statutory claim'(*id.* at p. 106 [, 99 Cal.Rptr.2d 745, 6 P.3d 669] ); (3) there must be a written arbitration decision and judicial review ' "sufficient to ensure the arbitrators comply with the requirements of the statute" ' (*ibid.*); and (4) the employer must 'pay all types of *457 costs that are unique to arbitration'(*id.* at p. 113[, 99 Cal.Rptr.2d 745, 6 P.3d 669] )." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076[, 130 Cal.Rptr.2d 892, 63 P.3d 979](*Little* ).) Our imposition of these requirements was based on the recognition that while "a party compelled to arbitrate such rights does not waive them, but merely ' "submits to their resolution in an arbitral, rather than a judicial, forum" ' [citation], arbitration cannot be misused to accomplish a de facto waiver of these rights." (*Little, supra,* 29 Cal.4th at p. 1079, 130 Cal.Rptr.2d 892, 63 P.3d 979.) "[T]he above requirements [are] necessary to enable an employee to vindicate ... unwaivable rights in an arbitration forum." (*Id.* at p. 1077, 130 Cal.Rptr.2d 892, 63 P.3d 979.)

We have not yet considered whether a class arbitration waiver would lead to a de facto waiver of statutory rights, or whether the ability to maintain a class action or arbitration is "necessary to enable an employee to vindicate ... unwaivable rights in an arbitration forum." (*Little, supra,* 29 Cal.4th at p. 1077, 130 Cal.Rptr.2d 892, 63 P.3d 979.) We conclude that under some circumstances such a provision would lead to a de facto waiver and would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws.

In arguing the contrary, Circuit City focuses on the language in *Discover Bank* stating that we were not holding all class action waivers to be necessarily unconscionable, but that waivers in consumer contracts of adhesion involving "predictably ... small amounts of damages," that are part of a " scheme to deliberately cheat large numbers of consumers out of individually small sums of money, " will be held to be unconscionable and unenforceable. (*Discover Bank, supra,* 36 Cal.4th at pp. 162-163, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) Circuit City argues, as the Court of Appeal concluded, that this is not such a case.

Yet the above quoted passage in *Discover Bank* was not intended to suggest that consumer actions involving minuscule amounts of damages were the only actions in which class action waivers would not be **783 enforced. Rather, *Discover Bank* was an application of a more general principle: that although "[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses"(*Discover Bank, supra,* 36 Cal.4th at p. 161, 30 Cal.Rptr.3d 76, 113 P.3d 1100), such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy. Gentry argues persuasively that class action waivers in wage and hour cases and overtime cases would have, at least frequently if not invariably, a similar exculpatory effect for several reasons, and would therefore undermine the enforcement of the statutory right to overtime pay.

First, individual awards in wage and hour cases tend to be modest. In addition to the fact that litigation over minimum wage by definition involves the lowest-wage workers, overtime litigation also usually involves workers at *458 the lower end of the pay scale, since professional, executive, and administrative employees are generally exempt from overtime statutes and regulations. (See Cal.Code Regs., tit. 8, § 11070, subd. I(A); *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 798, fn. 4, 85 Cal.Rptr.2d 844, 978 P.2d 2.) According to the DLSE's report in response to Gentry's Public Records Act request, the average award from its wage adjudication unit for 2000-2005 was $6,038. (See also Asian Pacific

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

American Legal Center et al., Reinforcing the Seams: Guaranteeing the Promise of California's Landmark Anti-Sweatshop Law, An Evaluation of Assembly Bill 633 Six Years Later (Sept. 2005) p. 2 [average claim for overtime and minimum wage violations submitted to DLSE ranged from $5,000-$7,000, and settlement ranged from $400-$1,600].)

Indeed, the Court of Appeal in *Bell, supra,* 115 Cal.App.4th 715, 9 Cal.Rptr.3d 544, rejected the argument that even an award as large as $37,000 would be "ample incentive" for an individual lawsuit for overtime pay, and would obviate the need for a class action, pointing to the expense and practical difficulties of such individual suits. " [T]he size of the average claim in part reflects the accrual of unpaid overtime over the five-year duration of this lawsuit prior to trial. When the complaint was first filed in October 1996, the average claim would have been smaller and a large portion of the claims may not have been reasonably adequate to fund the expense of individual litigation. The length of this litigation in fact underscores the practical difficulties vindicating claims to unpaid overtime. Employees will seldom have detailed personal records of hours worked. Their case ordinarily rests on the credibility of vague recollections and requires them to litigate complex overtime formulas and exemption standards. For current employees, a lawsuit means challenging an employer in a context that may be perceived as jeopardizing job security and prospects for promotion. If the employee files after termination of employment, the costs of litigation may still involve travel expenses and time off from work to pursue the case, and the value of any ultimate recovery may be reduced by legal expenses. " (*Id.* at p. 745, 9 Cal.Rptr.3d 544.) [FN4]

FN4. How much is at issue in Gentry's claim in the present case is unclear. Circuit City contends that the claim must be for over $25,000 because the "unlimited " jurisdiction box was checked on the civil case cover sheet accompanying the complaint. Cases alleging less than $25,000 are considered "limited civil cases.

" (Code Civ. Proc., § 86, subd. (a)(1).) However, as Gentry points out, cases will be classified as unlimited in jurisdiction if injunctive relief is sought (Code Civ. Proc., § 580, subd. (b)(2)), as Gentry did in the present case. Therefore, the designation of "unlimited jurisdiction" on the cover sheet of the complaint does not inform us of the minimum amount of damages being sought.

**\*\*784** [5] It is true that section 1194 permits employees to recover reasonable attorney fees if they prevail in an overtime litigation suit. (See *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 831, 105 Cal.Rptr.2d 59.) Even assuming that such attorney fees were equally available in arbitration, **\*459** employees and their attorneys must weigh the typically modest recovery, and the typically modest means of the employees bringing overtime lawsuits, with the risk of not prevailing and being saddled with the substantial costs of paying their own attorneys. Moreover, the award of "reasonable" fees and costs are at the discretion of the trial court. Assuming that the arbitrator had similar discretion, there is still a risk that even a prevailing plaintiff/employee may be undercompensated for such expenses. Given these risks and economic realities, class actions play an important function in enforcing overtime laws by permitting employees who are subject to the same unlawful payment practices a relatively inexpensive way to resolve their disputes. We have acknowledged as much in a case involving overtime litigation similar to that at issue in the present case. " ' "By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." ' " (*Sav-On Drug Stores, supra,* 34 Cal.4th at p. 340, 17 Cal.Rptr.3d 906, 96 P.3d 194.) Although we agree at least in theory with Circuit City that arbitration can be a relatively quick and inexpensive method of dispute resolution, the requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 P.3d 556                                                                                          Page 12

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

may substantially drive up the costs of arbitration and diminish the prospect that the overtime laws will be enforced.

The Court of Appeal in the present case, in upholding the class arbitration waiver, pointed to our discussion in *Discover Bank* of the statement in *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 32, 111 S.Ct. 1647, 114 L.Ed.2d 26, that a plaintiff's Age Discrimination in Employment Act (ADEA) claim should be arbitrated notwithstanding the lack of classwide relief. "At most, the *Gilmer* court can be understood to mean that a party can still vindicate his or her rights under the ADEA even if no class action remedy is available." (*Discover Bank, supra,* 36 Cal.4th at p. 168, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) In so concluding, we cited an article reporting that the median award for employee age discrimination suits was $269,000. (*Ibid.*) Our discussion of *Gilmer* clearly does not apply to the much more modest awards generally available in overtime compensation cases.

A second factor in favor of class actions for these cases, as noted in *Bell,* is that a current employee who individually sues his or her employer is at greater risk of retaliation. We have recognized that retaining one's employment while bringing formal legal action against one's employer is not "a viable option for many employees." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 821, 111 Cal.Rptr.2d 87, 29 P.3d 175; see also *Mullins v. Rockwell Internat. Corp.* (1997) 15 Cal.4th 731, 741, 63 Cal.Rptr.2d 636, 936 P.2d 1246.) *Richards* and *Mullins* involved high-level managerial and professional employees. The difficulty of suing a current employer is likely **\*460** greater for employees further down on the corporate hierarchy. As one **\*\*785** court observed: " 'Although there is only plaintiff's suggestion of intimidation in this instance, the nature of the economic dependency involved in the employment relationship is inherently inhibiting.' " (*O'Brien v. Encotech Const. Services, Inc.* (2001) 203 F.R.D. 346, 351.)

