Donna M. Mezias (State Bar No. 111902)
dmezias@jonesday.com
Catherine S. Nasser (State Bar No. 246191)
cnasser@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700

Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Tom Chau, individually and on behalf of all others similarly situated,**<br><br>   Plaintiff,<br><br>   v.<br><br>**International Business Machines, a Corporation, and DOES 1-20, inclusive,**<br><br>   **Defendant.** | **Case No. C07-03541 MMC**<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    November 30, 2007<br>Time:    9:00 a.m.<br>Judge:   Hon. Maxine Chesney<br>         Courtroom 7, 19th Floor |

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................................ 1

II. Argument ............................................................................................................................ 1

    A. Chau's Attack On The Williams Declaration Is Groundless ................................. 1

    B. Chau's Assertion That His Release Is Invalid Because Of Alleged Statements By Hanson Is Unavailing ..................................................................... 2

    C. Chau's Assertion That His Release Is Inherently Unenforceable Lacks A Basis In Precedent .................................................................................................. 5

    D. Chau's Assertion That His Release Is Invalid On The Facts Of This Case Is Without Merit ......................................................................................................... 8

III. Conclusion ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Astor v. Inter'l. Bus. Machines Corp.*,
    7 F.3d 533 (6th Cir. 1993) ................................................................................................ 3

*Chaganti v. Ceridian Benefits Servs., Inc.*,
    208 Fed.Appx. 541, 544 (9th Cir. 2006) .......................................................................... 7

*Cundiff v. Miles Inc*,
    1995 WL 790616 (C.D. Cal. Dec. 11, 1995) .......................................................... 2, 3, 8

*Martinez v. Bohls Bearing Equip.*,
    361 F.Supp. 2d 608 (W.D. Tex. 2005) ............................................................................ 7

*McCray v. Casual Corner, Inc.*,
    812 F.Supp. 1046 (C.D. Cal. 1992) ................................................................................. 3

*McQuirk v. Donnelley*,
    189 F.3d 793 (9th Cir. 1991) ........................................................................................... 7

*Pac. Greyhound Lines v. Zane*,
    160 F.2d 731 (9th Cir. 1947) ........................................................................................... 9

*Reynov v. ADP Claims Services Group., Inc.*,
    2007 U.S. Dist. LEXIS 31631 (N.D. Cal. April 30, 2007) ........................... 4, 5, 6, 7, 8, 10,

**STATE CASES**

*Auto. Equity Sales, Inc. v. Sup. Court of Santa Clara*,
    57 Cal. 2d 450 (1962) ...................................................................................................... 5

*Reid v. Overland Machine Products*,
    55 Cal. 2d 203 (1961) ............................................................................................. 5, 6, 7, 8

*San Diego Hospice v. County of San Diego*,
    31 Cal.App.4th 1048 (1995) ............................................................................................ 9

*Sullivan v. Del Conte Masonry Co.*,
    238 Cal. App. 2d 630 (1965) ................................................................................. 5, 6, 7, 8

*Warner v. Experian Info. Solutions*,
    Los Angeles Superior Court Case No. BC362599 ........................................................... 7

*Yemen v. Countrywide Home Loans, Inc.*,
    2002 WL 537994 (Cal. App. April 2, 2001) ................................................................... 7

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

**STATE STATUTES**

Cal. Civ. Code § 1542 ................................................................................................. 9, 10

Cal. Civ. Code § 1668 ................................................................................................... 6, 7

Cal. Code Civ. Pro. § 1856 ................................................................................................. 2

Cal. Lab. Code § 206.5 ............................................................................................... 4, 5, 6

Cal. Lab. Code § 1194 ....................................................................................................... 6

## I. INTRODUCTION

In its Motion for Summary Judgment ("Motion"), Defendant IBM demonstrated that it is entitled to summary judgment in this matter because Plaintiff Tom Chau ("Plaintiff" or "Chau") executed a general release and covenant not to sue ("Release") that is unquestionably valid and that waives the claims that he attempts to assert in this case. In his Opposition to this Motion for Summary Judgment ("Opposition"), Chau admits and/or does not dispute that he executed the Release, that he collected more than $9,000.00 in layoff benefits pursuant to the Release, and that the Release covers the claims that he asserts against IBM in this case. Chau seeks to avoid the binding effect of the Release, nonetheless, by arguing that it is inherently unenforceable or unenforceable against him. Chau's arguments lack merit, and the Court should grant the Motion and dismiss this matter in its entirety.