Indeed, federal courts have widely recognized that fear of retaliation for individual suits against an employer is a justification for class certification in

the arena of employment litigation, even when it was otherwise questionable that the numerosity requirements of rule 23 (Fed. Rules Civ. Proc., rule 23, 28 U.S.C.) were satisfied.[FN5] (See, e.g., *Mullen v. Treasure Chest Casino, LLC* (5th Cir.1999) 186 F.3d 620, 625 [it is "reasonably presumed" that potential class members still employed by employer "might be unwilling to sue individually or join a suit for fear of retaliation at their jobs"]; see also *Horn v. Associated Wholesale Grocers, Inc.* (10th Cir.1977) 555 F.2d 270, 275; *Arkansas Education Ass'n v. Board of Education of Portland, Ark.* (8th Cir.1971) 446 F.2d 763, 765; *Scott v. Aetna Servs., Inc.* (D.Conn.2002) 210 F.R.D. 261, 267; *Adames v. Mitsubishi Bank, Ltd.* (E.D.N.Y.1989) 133 F.R.D. 82, 89["[s]ince here a number of putative members [of the class] are current employees, the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable"]; *Simmons v. City of Kansas City* (D.Kan.1989) 129 F.R.D. 178, 180; *Slanina v. William Penn Parking Corp.* (W.D.Pa.1984) 106 F.R.D. 419, 423-424 [indications that if individual joinder were required, "most, if not all, of the current employees will be hesitant to join' "].) "[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." (*Mitchell v. Robert DeMario Jewelry, Inc.* (1960) 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323.)

> FN5. "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable '); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689.)

Circuit City points out that retaliation by the employer against an employee who files an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 P.3d 556                                                                                                    Page 13

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

overtime claim or other wage and hour claims is unlawful under section 98.6.[FN6] It further points to DLSE reports showing that the number of complaints made pursuant to section 98.6 in the years 2000-2004 ranged from 446 to 808 annually. (See DLSE, Annual Discrimination Complaint *461 Reports, <http:// www. dir. ca. gov/ dlse/ DLSEreports. htm> [as of Aug. 30, 2007].) It argues from these statistics that the enforcement mechanism to sanction such retaliation is working.

We agree with Gentry, however, that these statistics are supportive of his position that retaliation against employees for asserting statutory rights under the Labor Code is widespread. Given that retaliation would cause immediate disruption of the employee's life and economic injury, and given that the outcome of the complaint process is uncertain, we do not believe the existence of an antiretaliation statute and an administrative complaint process undermines Gentry's**786 point that fear of retaliation will often deter employees from individually suing their employers.

> FN6. Section 98.6, subdivision (a) states in pertinent part: "No person shall discharge an employee or in any manner discriminate against any employee or applicant for employment because ... the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner...."

Third, some individual employees may not sue because they are unaware that their legal rights have been violated. The New Jersey Supreme Court recently emphasized the notification function of class actions in striking down a class arbitration waiver in a consumer contract: "[W]ithout the availability of a class-action mechanism, many consumer-fraud victims may never realize that they may have been wronged. As commentators have noted, 'often consumers do not know that a potential defendant's conduct is illegal. When they are being charged an excessive interest rate or a penalty for check bouncing, for example, few know

or even sense that their rights are being violated.' " (*Muhammad v. County Bank of Rehoboth Beach, Delaware* (2006) 189 N.J. 1, 912 A.2d 88, 100.) Similarly, it may often be the case that the illegal employer conduct escapes the attention of employees. Some workers, particularly immigrants with limited English language skills, may be unfamiliar with the overtime laws. (See Ha, *An Analysis in Critique of KIWA's Reform Efforts in the Los Angeles Korean-American Restaurant Industry* (2001) 8 Asian L.J. 111, 122-123.) Even English-speaking or better educated employees may not be aware of the nuances of overtime laws with their sometimes complex classifications of exempt and nonexempt employees. (See *Ramirez v. Yosemite Water Co., supra,* 20 Cal.4th at pp. 796-798, 85 Cal.Rptr.2d 844, 978 P.2d 2.) The likelihood of employee unawareness is even greater when, as alleged in the present case, the employer does not simply fail to pay overtime but affirmatively tells its employees that they are not eligible for overtime. Moreover, some employees, due to the transient nature of their work, may not be in a position to pursue individual litigation against a former employer. (*Ansoumana v. Gristede's Operating Corp.* (S.D.N.Y.2001) 201 F.R.D. 81, 86-87.)

For these reasons, a federal district court recently concluded that an arbitration agreement with a class arbitration waiver was inconsistent with the minimum wage and overtime provisions of the federal Fair Labor Standards Act (FLSA). "In this case, the imposition of a waiver of class actions may effectively prevent ... employees from seeking redress of FLSA violations. The class action provision thereby circumscribes the legal options of these *462 employees, who may be unable to incur the expense of individually pursuing their claims.

In this respect, the class action waiver is not only unfair to ... employees, but also removes any incentive for [the employer] to avoid the type of conduct that might lead to class action litigation in the first instance. The class action clause is therefore substantively unconscionable." (*Skirchak v. Dynamics Research Corp., Inc.* (D.Mass.2006) 432 F.Supp.2d 175, 181.) Similarly, in another FLSA suit for minimum wage and overtime violations, the trial court stated, interpreting the rule

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

23(a)(1) requirement that "the proposed class be ' so numerous that joinder of all members is impracticable' ": "I also find it fair to consider that the members of this group would not be likely to file individual suits. Their lack of adequate financial resources or access to lawyers, their fear of reprisals (especially in relation to the immigrant status of many), the transient nature of their work, and other similar factors suggest that individual suits as an alternative to a class action are not practical. [Citation.]" (*Ansoumana v. Gristede's Operating Corp., supra,* 201 F.R.D. at pp. 85-86.)

We also agree with the *Bell* court that "class actions may be needed to assure the effective enforcement of statutory policies **787 even though some claims are large enough to provide an incentive for individual action. While employees may succeed under favorable circumstances in recovering unpaid overtime through a lawsuit or a wage claim filed with the Labor Commissioner, a class action may still be justified if these alternatives offer no more than the prospect of 'random and fragmentary enforcement' of the employer's legal obligation to pay overtime." (*Bell, supra,* 115 Cal.App.4th at p. 745, 9 Cal.Rptr.3d 544, quoting *Vasquez, supra,* 4 Cal.3d at p. 807, 94 Cal.Rptr. 796, 484 P.2d 964.) " By preventing 'a failure of justice in our judicial system'(*Linder v. Thrifty Oil Co.*[ (2000) ] 23 Cal.4th 429, 434[, 97 Cal.Rptr.2d 179, 2 P.3d 27] ), the class action not only benefits the individual litigant but serves the public interest in the enforcement of legal rights and statutory sanctions." (*Bell, supra,* at p. 741, 9 Cal.Rptr.3d 544.) In other words, absent effective enforcement, the employer's cost of paying occasional judgments and fines may be significantly outweighed by the cost savings of not paying overtime.

We cannot say categorically that all class arbitration waivers in overtime cases are unenforceable. As Circuit City points out, some 40 published cases over the last 70 years in California have involved individual employees prosecuting overtime violations without the assistance of class litigation or arbitration. (See, e.g., *Ramirez v. Yosemite Water Co., supra,* 20 Cal.4th 785, 85 Cal.Rptr.2d 844, 978 P.2d 2; *Sequeira v. Rincon-Vitova Insectaries, Inc.* (1995) 32 Cal.App.4th 632, 38

Cal.Rptr.2d 264; *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 273 Cal.Rptr. 615.) Not all overtime cases will necessarily lend themselves to class actions, nor will employees invariably request such class actions. Nor in every case will class action or arbitration be demonstrably superior to individual actions.