## II. ARGUMENT

### A. Chau's Attack On The Williams Declaration Is Groundless.

As an initial matter, Chau's assertion (Opposition p. 2) that the declaration of Keith Williams is inadmissible scarcely merits this Court's attention. Putting aside Chau's flawed arguments on inadmissibility, Chau readily admits in his own papers that the limited set of straightforward, objective facts to which Williams attests is true. For instance, Williams testified that IBM terminated Chau in February 2004 as part of a reduction in force (Williams Dec. ¶ 3), and Chau agrees (Chau Dec. ¶¶ 2, 4). Williams testified that Chau executed the Release (Williams Dec. ¶¶ 5, 6, Exhibit A), and Chau agrees (Chau Dec. ¶ 8; Opposition p. 3). Williams testified that IBM paid Chau $9,681.55 in separation pay after he executed the Release (Williams Dec. ¶ 6), and Chau agrees (Chau Dec ¶ 8). Williams further testified that IBM paid Chau his salary and earned vacation through the date of his termination (Williams Dec. ¶ 4), and Chau agrees (Chau Dec. ¶¶ 4, 8; Opposition p. 2). In short, then, because Chau concedes the substance of the Williams Declaration, any contention that the declaration is not admissible is a waste of this Court's time.

In all events, the declaration itself is admissible. As IBM details in its separately filed Response to Plaintiff's Objections to the Declaration of Keith Williams, Williams is competent to

testify as to the matters in his declaration, and Chau's contrary claims of inadmissibility are misguided. This Court should give the declaration its full consideration.

### B. Chau's Assertion That His Release Is Invalid Because Of Alleged Statements By Hanson Is Unavailing.

Chau attempts to create a triable issue of fact by asserting that his manager, whom he recalls is named Kathy Hanson, allegedly stated that Chau needed to execute the Release to get his final salary and vacation pay. Opposition pp. 2-3. For two reasons, this argument fails.

First, the Release plainly states that the *quid pro quo* was the "payments and benefits provided pursuant to the IBM Individual Separation Allowance Plan" – *i.e.*, the $9,681.55 in separation pay that Chau received after executing his Release. Williams Dec. ¶ 6, Exhibit A, p. 2; Chau Dec. ¶ 8. The Release further provides that this separation pay constituted "payments and benefits to which [he] would not otherwise have been entitled …." Exhibit A to Williams Dec. p. 2. Chau's attempt to introduce an alleged oral statement that the *quid pro quo* for his Release included not only the separation pay, but also his final salary and vacation pay, is a direct contradiction of these express provisions of the Release and therefore violates the parol evidence rule.

It is well established that a party cannot void a release, or otherwise vary the terms of an agreement, through parol evidence that contradicts the written terms of the document. *See*, *e.g.*, Cal. Code Civ. Pro. § 1856(a) (providing that the "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement"). In *Cundiff v. Miles Inc.*, for example, the plaintiffs executed releases that expressly provided them with "at least 21 days after receipt of [the] Agreement…to consider whether or not to sign," and provided "[t]hat no promises or representations except those contained in the Agreement and the Plan have been made to the Employee in connection with the termination of his or her employment." 1995 WL 790616 at *6 (C.D. Cal. Dec. 11, 1995). Nevertheless, in seeking to challenge the releases, the plaintiffs alleged that they were not given 21 days to consider the releases because they were told to execute them by their last day of work. *Id*. at *9.