[6][7] *463 Nonetheless, when it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the factors discussed above: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration. If it concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can " vindicate [their] unwaivable rights in an arbitration forum." (*Little, supra,* 29 Cal.4th at p. 1077, 130 Cal.Rptr.2d 892, 63 P.3d 979.) [FN7] The kind of inquiry a trial court **788 must make is similar to the one it already makes to determine whether class actions are appropriate. " [T]rial courts are ideally *464 situated to evaluate the efficiencies and practicalities of permitting group action...."(*Linder v. Thrifty Oil, Co., supra,* 23 Cal.4th at p. 435, 97 Cal.Rptr.2d 179, 2 P.3d 27.) Class arbitration must still also meet the "community of interest" requirement for all class actions, consisting of three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On Drug Stores, supra,* 34 Cal.4th at p. 326, 17 Cal.Rptr.3d 906, 96 P.3d 194.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

FN7. The dissent claims our holding is inconsistent with *Little's* predecessor, *Armendariz,* because here "[n]o finding is made that a class remedy is *essential,* as a practical matter, to vindication of the ' unwaivable' statutory right" (Dis. opn., *post,* 64 Cal.Rptr.3d at pp. 797-798, 165 P.3d at p. 576.) *Armendariz* did not use the dissent's italicized word "essential" in its formulation, and it is unclear what that word means in this context. Rather, in holding for example that employers must pay most of the costs when they mandate arbitration of unwaivable rights for their employees, we concluded that the imposition of such costs would burden employees' rights by "pos[ing] a significant risk that employees will have to bear large costs to vindicate their statutory right against workplace discrimination." ( *Armendariz, supra,* 24 Cal.4th at p. 110, 99 Cal.Rptr.2d 745, 6 P.3d 669.) So, too, in the present case, although it is still possible for employees to individually vindicate their rights to overtime pay, the class arbitration waiver may, practically speaking, significantly burden the ability of employees to do so. *Armendariz* makes clear that for public policy reasons we will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights. The Legislature has amended the California Arbitration Act (CAA) several times since *Armendariz* (Stats.2002, ch. 176, § 1; Stats.2002, ch. 1158, § 1; Stats.2005, ch. 607, § 1; Stats.2006, ch. 357, § 1) but has not overturned or modified the holdings in that case.

Moreover, the dissent's contention that Gentry as an individual has not shown himself to be burdened by the class arbitration waiver is off the mark. First, questions of the value of his claim and the appropriateness of a class arbitration in this case will be determined on remand. More fundamentally, as suggested above, one of the advantages of class action litigation or arbitration is precisely the fact that the class representative spearheading the litigation is in a more advantageous position-e.g., is better informed, is less likely to be intimidated-than the class as a whole, and the class benefits from the representative's advantages. Given this reality, and given that our primary concern is ensuring that the state's overtime laws be effectively enforced and that class arbitration waivers not thwart that enforcement, it makes little sense to focus only on whether the class representative himself or herself would be stymied in the pursuit of an individual arbitration remedy (see dis. opn., *post,* 64 Cal.Rptr.3d at p. 800, 165 P.3d at p. 578), rather than considering as well the difficulties for the class of employees affected by Circuit City's allegedly unlawful practices.

Of course, in cases like the present, the trial court would be comparing class arbitration with the individual arbitration methods the employer offers, rather than comparing individual with classwide litigation. We do not foreclose the possibility that there may be circumstances under which individual arbitrations may satisfactorily address the overtime claims of a class of similarly aggrieved employees, or that an employer may devise a system of individual arbitration that does not disadvantage employees in vindicating their rights under section 1194. But class arbitration waivers cannot, consistent with the strong public policy behind section 1194, be used to weaken or undermine the private enforcement of overtime pay legislation by placing formidable practical obstacles in the way of employees' prosecution of those claims.

Circuit City makes a number of arguments that we have already concluded lack merit. As in *Discover Bank,* we again reject the "unsupported assertions [of some courts] that, in the case of small individual recovery, attorney fees are an adequate substitute for the class action or arbitration mechanism. Nor do we agree ... that small claims litigation, government prosecution, or informal resolution are adequate substitutes." (*Discover Bank, supra,* 36 Cal.4th at p. 162, 30 Cal.Rptr.3d 76, 113 P.3d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

1100.) In particular, we reject Circuit City's argument that the **789 availability of enforcement by the Labor Commissioner is an adequate substitute for classwide arbitration. It is true that an employee may seek administrative relief from overtime violations with the Labor Commissioner through a "Berman" hearing procedure pursuant to sections 98 to 98.8. (Added by Stats.1976, ch. 1190, §§ 4-11, pp. 5368-5371.) But a losing employer has a right to a trial de novo in superior court, where the ruling of the Labor Commissioner's hearing officer is entitled to no deference. (§ 98.2, subds. (b), (c); *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1116, 56 Cal.Rptr.3d 880, 155 P.3d 284(*Murphy* ).) Thus, Berman hearings may result in no cost savings to the employee. Moreover, in *Bell,* in rejecting the same argument, the court considered a declaration by a former chief counsel of the DLSE, who stated that " '[r]equiring two thousand or so class members to go through individual "Berman" hearings would obviously be extremely inefficient as compared to a single class action. Also, a deluge of claims would simply outstrip the resources of the DLSE ... impacting not only these claimants but others unrelated to this suit.' " *465(Bell, supra,* 115 Cal.App.4th at p. 746, 9 Cal.Rptr.3d 544.) In short, Berman hearings are neither effective nor practical substitutes for class action or arbitration.

[8] Nor do we accept Circuit City's argument that a rule invalidating class arbitration waivers discriminates against arbitration clauses in violation of the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). We considered at great length and rejected a similar argument in *Discover Bank.*(*Discover Bank, supra,* 36 Cal.4th at pp. 163-173, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) The principle that in the case of certain unwaivable statutory rights, class action waivers are forbidden when class actions would be the most effective practical means of vindicating those rights is an arbitration-neutral rule: it applies to class waivers in arbitration and nonarbitration provisions alike. (See *AOL, supra,* 90 Cal.App.4th at pp. 17-18, 108 Cal.Rptr.2d 699; see also *Armendariz, supra,* 24 Cal.4th at pp. 99-102, 99 Cal.Rptr.2d 745, 6 P.3d 669 [imposition of minimal requirements on arbitration necessary to

vindicate statutory rights not a violation of the FAA].) "The *Armendariz* requirements are ... applications of general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration, and accordingly are not preempted by the FAA."(*Little, supra,* 29 Cal.4th at p. 1079, 130 Cal.Rptr.2d 892, 63 P.3d 979.) We also continue to reject Circuit City's suggestion that class actions are incompatible with arbitration and that compelling class arbitration in the appropriate case violates the FAA. (*Discover Bank, supra,* 36 Cal.4th at pp. 171-172, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) FN8