Reply Brief In Support of Defendant's Motion For Summary Judgment - 2 - Case No. C07-03541 MMC

But, as the court made clear, such testimonial contradictions of the plain language of the releases were unavailing:

> [B]ecause the Releases expressly provided that Plaintiffs were given at least 21 days after receipt of the Release to consider whether or not to sign, and because the Releases are fully integrated, the parol evidence rule bars Plaintiffs[']…testimony that they had less than 21 days to consider the Release.

*Id.*; *see also Astor v. Int'l. Bus. Machs. Corp.*, 7 F.3d 533, 540 (6th Cir. 1993) (holding that "[b]ecause the employees had no right to rely on oral representations in contravention of the express terms of the releases that they executed, we reject the employees' claims because the district court properly determined that the employees' action is barred by the parol evidence rule"); *McCray v. Casual Corner, Inc.*, 812 F.Supp. 1046, 1049 & n. 2 (C.D. Cal. 1992) (evidence that plaintiff allegedly only signed release because he believed it would not be enforced was not admissible).

Chau's attempt to use Hanson's alleged oral representation to contradict the plain terms of the Release, which specifies that the consideration for the Release was the separation benefits, consideration to which Chau was <u>not</u> otherwise entitled, is impermissible. Chau cannot create a jury question by attempting to contradict his fully integrated release agreement, and this Court should disregard Chau's declaration under the parol evidence rule.

Further, Chau specifically agreed in the Release that he did not "rel[y] on any representations, promises, or agreements of any kind, whether written or oral, made to [him] in connection with [his] voluntary decision to accept the consideration, except for those set forth in the Summary Plan Description." Williams Dec. ¶6, Exhibit A, p. 2. Chau's assertion that he relied on Hanson's alleged statement that he would receive his final salary and vacation payout only if he agreed to the release impermissibly contradicts the plain language of the agreement. Chau Dec. ¶ 8 ("I did give my situation some thought but there didn't seem to be any option. I knew I would need money and it was clear that the only way that I could get paid my salary and vacation money was to sign the separation package."). The parol evidence rule plainly bars such a tactic.

1        Second, Chau's assertion (Opposition pp. 1-3) that Hanson required him to release claims 2   before getting his final salary and vacation pay ignores the undisputed evidence about when the 3   Release became effective.  By its plain terms, Chau's Release was <u>not</u> effective or enforceable on 4   the day it was executed.  To the contrary, the Release clearly states that it was "not effective or 5   enforceable for seven days . . . after you sign it, and you may revoke it during that time." 6   Williams Dec. ¶6, Exhibit A, p. 3.  Because Chau claims (Opposition p. 3) that he received his 7   final salary and vacation pay on the same day that he executed the Release, he received these 8   amounts seven days before there was an effective and enforceable release of claims.  Indeed, for 9   up to seven days after receiving his final salary and vacation pay, Chau could have walked away 10  from the Release and prevented it from becoming effective by revoking it and returning the 11  severance pay.  Williams Dec. ¶6, Exhibit A, p. 3.  The Release did not require that Chau return 12  his final salary and vacation pay to revoke the Release.  *Id.*  In short, the protections against 13  coercion built into the Release legally foreclose Chau's claim that he needed to give up rights to 14  collect his final salary and vacation pay.

15       Third, even if Hanson's alleged statement were admissible (and if Chau's manager had 16  made such a statement, which IBM does not concede), such evidence would not save his claims 17  in this case.  Section 206.5 provides that "[n]o employer shall require the execution of any release 18  of any claim or right on account of wages due . . ." and that "[a]ny release required or executed in 19  violation of the provisions of this section shall be null and void . . ." (emphasis added).  This 20  Court confirms that, as used in the statute, the term "wages due" means wages "concededly due" 21  and that "wages are not 'due' if there is a good faith dispute as to whether they are owed." *Reynov* 22  *v. ADP Claims Servs. Group., Inc.*, 2007 U.S. Dist. LEXIS 31631 *8-9 (N.D. Cal. April 30, 23  2007).  Accordingly, the only release that arguably could be voided by operation of Section 206.5 24  is Chau's release of claims for amounts concededly due – namely, his final salary and vacation 25  pay.  *Id*. at *8 ("section 206.5 voids releases of claims 'on account of wages due'").  But Chau has 26  no claim relating to such amounts – he concedes that IBM paid him his salary and vacation 27  benefits through his termination date. (Opposition p. 2.)  More importantly, Section 206.5, even 28  if applicable, would only render void Chau's release of claims for concededly due wages.  Section