FN8. The dissent declares that we "may not elevate a mere judicial affinity for class actions as a beneficial device for implementing the wage laws above the policy expressed by both Congress and our own Legislature that voluntary individual agreements to arbitrate ... should be enforced according to their terms." (Dis. opn., *post,* 64 Cal.Rptr.3d at pp. 799-800, 165 P.3d at p. 578.) What is at issue in this case, however, is not a "judicial affinity for class actions" but the enforcement of an unwaivable *statutory* right to overtime pay. What happens when a class action waiver significantly interferes with that right? Although the dissent claims that our concerns about the effect of class arbitration waivers are exaggerated, based on its own questionable assumptions about class arbitration and litigation, it also appears to adopt the position that *even if* we are correct that such waivers will substantially interfere with the ability of employees to enforce overtime laws in some cases, the waiver should nonetheless be given effect. The dissent thus articulates its preference that in this case the statutory policy in favor of enforcing arbitration agreements as written overrides the statutory policy in favor of vigorously enforcing overtime laws. There is no indication, however, that the Legislature shared or shares the dissent's preference, or even that it has favored the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

arbitration of wage and overtime claims at all. Indeed, the evidence is to the contrary. Section 1194 provides, as discussed, that an employee is entitled to recover "in a civil action" overtime or minimum wage compensation. It seems doubtful that the Legislature contemplated, when that statute was originally enacted in 1937 (Stats.1937, ch. 90, § 1194, p. 217), that employer-mandated arbitration could serve as a substitute to "civil actions" authorized by the statute. In fact, the forerunner of the CAA, Code of Civil Procedure former section 1280, in operation at the time section 1194 was originally enacted, specifically excluded "contracts pertaining to labor" from the scope of enforceable arbitration agreements. (Stats.1935, ch. 52, § 9, p. 388.) Moreover, at the time of the CAA's enactment in 1961 (Stats.1961, ch. 461, § 2, p. 1540), the United States Supreme Court's construction of the FAA indicated that arbitration statutes would not be used to enforce agreements to arbitrate unwaivable statutory rights. (See *Wilko v. Swan* (1953) 346 U.S. 427, 435-437, 74 S.Ct. 182, 98 L.Ed. 168,overruled by *Rodriguez de Quijas v. Shearson/Am. Exp.* (1989) 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526.) Outright legislative hostility to arbitrating wage claims was further manifested in Labor Code section 229, passed two years before the CAA went into effect. (Stats.1959, ch. 1939, § 1 , p. 4532.) That section, which involves judicial actions to collect unpaid wages, provides that such actions "may be maintained without regard to the existence of any private agreement to arbitrate." Thus, if we can discern any legislative policy toward employee wage claims, it is that employees should have direct access to a judicial forum to enforce their rights.

Nor is there any sign that the Congress that enacted the FAA contemplated that it be used to compel arbitration of statutory wage claims. (See Leroy & Feuille, Judicial Enforcement of Predispute

Arbitration Agreements: Back to the Future (2003) 18 Ohio St. J. Disp. Resol. 249, 279 [legislative history indicates " Congress's main concern was with businesses who wanted to ... resolve their commercial disputes privately."].) The United States Supreme Court has since held that the FAA does not permit states to legislatively prohibit arbitration of wage disputes. (*Perry v. Thomas* (1987) 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426.)

But both the FAA and the CAA permit arbitration-neutral rules that limit enforcement of specific provisions of arbitration agreements on public policy grounds. (See *Armendariz, supra,* 24 Cal.4th at p. 99, 99 Cal.Rptr.2d 745, 6 P.3d 669; 9 U.S.C. § 2; Code Civ. Proc., § 1281.) It is perfectly consistent with the evident intent of the Legislature to refuse to enforce, under some circumstances and in an arbitration-neutral manner in accord with the FAA and the CAA, provisions of arbitration agreements that significantly undermine the ability of employees to vindicate their statutory right to overtime pay.

**\*\*790** [9][10][11] **\*466** Accordingly, we will remand this case to the Court of Appeal with directions to remand to the trial court to determine in light of the above discussion whether, in this particular case, class arbitration would be a significantly more effective means than individual arbitration actions of vindicating the right to overtime pay of the group of employees whose rights to such pay have been allegedly violated by Circuit City. If the trial court invalidates the waiver on public policy grounds, then the parties may proceed to class arbitration or, if the parties wish, have the matter brought in court (see *Discover Bank, supra,* 36 Cal.4th at p. 173, fn. 8, 30 Cal.Rptr.3d 76, 113 P.3d 1100), unless the trial court invalidates the arbitration agreement altogether for reasons discussed in the next section of this opinion. Generally speaking, when an arbitration agreement contains a single term in violation of public policy, that term will be severed and the rest of the arbitration agreement enforced. (

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 P.3d 556                                                                                          Page 18

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
(Cite as: 42 Cal.4th 443, 165 P.3d 556)

*Little, supra,* 29 Cal.4th at pp. 1074-1075, 130 Cal.Rptr.2d 892, 63 P.3d 979.) We believe that severance is particularly appropriate in the case of class arbitration waivers because, unlike limitations on remedies or other limitations that are invalid on their face (see **791*Armendariz, supra,* 24 Cal.4th at pp. 103-104, 99 Cal.Rptr.2d 745, 6 P.3d 669), such waivers will only be invalidated after the proper factual showing, as discussed above. The presence of a class arbitration waiver in an employee arbitration agreement therefore does not by itself "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Id.* at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

### B. The Opt-out Provision and Procedural Unconscionability

[12] The Court of Appeal concluded, and Circuit City argues, that the fact that an employee had 30 days to opt out of the arbitration agreement means that *467 the terms of the agreement, including the class arbitration waiver, are not procedurally unconscionable and are therefore enforceable. But the validity of a class arbitration waiver was analyzed in the previous part of this opinion in terms of unwaivable statutory rights rather than unconscionability. (See *Armendariz, supra,* 24 Cal.4th at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Because the statutory rights under section 1194 at issue in this case are not waivable, the minimal requirements imposed on arbitration agreements to ensure their vindication cannot be waived by the employee in a prelitigation agreement. ( *Armendariz, supra,* 24 Cal.4th at p. 103, fn. 8, 99 Cal.Rptr.2d 745, 6 P.3d 669.)As we clarified in *Armendariz,* such waiver could only occur "in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement *after a dispute has arisen.* In those cases, employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights. Absent such freely negotiated agreements, it is for the courts to ensure that the arbitration forum imposed on an employee is sufficient to

vindicate his or her rights...."(*Ibid.,* italics added.) There was no freely negotiated postdispute agreement, nor for that matter a postdispute agreement of any kind, in the present case. Therefore, if the trial court on remand finds the class arbitration waiver invalid using the factors set forth in the previous part of this opinion, that waiver will not be enforced.[FN9]

> FN9. We note that if an employee believes individual arbitration to be as advantageous as the dissent suggests, nothing in this opinion, nor in any subsequent trial court ruling, precludes him or her from entering into an individual postdispute arbitration agreement with Circuit City.

Gentry does challenge provisions of the arbitration agreement other than the class arbitration waiver, however, and argues that the entire arbitration agreement is unconscionable and unenforceable. Should the trial court on remand find the class arbitration waiver in the present case to be void, it is unclear whether the issue of the unconscionability of the arbitration agreement as a whole will become moot, because it is unclear whether Gentry will continue to resist arbitration or whether Circuit City will continue to seek it. Nonetheless, because this issue may remain viable on remand, we will address the Court of Appeal's holding that the arbitration agreement was not unconscionable because Gentry had a 30-day period to opt out of the agreement. As noted above, the Court of Appeal stated that because of the opt-out provision, "the agreement at issue here does not have [an] adhesive element and therefore is not procedurally unconscionable."

[13] As a threshold matter, Gentry argues that the arbitration agreement was ineffective because his failure to opt out of the agreement cannot constitute assent to **792 that agreement. Gentry bases his argument on the well-established principle "that an offeror has no power to cause the silence of the offeree to operate as an acceptance when the offeree does not intend it to do so." (1 Corbin on Contracts (rev. ed.1993) § 3.19, p. 407.) As one court *468 cited in the above treatise has stated: " '[W]here

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

the recipient of an offer is under no duty to speak, silence, when not misleading, may not be translated into acceptance merely because the offer purports to attach that effect to it. [Citations.]' " (*Albrecht Chemical Co. v. Anderson Trading Corp.* (1949) 298 N.Y. 437, 84 N.E.2d 625, 626; see also *Leslie v. Brown Brothers Incorporation* (1929) 208 Cal. 606, 621, 283 P. 936.) On the other hand, silence can constitute acceptance when "the conduct of the party denying a contract has been such as to lead the other reasonably to believe that silence, without communication, would be sufficient" to create a contract. (1 Corbin on Contracts, *supra*, § 3.21, p. 414.)