Reply Brief In Support of Defendant's Motion     - 4 -     Case No. C07-03541 MMC
For Summary Judgment

206.5 cannot operate to void a release of claims not subject to the statute – i.e., a release of claims as to which a bona fide dispute exists, such as the claims in this case. In short, Chau's reliance on Section 206.5 and the alleged Hanson statement, even if not barred by the parol evidence rule, would not permit him to pursue his claims for overtime and related relief in this case. *See also* Williams Dec. Exhibit A, p. 3 ("In case any part of this Release shall be invalid, illegal or otherwise enforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.")

### C. Chau's Assertion That His Release Is Inherently Unenforceable Lacks A Basis In Precedent.

Chau goes on to make a blanket assertion (Opposition pp. 3-4) that his Release is unenforceable because an "overtime entitlement cannot be waived under either state or federal law." But, as IBM demonstrated in its moving papers, this position is contrary to the holdings of the California Supreme Court, the California Courts of Appeal, and this Court. *See Reid v. Overland Mach. Prods.*, 55 Cal. 2d 203, 207 (1961) ("An employer and employee may of course compromise a bona fide dispute over wages . . ."); *Sullivan v. Del Conte Masonry Co.*, 238 Cal. App. 2d 630, 634 (1965) (same); *Auto. Equity Sales, Inc. v. Super Ct. of Santa Clara*, 57 Cal. 2d 450, 455 (1962) (holding that all published appellate court decisions are binding on all trial courts); *accord Reynov*, 2007 U.S. Dist. LEXIS 31631. Each of these courts has held that an employee may release a bona fide dispute over wages, where, as here, the employer has paid the employee all wages that are concededly due. *See id.* Chau, who relies largely on two unpublished California trial court decisions, has no cogent response to this binding authority.

First, Chau erroneously contends (Opposition pp. 12-13) that IBM's authorities either predated California Labor Code § 206.5, or simply failed to consider it. The California Supreme Court decided *Reid* in 1961, two years after the 1959 enactment of Section 206.5. In *Sullivan*, the California Court of Appeals quoted Section 206.5 in full, *see* 57 Cal App. 2d. at 633, before stating that an employer and employee may "compromise a bona fide dispute over wages," *id.* at 634. And *Reynov*, likewise, gave full and complete consideration to Cal. Labor Code § 206.5. *See Reynov*, 2007 U.S. Dist. LEXIS 31631 at *6 (rejecting the plaintiff's contention that "the

Reply Brief In Support of Defendant's Motion For Summary Judgment         - 5 -         Case No. C07-03541 MMC

release he signed was a general release that is not legally enforceable under California Labor Code § 206.5"). Thus, *Reid*, *Sullivan*, and *Reynov* are controlling on the question presented here.

Second, Chau's attempt (Opposition pp. 13-15) to distinguish *Reynov* only serves to undercut any contention that California law precludes the release of overtime claims. Specifically, Chau apparently concedes that, as decided, this Court's decision in *Reynov* – which enforced a similar release and involved the very claims that Chau attempts to raise in this matter – was correct. Opposition p. 14 ("It is not surprising, therefore, that Judge Wilken upheld the waiver and granted summary judgment to the employer. It is somewhat amazing that her opinion was not more critical of the plaintiff and his counsel."). If Chau concedes that Judge Wilken's enforcement of the release in *Reynov* was legally correct, as it plainly was, then Chau can scarcely claim that private releases of overtime claims are inherently unenforceable.