In this case, Gentry signed an easily readable, one-page form that accompanied receipt of the Associate Issue Resolution Package. The form stated in part: "I understand that participation in the Issue Resolution Program is voluntary. If I do not wish to participate in the arbitration component of the Program, however, I must send the completed ' Circuit City Arbitration Opt-Out Form,' which is included with this package. I must send the Opt-Out Form via U.S. mail ... to the above address within **30 calendar days** of the date on which I signed below. I understand that if I do not mail the Form within 30 calendar days, I will be required to arbitrate all employment-related legal disputes I may have with Circuit City."(Original boldface.)

Although Gentry contends his signature was merely an acknowledgement of receipt of the Associate Issue Resolution Package, it was also an acknowledgment of his assent to the opt-out provision. The opt-out provision of the acknowledgment agreement was neither inconspicuous or difficult to understand. Thus, in signing the above form, Gentry manifested his intent to use his silence, or failure to opt out, as a means of accepting the arbitration agreement. Having thus indicated his intent, he may not now claim that the failure to opt out did not constitute acceptance of the arbitration agreement. (1 Corbin on Contracts, *supra*, § 3.21, p. 414.) The question is not whether the acknowledgement form itself is a valid contract-it is not-but rather whether Gentry's signature on that form reasonably led Circuit City to believe that his failure to opt out constituted

acceptance of the arbitration agreement. We conclude under the circumstances of this case that it did.

[14][15] The question whether an arbitration agreement has been validly formed is of course different from whether that agreement was unconscionable. In order to evaluate the Court of Appeal's conclusion that the 30-day opt-out provision meant that Circuit City's arbitration agreement was not procedurally unconscionable, we first review some general principles. " 'To briefly recapitulate the principles of unconscionability, the doctrine has " 'both a "procedural" and a " substantive" element,' the former focusing on ' " oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter *469 on ' "overly harsh " ' or ' "one-sided" ' results." [Citation.] The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, " 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " ... [¶] Substantively unconscionable **793 terms may take various forms, but may generally be described as unfairly one-sided.' " (*Discover Bank, supra,* 36 Cal.4th at p. 160, 30 Cal.Rptr.3d 76, 113 P.3d 1100.)

[16] As we have further explained: " 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669, italics omitted.)

[17] As the above suggests, a finding of procedural

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided. (See, e.g., *Little, supra,* 29 Cal.4th at p. 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979.) As also suggested above, there are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Although certain terms in these contracts may be construed strictly, courts will not find these contracts substantively unconscionable, no matter how one-sided the terms appear to be. (See, e.g., *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1538-1539, 246 Cal.Rptr. 823 [liability limitation negotiated by two commercial entities upheld].) Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. (See, e.g., *Ellis v. McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, 1804, 23 Cal.Rptr.2d 80 [party told that signing contract was "mere formality" to conceal oppressive forfeiture provision].) Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced (see *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817-818, 171 Cal.Rptr. 604, 623 P.2d 165), contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching." (*Id.,* at p. 818, 171 Cal.Rptr. 604, 623 P.2d 165.)

[18] **\*470** Thus, a conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract because of its confidence that the contract was negotiated or chosen freely, that the party subject to a seemingly one-sided term is presumed to have obtained some advantage from conceding the term or that, if one party negotiated poorly, it is not the court's place to rectify these kinds of errors or asymmetries. Accordingly, if we take the Court of Appeal in this case at its word that there was no element of procedural unconscionability in the arbitration agreement because of the 30-day opt-out provision, then the

logical conclusion is that a court would have no basis under common law unconscionability analysis to scrutinize or overturn even the most unfair or exculpatory of contractual terms.

We conclude that the Court of Appeal erred in finding the present agreement free of procedural unconscionability. It is **\*\*794** true that freedom to choose whether or not to enter a contract of adhesion is a factor weighing against a finding of procedural unconscionability. (See, e.g., *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 769-771, 259 Cal.Rptr. 789 [agreement between brokerage house and sophisticated consumer of financial services that included a $50 termination fee on an IRA account was not unconscionable where competing IRA's without the challenged fee were freely available].) But there are several indications that Gentry's failure to opt out of the arbitration agreement did not represent an authentic informed choice.

First and foremost, the explanation of the benefits of arbitration in the Associate Issue Resolution Handbook was markedly one-sided. The Court of Appeal thought otherwise, stating: "The 'Associate Issue Resolution Handbook,' written in straightforward language, does point out the advantages of electing arbitration (notably, that the procedure is cost effective and the employee's claim is resolved 'in a matter of weeks or a few months rather than years'). However, it also notes the disadvantages (for example, the lack of a right to a jury trial and limited discovery). The employee is then free to decide whether or not the advantages of arbitration outweigh the disadvantages."

But what the Court of Appeal's discussion entirely neglected is that although the handbook alluded to some of the shortcomings of arbitration in the general sense, it did not mention any of the additional significant disadvantages that *this particular arbitration agreement* had compared to litigation. These included the following: First, the agreement provided for a one-year statute of limitations as opposed to the three-year statute for recovering overtime wages provided under Code of Civil Procedure section 338 (see *Murphy, supra,* 40 Cal.4th at p. 1099, 56 Cal.Rptr.3d 880, 155 P.3d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 P.3d 556                                                      Page 21

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

284) and a four-year statute of **\*471** limitations for the unfair competition claim under Business and Professions Code section 17208. Second, the agreement provided a limitation of remedies to backpay "only up to one year from the point at which the [employee] knew or should have known of the events giving rise to the alleged violation of the law," whereas an employee filing suit could potentially recover backpay for a three-year period from the date the cause of action actually accrued. Third, the agreement imposed a maximum of $5,000 in punitive damages. Although exemplary damages are not available in overtime suits (see § 1194.2 ["liquidated damages" equal to the amount of wages recovered available in minimum wage litigation but not overtime litigation] ), Circuit City's agreement applied to "any and all employment-related legal disputes," including violation of the FEHA and discharges in violation of public policy, for which punitive damages without any such limitation would be available. (See *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 220-221, 185 Cal.Rptr. 270, 649 P.2d 912.) Fourth, the agreement contained a provision that parties will " generally" be liable for their own attorney fees, with the arbitrator having the "discretion" to award the employee attorney fees, as opposed to section 1194 's provision that a prevailing employee "is entitled to " reasonable attorney fees and costs. (§ 1194, subd. (a).)

The fact that Circuit City's explanation of the arbitration agreement emphasized that the arbitration is "much less expensive" and that "the arbitrator can award monetary damages to compensate you for the harm you may have suffered, " without mentioning the many disadvantages to the employee that Circuit City had inserted into the agreement, meant that the employee would receive a highly distorted **\*\*795** picture of the arbitration Circuit City was offering. Although an employee who read Circuit City's nine-page single-spaced document entitled Circuit City's "Dispute Resolution Rules and Procedures" would have encountered the above provisions, only a legally sophisticated party would have understood that these rules and procedures are considerably less favorable to an employee than those operating in a judicial forum. As has been observed, even " ' experienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms.' " (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1535, 60 Cal.Rptr.2d 138 [finding unconscionability in a corporate manager's arbitration agreement with his employer].) The same would be even more true for the nonexecutive employees who would be the likely plaintiffs in suits about overtime pay. And notwithstanding the statement in the documents provided Gentry that employees "may consult with an attorney" about their legal rights, and contrary to the dissenting opinion's contention otherwise, it is unrealistic to expect anyone other than higher echelon employees to hire an attorney to review what appears to be a routine personnel document.