Third, Chau is mistaken in his argument (Opposition p. 7) that California Labor Code Section 1194 "leaves no room for Defendant's attempt to enforce an overtime-related release." That section of the Labor Code provides only that an employee may bring an overtime action "[n]otwithstanding any agreement to work for a lesser wage." Cal. Lab. Code § 1194. Here, IBM does not contend that, at some point prior to or during his employment, the Company and Chau entered an agreement under which he would "work for a lesser wage." Rather, in this case, the parties merely entered into a distinct release agreement, at the cessation of Chau's employment, with regards to any claims that Chau might later choose to assert about the past. Simply put, Labor Code section 1194 does not preclude such settlements.

Fourth, Chau is incorrect (Opposition p. 8) in his contention that "Civil Code § 1668 also plays a key role in this kind of analysis." This provision was enacted in 1872, yet it played absolutely no role, much less a key one, in the analysis contained in the leading cases of *Reid*, *Sullivan*, and *Reynov*. This is hardly surprising, since California Civil Code § 1668 regulates only prospective waivers of future liability. As the California Court of Appeals has noted:

> This section obviously applies to contracts designed to immunize a party from *future* misconduct. It cannot be applied to a settlement contract negotiated to resolve a dispute about a *past* act. If that were not so, agreements designed to settle disputes involving "fraud

> or willful injury" or "willful or negligent" acts would have no efficacy whatever.

*Yemen v. Countrywide Home Loans, Inc.*, 2002 WL 537994 at *8 (Cal. App. April 11, 2002); *see also Chaganti v. Ceridian Benefits Servs., Inc.*, 208 Fed.Appx. 541, 544 (9th Cir. 2006) ("The Release does not violate Cal. Civ.Code § 1668 or the public policy against waiver of liability for future intentional torts."); *McQuirk v. Donnelley*, 189 F.3d 793, 795 (9th Cir. 1999) (refusing to enforce release signed as part of an application process, noting that "contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated") (internal quotes and citations omitted). Section 1668 simply does not preclude settlements of previously accrued overtime claims, fraud claims, intentional torts or any other type of claim.

Fifth, Chau is off point in arguing (Opposition p. 9) that "federal wage and hour laws" demonstrate that California bars releases of overtime claims. As an initial matter, recent federal authority provides that "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." *Martinez v Bohls Bearing Equip.*, 361 F.Supp. 2d 608, 618-32 (W.D. Tex. 2005) (emphasis added). But, even to the extent that federal law precludes unsupervised releases of FLSA overtime claims, the State of California remains free to establish a different rule as to California wage claims. And, as this Court found in *Reynov*, California law gives effect to releases such as Chau's.

Finally, the unreported trial court decisions cited by Chau (Opposition pp. 16-21) do not compel the conclusion – contrary to *Reid*, *Sullivan*, and *Reynov* – that California law precludes the release of overtime claims. Indeed, the *Warner* trial court decision expressly agreed with *Reid* and *Sullivan* that California employees *may* release such claims. *See Warner v. Experian Info Solutions*, Los Angeles Superior Court Case No. BC362599, Slip Op. at p. 10 ("Conversely the statements in *Reid* and *Sullivan* strongly suggest that when there is a bona fide, actual dispute over wages between an employer and an employee, and the employer does not withhold benefits due the employee or otherwise coerce resolution of the disputed wage claim, the employer and employee may compromise that claim."). Moreover, as Chau readily concedes (Opposition p. 16), the decisions upon which he relies are "certainly not binding precedent." Indeed, they do not

even budge the scale, which is completely weighted down on the other end by *Reid*, *Sullivan*, and *Reynov* – which are legally binding here.

### D. Chau's Assertion That His Release Is Invalid On The Facts Of This Case Is Without Merit.

Chau makes a smattering of contentions that, on the facts presented here, his Release is not enforceable. Such arguments have no merit.