Moreover, it is not clear that someone in Gentry's position would have felt free to opt out. The materials provided to Gentry made unmistakably clear **\*472** that Circuit City preferred that the employee participate in the arbitration program. The "Associate Issue Resolution Handbook" distributed with the opt-out form touted the virtues of arbitration, including use of the all-caps subheading-WHY ARBITRATION IS RIGHT FOR YOU AND CIRCUIT CITY-that left no doubt about Circuit City's preference. The fact that the arbitration agreement was structured so that arbitration was the default dispute resolution procedure from which the employee had to opt out underscored Circuit City's pro-arbitration stance. Given the inequality between employer and employee and the economic power that the former wields over the latter (see *Armendariz, supra,* 24 Cal.4th at p. 115, 99 Cal.Rptr.2d 745, 6 P.3d 669), it is likely that Circuit City employees felt at least some pressure not to opt out of the arbitration agreement. The lack of material information about the disadvantageous terms of the arbitration agreement, combined with the likelihood that employees felt at least some pressure not to opt out of the arbitration agreement, leads to the conclusion that the present agreement was, at the very least, not entirely free from procedural unconscionability. [FN10]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

165 P.3d 556                                                                                           Page 22

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

FN10. We note that two Ninth Circuit cases came to the contrary conclusion. ( *Circuit City Stores, Inc. v. Ahmed* (9th Cir.2002) 283 F.3d 1198; *Circuit City Stores, Inc. v. Najd* (9th Cir.2002) 294 F.3d 1104.) The *Ahmed* court in its brief discussion of the unconscionability issue did not consider the concealment of disadvantageous terms nor the reality that Circuit City clearly favored arbitration and was in a position to pressure employees to choose its favored option. (*Ahmed, supra,* 283 F.3d at pp. 1199-1200.) *Najd* viewed *Ahmed* as binding. (*Najd, supra,* 294 F.3d at p. 1108.) We find neither case persuasive.

To reiterate, the fact that some degree of procedural unconscionability is present does not mean necessarily that the arbitration agreement is unenforceable. But it does mean that the agreement is not immune from judicial scrutiny to determine whether or not its terms are so one-sided or oppressive as to be substantively unconscionable.

As noted, Gentry argues that several provisions of the arbitration agreement other than the class arbitration waiver are substantively unconscionable, an argument that Circuit City disputes. The Court of Appeal did not address these arguments, **\*\*796** believing the agreement not to be procedurally unconscionable and upholding the class arbitration waiver. As stated in the previous part of this opinion, we remand the matter to the Court of Appeal with directions to remand to the trial court to determine whether the class arbitration waiver is void. Unless the issue is mooted, the trial court must also determine on remand whether the original 1995 arbitration agreement or an amended agreement controls the present case and whether the controlling agreement has substantively unconscionable terms.[FN11] If so, the court must **\*473** determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated. (See *Little, supra,* 29 Cal.4th at pp. 1074-1076, 130 Cal.Rptr.2d 892, 63 P.3d 979.)

FN11. Circuit City points to a 1998 modification of the arbitration agreement that required that the arbitration be conducted according to the procedural rules in effect when the arbitration request was filed. Circuit City further points to the arbitration agreement amendments of 2001 and 2005, which it claims do not contain the above terms, and contends that these amended agreements would govern the conduct of Gentry's arbitration and are not substantively unconscionable. Gentry on the other hand argues that the 1995 rules apply and that for various reasons the 1998 amendment is not effective. The Court of Appeal did not address this issue, nor was it one of the issues presented in the petition for review. Assuming the issue is not moot, it must be determined on remand which agreement controls and whether there is substantive unconscionability under that agreement. But for present purposes, our only inquiry is whether the 1995 arbitration agreement, notwithstanding its opt-out provision, contained an element of procedural unconscionability. The fact that the 1995 agreement had substantively unconscionable terms that were not fully disclosed to Gentry is directly pertinent to that determination.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed and the cause is remanded for proceedings consistent with this opinion.

WE CONCUR: GEORGE, C.J., KENNARD, and WERDEGAR, JJ.
Dissenting Opinion by BAXTER, J.
I respectfully dissent. I cannot join the majority's continuing effort to limit and restrict the terms of private arbitration agreements, which enjoy special protection under both state and federal law.

Both the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) and the California Arbitration Act (CAA; Code Civ. Proc., § 1281 et seq.) provide that an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

agreement to resolve disputes by arbitration, rather than by court litigation, must be enforced except upon grounds applicable to contracts generally. These statutes are intended to override courts' historical suspicion of arbitration as an inferior forum for the vindication of claims, and to endorse contracts-including employment contracts-in which parties agree to resolve their disputes by this relatively cheap, simple, and expeditious means. (See, e.g., *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 111-124, 121 S.Ct. 1302, 149 L.Ed.2d 234; *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 30, 111 S.Ct. 1647, 114 L.Ed.2d 26(*Gilmer* ); *Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765(*Moses H. Cone Hospital* ); *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204, 8 Cal.Rptr.3d 517, 82 P.3d 727; *474Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342, 79 Cal.Rptr.2d 308, 965 P.2d 1178; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9, 10 Cal.Rptr.2d 183, 832 P.2d 899.) [FN1]

> FN1. Section 2 of the FAA (9 U.S.C. § 2) creates "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Moses H. Cone Hospital, supra,* 460 U.S. 1, 24, 103 S.Ct. 927.)

**\*\*797** In all but the most exceptional cases, these laws thus demand deference to the "*fundamentally contractual nature* [of private arbitration], and to the attendant requirement that [contractual] arbitration shall proceed *as the parties themselves have agreed.* [Citation.]" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831, 88 Cal.Rptr.2d 366, 982 P.2d 229, first italics added; see, e.g., *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 [FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms"].) Of course, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review in the courtroom for the simplicity, informality, and expedition of arbitration.' [Citation.]" (*Gilmer, supra,* 500 U.S. 20, 31, 111 S.Ct. 1647.)

Because of the statutory preference that arbitration agreements be fully implemented, past decisions have recognized but limited circumstances in which general contract principles may render terms of such an agreement unenforceable. The majority holds that such circumstances may be present here. In my view, the majority thereby errs.

Real party in interest Circuit City Stores, Inc. (Circuit City) offered its employees, including plaintiff Gentry, a *voluntary* program to resolve disputes by arbitration. Consistent with the primary advantage of arbitration as a quicker, simpler, and cheaper alternative to court litigation, the program provided, among other things, that claims would proceed on an individual basis, and that consolidation of the separate claims of multiple plaintiffs in a single proceeding would not be permitted.

The program's terms, including the individual arbitration provision, were set forth in a package of written materials, which plaintiff Gentry received, and were further explained in a video presentation, which he attended. He signed a receipt for the written materials. The receipt advised that he should review the materials and contact Circuit City with any questions. It even suggested that he could consult with an attorney about his legal rights. Finally, it clearly provided that, having done so, he could "opt out" of the arbitration program, without penalty, by mailing the appropriate form to Circuit City within 30 days.

Gentry did not exercise his option. The majority concedes that a contract under the program's terms was thus validly formed.

**\*475** Later, contrary to those provisions, Gentry filed a class action against Circuit City, seeking overtime wages allegedly due both to himself and to other employees. The superior court enforced the arbitration agreement according to its terms, and ordered individual arbitration of Gentry's claim. The Court of Appeal summarily denied mandate. We directed that court to reconsider under the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

intervening decision in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100(*Discover Bank* ). After doing so, the Court of Appeal again denied Gentry relief.

Now the majority reverses, finding that the individual-arbitration term in Circuit City's agreement with Gentry may be invalid. The majority does not reach this result-because it cannot-by any analysis to be found in the prior case law. No finding is made that a class remedy is **798 *essential,* as a practical matter, to vindication of the "unwaivable" statutory right (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100-113, 99 Cal.Rptr.2d 745, 6 P.3d 669(*Armendariz* ); see *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79, 90-91, 121 S.Ct. 513, 148 L.Ed.2d 373) to overtime wages. Nor does the majority rely, for this holding, on the public policy against contract terms that are both procedurally and substantively oppressive, and thus "unconscionable." (See *Gilmer, supra,* 500 U.S. 20, 33, 111 S.Ct. 1647; *Armendariz, supra,* at pp. 113-121, 99 Cal.Rptr.2d 745, 6 P.3d 669; but cf. discussion, *post.*)

Finally, there is no suggestion that the individual-arbitration clause in the voluntary agreement between Gentry and Circuit City meets the test of invalid "exculpatory" agreements (see Civ.Code, § 1668) set forth in *Discover Bank, supra,* 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100. There we confronted an agreement, unilaterally imposed by means of a "bill stuffer," that required customers of a credit card company to either accept nonclass arbitration of claims against the company or cease using their accounts. The *Discover Bank* majority held that a waiver of class rights, contained in such a mandatory contract, may be deemed exculpatory, and thus unenforceable, in a setting where "disputes between the contracting parties [will] predictably involve small amounts of damages, and ... it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of [persons] out of individually small sums of money." (*Id.,* at pp. 162-163, 30 Cal.Rptr.3d 76, 113 P.3d 1100.) Under such circumstances, the majority reasoned, the waiver of class treatment "becomes in practice

the exemption of the party [with superior bargaining power] 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' [Citation.]" (*Id.,* at p. 163, 30 Cal.Rptr.3d 76, 113 P.3d 1100.)