To begin with, Chau appears to contend that, in connection with his Release, he received no consideration to which he was not otherwise entitled. Opposition p. 14. This, however, is a point that Chau has already conceded in the Parties' Joint Conference Statement. Docket Entry No. 16, p. 2 ("At the time of his separation, and in exchange for valuable consideration to which he was not otherwise entitled, [Chau] executed a release that purported to waive all claims related to his employment."). In any event, though his declaration is unclear, to the extent Chau purports to state that he was entitled to the over $9,000 in separation pay that he received in exchange for the Release, such a statement would impermissibly contradict the plain language of the Release with parol evidence. *See*, *e.g.*, *Cundiff*, 1995 WL 790616 at *6 (holding that "the parol evidence rule bars . . . testimony" that would contradict the clear terms of a release). In particular, the Release provides that the severance pay that Chau received under IBM's Individual Separation Allowance Plan constituted "payments and benefits to which [Chau] would not have been entitled had [he] not signed this Release." Williams Dec. ¶6, Exhibit A, p. 2. Any testimony to the contrary is barred by the parol evidence rule.

Chau also contends (Opposition p. 15) that IBM has failed to establish that a bona fide dispute exists in this matter because IBM "has failed to make even the most basic evidentiary showing in its [Motion] that Plaintiff was properly classified as exempt." But there simply is no requirement that a court conduct a mini-trial on exempt status in order to establish the validity of a release. To the contrary, as this Court has held, a good faith dispute concerning wages exists "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Reynov*, 2007 U.S. Dist. LEXIS 31631 at *9 (quoting 8 C.C.R. § 13520).) Here, IBM has presented such a defense (Answer, Docket Entry No. 7, at

Reply Brief In Support of Defendant's Motion        - 8 -        Case No. C07-03541 MMC
For Summary Judgment

¶ 42), and there can be no question that a waivable, bona fide dispute as to wages exists in this matter.

Similarly, Chau notes (Opposition p. 15) that he was not represented by counsel at the time that he executed his Release. But he identifies no authority suggesting that a release is valid only when a party is represented by counsel. Moreover, he does not and cannot dispute that he was repeatedly directed to seek the advice of counsel in connection with his Release. (*See*, *e.g.*, Williams Dec. ¶6, Exhibit A, pp. 1-3 (caption on each page).) He should not be permitted to profit from his knowing failure to do so.

Chau further asserts (Opposition p. 15) that his Release is ineffective because he was "unaware of potential overtime claims" when he executed his Release. But it is well settled in California that a release may waive even an unknown claim where it specifically references and waives rights under California Civil Code § 1542. *See*, *e.g.*, *Pac. Greyhound Lines v. Zane*, 160 F.2d 731, 736 (9th Cir. 1947) ("In the absence of actual fraud, the express waiver of all rights under this section (1542) was valid."); *San Diego Hospice v. County of San Diego*, 31 Cal. App. 4th 1048, 1053-1054 (1995) ("This court has held that a general release can be completely enforceable and act as a complete bar to all claims (known or unknown at the time of the release) despite protestations by one of the parties that he did not intend to release certain types of claims."). Chau's Release, in fact, contains a valid waiver of Section 1542 rights:

> You expressly waive the protection provided by Section 1542 of the California Civil Code which states:
>
> "A general release does not extend to claims which a creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."
>
> Since you intend to release IBM and those associated with IBM of all claims, you agree to waive your rights, to the extent permitted by law, under Section 1542. In the event you do not understand Section 1542 or its legal effect on you, you are advised to seek legal counsel.

Williams Dec. ¶6, Exhibit A, p. 1. Thus, having agreed to the foregoing language, Chau cannot now be heard to claim that his Release does not extend to allegedly unknown claims. *See*, *e.g.*,

*Reynov*, 2007 U.S. Dist. LEXIS 31631 at *8, *10 (refusing to invalidate release on the basis of plaintiff's "argument that he was unaware of his potential overtime claims when he signed the Letter Agreement," where the release in question "contained an express waiver of all rights under California Civil Code § 1542").

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in IBM's moving papers, this Court should grant IBM's Motion and dismiss this matter in its entirety with prejudice.

Dated: November 16, 2007

Respectfully submitted,

Jones Day

By: /S/ Donna M. Mezias
    Donna M. Mezias
Counsel for Defendant
INTERNATIONAL BUSINESS MACHINES CORPORATION