Whatever the merits of *Discover Bank*-a decision from which I largely dissented-we face no similar situation here. As the instant majority admits, claims for overtime wages, unlike the minor credit card fees and charges at issue in *Discover Bank,* are not necessarily and predictably "miniscule" *476 (maj. opn., *ante,* 64 Cal.Rptr.3d at p. 782, 165 P.3d at p. 564), such that the incentive to prosecute individual actions, and thus to hold the wrongdoer to account, will rarely, if ever, be present. Obviously, an individual claim for accumulated unpaid wages can be substantial. And there is no indication in the record that Gentry himself-the person whose contract for individual arbitration is actually before us-cannot, as a practical matter, vindicate his statutory overtime rights except through class proceedings.

Moreover, as the instant majority acknowledges, Circuit City did not abruptly impose on Gentry a mandatory requirement of individual arbitration. Unlike the credit card customers in *Discover Bank,* Gentry was given the opportunity to consider the terms of Circuit City's arbitration proposal, and, after doing so, to opt out of the arbitration program without suffering any penalty or sanction.

Nonetheless, breaking new ground, the majority opines that, for several reasons, an agreement to arbitrate disputes on an individual basis might make it "very difficult" (maj. opn., *ante,* 64 Cal.Rptr.3d at pp. 782-783, 165 P.3d at p. 564) for *some* Circuit City employees to pursue their unwaivable rights to unpaid overtime wages. To that extent, the majority reasons, such a provision-even, apparently, if neither oppressive nor mandatory-must thus be considered exculpatory and invalid. Accordingly, **799 the majority rules that if, on remand, the trial court decides a representative action is a *significantly better* means of enforcing the statutory rights of *all* affected Circuit City employees to unpaid overtime wages, the court may, at Gentry's behest, ignore and dishonor *his* agreement to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

arbitrate on an individual basis.

In effect, the majority holds that, despite such an agreement, the trial court may certify a class, in an overtime-wage case, *in any circumstance where it could otherwise do so.* For all practical purposes, the majority thus decrees, such agreements are forbidden, and meaningless, in this context.[FN2]

> FN2. The majority denies that class action waivers in arbitration agreements are *necessarily* invalid in suits to vindicate overtime-wage rights, but that is the practical effect of the majority's holding. Even where no class action waiver is at issue, "[a] line of California cases follows the principle of rule 23(b)(3) of the Federal Rules of Civil Procedure (28 U.S.C.), which 'provides that, for a class action to be maintained, it must be " superior to other available methods for the fair and efficient adjudication of the controversy." This "superiority" criterion has been held to be "manifest" in the ... requirement that the class mechanism confer "substantial benefits." ' [Citations.] " (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 741, 9 Cal.Rptr.3d 544(*Bell* ); see also, e.g., *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435, 97 Cal.Rptr.2d 179, 2 P.3d 27(*Linder* ); *Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385, 134 Cal.Rptr. 393, 556 P.2d 755.) Thus, the majority holds in effect that whenever, in an overtime-wage case, the court could otherwise find a class proceeding appropriate, it may do so notwithstanding a free and fair agreement for individual arbitration. Nor is there any realistic limitation in the majority's suggestion that its rule applies to cases where "systematic [ ]" denial of overtime pay to a "class of employees" is alleged. (Maj. opn., *ante,* 64 Cal.Rptr.3d at pp. 786-787, 165 P.3d at p. 567.) Such assertions would appear, by necessity, in any complaint seeking to litigate overtime-pay claims in a class proceeding.

*\*477* The majority cites no currently valid statutory provision that requires or supports such a determination.[FN3] On the other hand, two statutes-the FAA and the CAA-strongly undermine it. I conclude that the majority may not elevate a mere judicial affinity for class actions as a beneficial device for implementing the wage laws above the policy expressed by both Congress and our own Legislature that voluntary individual agreements to arbitrate-by which parties *give up* certain litigation rights and procedures *in return \*\*800 for* the relative speed, informality, and cost efficiency of arbitration-should be enforced according to their terms. Hence, I cannot accept the majority's reasoning, or its result.

> FN3. California statutes generally permit class actions (Code Civ. Proc., § 382) and give workers the right to engage in concerted activities with respect to workplace issues, free of employer interference or coercion (see Lab.Code, § 923), but nothing suggests these laws preclude noncoercive agreements between employer and employee to arbitrate disputes on an individual basis. As evidence of the Legislature's hostility to the use of contractual arbitration to vindicate wage claims, the majority points to several California statutes that purported to render arbitration agreements unenforceable in this context. (Maj. opn., *ante,* 64 Cal.Rptr.3d at p. 789, fn. 8, 165 P.3d at p. 569, fn. 8.) Of course, as the majority implicitly concedes, all such laws have been *superseded or invalidated* by the prevailing public policy that *favors* enforcement of arbitration agreements according to their terms, as set forth in the CAA and the FAA. (See *Perry v. Thomas* (1987) 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 [FAA preempted California statute (Lab.Code, § 229) that allowed maintenance of action for unpaid wages " without regard to the existence of any private agreement to arbitrate"].) On the other hand, as the majority is well aware, the Legislature knows how to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

provide for a right to class action relief that cannot be waived. It has made such provision, for example, in the Consumers Legal Remedies Act. (Civ.Code, §§ 1751, 1752, 1781; see *Discover Bank, supra,* 36 Cal.4th 148, 158-159, 30 Cal.Rptr.3d 76, 113 P.3d 1100; maj. opn., *ante,* 64 Cal.Rptr.3d at p. 780, 165 P.3d at p. 562.) No similar provisions appear in the wage laws at issue here.

In the majority's view, several factors suggest that the absence of a class remedy might "under some circumstances" unduly interfere with employees' ability to vindicate their statutory rights to overtime pay. (Maj. opn., *ante,* 64 Cal.Rptr.3d at p. 782, 165 P.3d at pp. 563-564.) Because claims for unpaid overtime wages tend to be "modest," the majority asserts, the fees and costs of proceeding individually might discourage many such actions, resulting in mere " ' "random and fragmentary enforcement" ' " of the wage laws. (*Id.,* 64 Cal.Rptr.3d at p. 787, 165 P.3d at p. 567.) The majority cites the prospect of employer retaliation-admittedly illegal-against a worker who asserts an individual claim without the protective coloration of collective action. An additional issue, the majority suggests, is that many employees, especially those low-wage workers most vulnerable to violations, may not know their rights. Finally, the majority concludes, administrative proceedings-so-called Berman hearings (Lab.Code, §§ 98-98.8; see *478Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1114-1116, 56 Cal.Rptr.3d 880, 155 P.3d 284)-are an inadequate alternative means of vindicating smaller claims for overtime wages.

In many respects, the majority's concerns are exaggerated. Though a credit card customer might not sue individually to recover a minor fee or charge he believes improper, one would expect an employee vigorously to pursue any significant amount due as compensation for his labor. The case law supports that hypothesis. As the majority acknowledges, "some 40 published cases over the last 70 years in California have involved individual employees prosecuting overtime violations without the assistance of class litigation or arbitration.

[Citations.]" (Maj. opn., *ante,* 64 Cal.Rptr.3d at p. 787, 165 P.3d at p. 567.) [FN4]

> FN4. In the modern era, these cases include *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 85 Cal.Rptr.2d 844, 978 P.2d 2; *Rawson v. Tosco Refining Co.* (1997) 57 Cal.App.4th 1520, 67 Cal.Rptr.2d 790; *Sequeira v. Rincon-Vitova Insectaries, Inc.* (1995) 32 Cal.App.4th 632, 38 Cal.Rptr.2d 264; *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 273 Cal.Rptr. 615; *Baker v. Aubry* (1989) 216 Cal.App.3d 1259, 265 Cal.Rptr. 381; *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 245 Cal.Rptr. 36; *Swepston v. State Personnel Bd.* (1987) 195 Cal.App.3d 92, 240 Cal.Rptr. 470; and *Markman v. County of Los Angeles* (1973) 35 Cal.App.3d 132, 110 Cal.Rptr. 610.

And though the majority stresses the drawbacks of individual *litigation* to resolve small or modest claims (see generally, e.g., *Linder supra,* 23 Cal.4th 429, 435, 97 Cal.Rptr.2d 179, 2 P.3d 27; *Bell, supra,* 115 Cal.App.4th 715, 741, 9 Cal.Rptr.3d 544), it fails to consider that because arbitration is relatively quick, simple, informal, and inexpensive, it may allow the individual pursuit of claims that would be less practical if litigated individually in court. These qualities of informality, simplicity, and expedition-advantages largely negated by the complexities of a class proceeding-are presumably what Gentry and Circuit City sought when they agreed to individual arbitration.

Moreover, while collective action has its place, the parties here may also have contemplated that resolution of a dispute by the relatively simple, informal process of individual arbitration would reduce the workplace tensions that might otherwise arise as the result of a class battle in court. Indeed, though the majority suggests that class proceedings may lessen the chances of retaliation against an individual employee,**801 I find it hard to imagine that a worker who organizes fellow employees to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

mount a class assault against the employer will thereby achieve improved standing in the employer's eyes.

But even if class relief were a "significantly more effective" way for Circuit City employees, as a group, to establish their overtime-wage claims (maj. opn., *ante,* 64 Cal.Rptr.3d at pp. 777, 787, 788, 165 P.3d at pp. 559, 567, 568), this does not justify invalidating *Gentry's* voluntary agreement to resolve *his* claims by individual arbitration. Unless Gentry's contract to arbitrate individually constitutes a de facto waiver *479 of *his own* statutory rights, he should not be allowed to act, contrary to his agreement, as a representative plaintiff.[FN5] Otherwise, the strong public policy that arbitration agreements are to be enforced according to their terms should prevail.

> FN5. As I have indicated in the text, such a finding cannot be made on this record under the standards suggested by the majority. There is no indication that Gentry's own claim is too small to warrant individual legal action. He need not fear retaliation as a Circuit City employee, because his employment ended in March 2001, before he filed this lawsuit in August 2002. Moreover, the very fact that he sued indicates he was, and is, aware of his legal rights.

Here, as in *Discover Bank,* the majority insists its analysis does not discriminate against the arbitral forum-an approach forbidden by both the FAA and the CAA-but simply indicates the procedures necessary in any forum to prevent the de facto waiver of statutory rights. However, there is more than one way courts can show hostility to arbitration as a simpler, cheaper, and less formal alternative to litigation. They can simply refuse to enforce the parties' agreement to arbitrate. Or, more subtly, they can alter the arbitral terms to which the parties agreed, and defeat the essential purposes and advantages of arbitration, by transforming that process, against the parties' expressed will at the time they entered the agreement, into something more and more like the court litigation arbitration is

intended to avoid.

Given the strong policy that arbitration agreements are to be enforced as written, any such alteration should be employed only on a showing of the starkest necessity. The majority has not adhered to that limitation here.

Two years ago, I noted that "the [strong prevailing weight] of decisions, applying federal law or the law of other states, ... hold[s] that arbitration clauses are not invalid either because they specifically exclude class treatment or because they preclude such treatment by failing expressly to provide for it. [Citations.]" (*Discover Bank, supra,* 36 Cal.4th 148, 176, fn. 1, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (conc. & dis. opn. of Baxter, J.).) The majority does not suggest, and I have no reason to believe, that this situation has changed.[FN6] The majority thus moves California further along the path away from the mainstream on the issue. Persuasive reasoning supports the contrary, prevailing view. I must therefore disassociate myself from the majority's holding.

> FN6. *Skirchak v. Dynamics Research Corp., Inc.* (D.Mass.2006) 432 F.Supp.2d 175, the only overtime case cited by the majority in which a class waiver in an arbitration provision was invalidated, involved a mandatory agreement unilaterally imposed by the employer. In *Skirchak,* employees were advised by e-mail that they would be required to submit to the company's dispute resolution program. Acceptance was a condition of continued employment. Applying principles of procedural unconscionability under Massachusetts law, the court deemed essential to its holding that the employees had no meaningful choice whether to accept the provision. (*Id.* at pp. 179-180.)

**802 *480 In a separate ruling, the majority concludes that the arbitration agreement between Gentry and Circuit City is procedurally unconscionable, thus exposing numerous other provisions of the agreement to possible invalidation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433
**(Cite as: 42 Cal.4th 443, 165 P.3d 556)**

on grounds that they are substantively oppressive or unfair. (See, e.g., *Armendariz, supra,* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Again, I cannot agree.

As noted above, this was not a case in which one party has simply imposed mandatory contract terms on another. Gentry was not required blindly to accept the arbitration program and its terms as a condition of his employment. (Cf. *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979; *Armendariz, supra,* 24 Cal.4th 83, 91-92, 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669; see also *Discover Bank, supra,* 36 Cal.4th 148, 154, 30 Cal.Rptr.3d 76, 113 P.3d 1100 [customers of credit card company could reject arbitration term of cardholder agreement only by ceasing to use their accounts].) On the contrary, Circuit City provided Gentry, and other employees, with an extensive orientation about the program, then allowed them a reasonable time to "opt out," without penalty, simply by mailing back a form.

The instant Court of Appeal determined on this basis that no procedural unconscionability was present. Two Ninth Circuit decisions, applying California law, had previously reached the same conclusion. (*Circuit City Stores, Inc. v. Najd* (9th Cir.2002) 294 F.3d 1104, 1108; *Circuit City Stores, Inc. v. Ahmed* (9th Cir.2002) 283 F.3d 1198, 1199-1200.)

The majority concedes that Gentry's freedom to choose against the arbitration program "weigh[s] against a finding of procedural unconscionability. [Citation.]" (Maj. opn., *ante,* 64 Cal.Rptr.3d at p. 794, 165 P.3d at p. 573.) Nonetheless, the majority discerns an "element" of procedural oppression-thus allowing scrutiny of the agreement's substantive terms-by finding that Circuit City's explanatory materials were "one-sided." (*Ibid.*) In particular, the majority asserts, the explanatory materials failed to disclose that certain terms of the arbitration program might work to an employee's disadvantage in specific situations. Whatever the merits of that premise,[FN7] the receipt Gentry signed prominently advised that he could *consult his own attorney* about the legal "pros and cons" of the program, and he was given ample

opportunity to do so. Under these circumstances, there is no basis for a conclusion that the process by which Circuit City sought to secure its employees' agreement to the program was misleading.

> FN7. As the majority makes clear, the informational packet Gentry received included not only the "Associate Issue Resolution Handbook," which sought to explain the program, but also the "Circuit City Dispute Resolution Rules and Procedures," which set forth the program's terms in full.

**\*481** The majority also points out that Circuit City made clear its preference for arbitration. But even if Circuit City encouraged employees to accept the arbitration agreement, the record is devoid of any evidence that it implied, threatened, or imposed any sanction for an employee's decision to opt out of the program. I see in this situation no grounds for a finding that Circuit City unfairly coerced or induced its employees' agreement.

Accordingly, I would affirm the judgment of the Court of Appeal.

WE CONCUR: CHIN, and CORRIGAN, JJ.
Cal.,2007.
Gentry v. Superior Court
42 Cal.4th 443, 165 P.3d 556, 64 Cal.Rptr.3d 773, 154 Lab.Cas. P 60,475, 2007 Daily Journal D.A.R. 13,433

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.