# EXHIBIT B

Westlaw.

16 P.2d 673                                                                                                        Page 1

216 Cal. 721, 16 P.2d 673
**(Cite as: 216 Cal. 721, 16 P.2d 673)**

▷
THOMAS P. ENDICOTT, Appellant, v. HARRY ROSENTHAL et al., Respondents.
Cal. 1932.
THOMAS P. ENDICOTT, Appellant,
v.
HARRY ROSENTHAL et al., Respondents.

Supreme Court of California.
L. A. No. 11441.

November 29, 1932.

[1] ASSOCIATIONS-ILLEGAL CONTRACT-RESTRAINT OF TRADE-FIXING PRICES.
Where an association includes in its membership practically all of the cleaners and dyers in two counties, and binds its members to be governed in their dealings with the public by prices to be fixed by the association, and also binds them to cease competition with each other under heavy penalties, the two main purposes for which the association was formed being to increase prices and eliminate competition, the contract of the party who organized the association, upon which suit was brought to recover commissions upon the gross wholesale and retail business done by certain members of the association, is illegal and void.

[2] ID.-MINIMUM PRICES-FAIR PROFITS.
The contention that an association has the right to establish a minimum price for products of its members, so long as that price is not unreasonable and is reasonably necessary to produce a fair profit upon the commodity sold or services rendered, cannot be maintained, where the association was formed for the purpose of fixing prices and preventing competition among its members, as agreements which create such potential power are in themselves unreasonable or unlawful restraints, without the necessity of minute inquiry whether a particular price is reasonable or unreasonable as fixed.

[3] ID.-SEPARATE CONTRACTS-EMPLOYMENT TO ORGANIZE ASSOCIATION-ILLEGAL PURPOSE.
In such a case, where the plaintiff confederated with the cleaners and dyers of two counties to form an association in that industry, which would include all of those engaged in that business in those counties, and, in furtherance of that design, they formed an association for the principal objects of raising the price of their output and stifling competition, the contention that the contract of employment of plaintiff is separate and distinct from the contract of the association and that any illegality of the latter will not render the former unenforceable, cannot be maintained.

[4] ID.-SECTION 1673, CIVIL CODE-CONSTRUCTION.
Section 1673 of the Civil Code includes businesses of any kind, and the industry of cleaning and dyeing of wearing apparel is a business within the meaning of that section.

[5] ID.-ILLEGALITY OF CONTRACT-PLEADING.
Even if the defendants, in such an action, did not set up in their answer the defense of illegality of the contract sued upon, where the case made by the plaintiff showed its illegality, it became the duty of the court *sua sponte* to refuse to entertain the action.

[6] ID.-WRITTEN CONTRACTS-ILLEGALITY-PAROL EVIDENCE.
Parol evidence is always competent to show that a written contract, though lawful on its face, is illegal, or part of an illegal transaction, and the illegality, if serious, need not be pleaded or urged to enable the court to act upon it.

APPEAL from a judgment of the Superior Court of Los Angeles County. James W. Bartlett, Judge Presiding. Affirmed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

16 P.2d 673 Page 2
216 Cal. 721, 16 P.2d 673
(Cite as: 216 Cal. 721, 16 P.2d 673)

The facts are stated in the opinion of the court.

*722 William Schreider for Appellant.
Harry W. Biddle, Holbrook, Taylor, Tarr & Horton and Joseph K. Horton, *Amici Curiae,* on Behalf of Appellant.
Fred H. Luth and W. H. Gregory for Respondents.
THE COURT.
A hearing was granted in this case after decision by the District Court of Appeal, Third Appellate District. Upon further consideration, we are satisfied that the opinion of the said court, delivered by Mr. Justice *pro tem.* Jamison, correctly disposes of the issues, and we adopt it as the opinion of this court. It reads as follows:

This is an action brought by plaintiff to recover from defendants commission upon the gross wholesale and retail business done by defendants since April 6, 1925, under a written contract. Defendants Harry Rosenthal and Robert Cowan, by their amended answer, admitted that they are copartners doing business under the name of Bear Cleaners & Dyers, but deny that they were indebted to plaintiff under said contract.

At the close of plaintiff's case defendants moved for a nonsuit upon the grounds that the contract sued upon is illegal, failure of consideration, and because the contract sued upon has been superseded by the agreement with the *723 Plant Owners Association. The trial court granted the motion for nonsuit upon the ground that the contract was illegal, and thereupon rendered judgment for defendants, from which judgment plaintiff has appealed.

The contract provides in substance that respondents being engaged in the business of cleaning and dyeing wearing apparel, etc., and being desirous of securing the services of appellant as business counselor and adviser, have employed him in that capacity. That appellant shall maintain an office in Los Angeles, California, at his own expense, from which advice and counsel will be given respondents. Appellant agreeing to use his best efforts to improve the methods of cleaning and dyeing, to improve the equipment and facilities for handling, cleaning and dyeing, to improve the working conditions, and to standardize the methods generally of the industry. The respondents, irrespective of the extent that they may avail themselves of the advice and counsel of appellant, agreed to pay for said services so to be rendered by appellant, after the 6th day of April, 1925, the sum of 1 per cent of the amount of their retail gross business, and 3 per cent of the amount of their wholesale gross business during the life of the contract, remittance of said sums to be made to appellant on Wednesday of each week. The contract to continue in force for a term of five years from the date thereof, and not to be voidable for any cause whatsoever. The contract was dated March 11, 1925.

It appears from the testimony of appellant that previous to coming to California he had been engaged in the cleaning and dyeing business for 25 years, and at one time had been at the head of the National Association; that he came to Los Angeles in 1925, and during the latter part of January and February and the early part of March of that year he visited the various plants and consulted with the cleaners and dyers, and gave them suggestions as to contemplated improvements, and in what manner he could save them money. The result of this was that the cleaners and dyers resolved to form an association and incorporate it, and on March 2, 1925, the said association was formed and incorporated under the name of "Plant Owners Association of Cleaners and Dyers". The by-laws of said corporation provided, among other things, as follows: "That each member shall furnish the director general, within fifteen days after *724 signing the agreement, with the names and addresses of all customers with which each member does a wholesale business. Each member shall refrain from soliciting wholesale business directly or indirectly. That if a member comes in contact with a wholesale customer, he shall decline accepting business from such customer pending approval thereof in writing by the director general. If through neglect or design, business should be taken from this customer, and it is later learned that such customer is, or has been, a customer of any other member, then the member so dealing with said customer shall turn over to the member designated by the director general, as the member rightfully entitled to the business, the full amount of all

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

16 P.2d 673                                                                                                                Page 3
216 Cal. 721, 16 P.2d 673
**(Cite as: 216 Cal. 721, 16 P.2d 673)**

charges collected from such customer, without allowance of any amount or kind for work or services rendered; that no member shall provide services of any kind in the cleaning and dyeing industry for less than the minimum reasonable charges fixed by the association, or its board of directors, provided that before a member shall change or vary his price from the established minimum, he shall give fifteen days notice of such intention to the director general."

The by-laws also provided that any member violating any of the provisions should be fined $100 and pay to the association, as liquidated damages, $500, and for the second offense should pay to the association as liquidated damages, the sum of $3000, and that each member was to deposit with the director general his note for $5,000, with the agreement that the sum due on the note should be applied to the payment of said fine and damages. The by-laws also provided that no member should accept business from new commission men or contractors. The association consisted of 135 members, and each of them, including appellant, signed said by-law; the appellant was also constituted the director general. Each of the members executed to appellant a note for $5,000, and a contract similar to that executed to him by respondents; appellant endorsed said notes to the association, but it was agreed that none of the contracts should be delivered to appellant until an increase of price had been provided. On April 1, 1925, a meeting of the members of the association was held and a resolution was adopted ordering the board of directors to increase the retail price of a man's suit to $1.50, and at a meeting of said board the *725 next day the increase was made, and thereafter, on April 6, 1925, all of said contracts were delivered to appellant. On April 10, 1925, appellant entered into a contract with said corporation, which is therein alleged to be an association of individuals, firms and corporations engaged in the business of cleaning and dyeing wearing apparel, etc. By said contract said association employed appellant to give business advice on all problems affecting the cleaning and dyeing industry, and to equip and maintain an office in Los Angeles, the incidental expenses thereof to be paid from the income derived by appellant from the agreement for services with the individual members of the association. Appellant testified that all persons, firms and corporations engaged in the business of cleaning and dyeing wearing apparel, etc., in Los Angeles and Orange counties, except one firm in Los Angeles county, became members of the association and signed the by-laws. Appellant also testified that he expended $50,000 under his contract with the Plant Owners Association of Cleaners and Dyers, of which the sum of $13,000 only has been received by him, leaving the sum of $37,000 still owing him by the association for money expended by him for its benefit; that he was told by the board of directors to sue the individual members upon their contracts to make up this default, and that the purpose of this suit is not to collect damages or salary for his services, but only for the purpose of recovering the money he has paid for the benefit of the association. That the commissions provided for in the individual contracts of the members were considered as dues owing to the association and were to be used for its benefit. That within six or seven weeks after the price of $1.50 for cleaning and dyeing wearing apparel, etc., was established, a large number of the members cut said price, and thereupon numerous suits were instituted to enforce the provisions of the by-laws, by the imposition of fines and damages.

(1) It is evident that the two main purposes for which this association was formed were to increase prices and eliminate competition. It included in its membership practically all of the cleaners and dyers in the counties of Los Angeles and Orange, and bound its members to be governed in their dealings with the public by price to be *726 fixed by the association, and also bound them to cease competition with each other under heavy penalties.

The trial court held that the contract sued upon in this action violated the provisions of section 1673 of the Civil Code, and was therefore void. Said section provides that "every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by the next two sections, is to that extent void." The exceptions provided by the next two sections have no application here.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

16 P.2d 673 Page 4
216 Cal. 721, 16 P.2d 673
**(Cite as: 216 Cal. 721, 16 P.2d 673)**

(2) Appellant contends that the association had the right to establish a minimum price, so long as that price is not unreasonable and is reasonably necessary to produce a fair profit upon the commodity sold or the services rendered, and in support of its contention cites *Herriman v. Menzies,* 115 Cal. 16 [56 Am. St. Rep. 81,35 L. R. A. 318,44 Pac. 660,46 Pac. 730], but as was said in *Meyers v. Merillion,* 118 Cal. 352-356 [50 Pac. 662, 663]: "In the Menzies case it was held that the contract was not illegal, for it was not shown that it was designed to, or did effect a control of business to an extent enabling the contracting firms to exclude competition or control the prices of the commodity."

In *Pacific Factor v. Alder,* 90 Cal. 110 [25 Am. St. Rep. 102, 27 Pac. 36, 38], the Supreme Court quoted with approval the following language used in the case of the *Salt Co. v. Guthrie,* 35 Ohio St. 672: "It is no answer to say that competition in the salt trade was not in fact destroyed, or that the price of the commodity was not unreasonably advanced. Courts will not stop to inquire as to the degree of the injury inflicted upon the public; it is enough to know that the inevitable tendency of such contracts is injurious to the public." The general principle governing matters of this kind is thus stated in 19 R. C. L. 47: "A combination of independent dealers to prevent competition between themselves is, in contemplation of law, an act inimical to trade or commerce, whatever may be done under and in pursuance of it, and although the object of the combination is merely the due protection of the parties to it against ruinous rivalry, and no attempt is made to charge undue or excessive prices, and it is illegal however reasonable the prices may be that are affixed by the parties thereto."

*727 In the case of *United States v. Trenton Potteries Co.,* 273 U. S. 392 [50 A. L. R. 989-995, 71 L. Ed. 700, 47 Sup. Ct. Rep. 377], Justice Stone, delivering the opinion of the court, said: "The aim and result of every price fixing agreement, if effective, is the elimination of one form of competition. The power to fix prices, whether reasonably exercised or not, involves power to control the market and to fix arbitrary and unreasonable prices. The reasonable price fixed today may, through economic and business changes, become the unreasonable price of tomorrow. Once established, it may be maintained unchanged because of the absence of competition secured by the agreement for a price reasonable when fixed. Agreements which created such potential power may well be held to be in themselves unreasonable or unlawful restraints, without the necessity of minute inquiry whether a particular price is reasonable or unreasonable as fixed."

(3) The next contention of appellant is that the contract of respondent sued upon in this action is separate and distinct from the contract of the association, and that any illegality of the latter will not render the former unenforceable. The evidence shows that appellant, together with the cleaners and dyers of the counties of Los Angeles and Orange, confederated together to form an association of cleaners and dyers, that would include all of those engaged in that business in those two counties; that in furtherance of that design they did form an association that had for its principal objects raising the price of their output and stifling competition; that the main purpose that appellant and respondents had in view, when respondents entered into the contract with appellant, was the accomplishment of said objects. This is evidenced by the fact that prior to entering into said contract, the said association had been formed; practically all of those engaged in the business of cleaners and dyers in the counties of Los Angeles and Orange had joined the association and had signed the by-laws, and had agreed to cease competition among themselves, and by the further fact that it was agreed that the individual contracts of the members should be withheld and not delivered to appellant until after the prices had been raised. In support of this contention appellant cites several opinions of the Supreme Court, in none of which the facts are similar to those of *728 the case under consideration. In *Pacific Wharf etc. Co. v. Standard American Dredging Co.,* 184 Cal. 21 [192 Pac. 847, 849], cited by appellant, the court, said: "Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties." And in *Poultry Produce Co. v. Barlow,* 189 Cal. 278 [208 Pac. 93], the court held that a promise to do two

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

things, one legal and the other illegal, if the two are so mingled and bound together that they cannot be separated, the whole promise is void. The contract with the association and those with the individual members called for the same service to be performed by appellant. Among other things those services included price raising and eliminating competition. While portions of said contracts may be said to be legal, they are so interwoven with the illegal parts that they cannot be separated.

(4) Appellant claims that section 1673 of the Civil Code does not apply to the industry of cleaning and dyeing, and cites *State v. McClellan,* 155 La. 37 [31 A. L. R. 527, 98 South. 748], and cases from other jurisdictions in support of this claim. These were under statutes that prohibited combinations in restraint of trade and commerce, and the courts held in those cases that the terms "trade" and "commerce " did not include laundrymen. The said section 1673 is much broader in its terms, for it not only specifies trades, but includes business of any kind. It could not logically be maintained that persons engaged in the industry of cleaners and dyers of wearing apparel were not engaged in some kind of business.

(5) Even if respondents did not set up in their answer the defense of illegality of the contract, but the case made by appellant showed its illegality, it became the duty of the court *sua sponte* to refuse to entertain the action. (*Dean v. McNerney,* 91 Cal. App. 206 [266 Pac. 975].)

(6) Parol evidence is always competent to show that a written contract, though lawful on its face, was illegal, or part of an illegal transaction, and the illegality, if serious, need not be pleaded or urged to enable the court to act upon it. (3 Williston on Contracts, 3060; *Morey v. Paladini,* 187 Cal. 727-739 [203 Pac. 760].)

Appellant calls attention to *Anaheim C. F. Assn. v. Yeoman,* 51 Cal. 759 [197 Pac. 959, 961], which was a cooperative*729 marketing association, formed for the purpose of enabling its members to jointly conduct the operation of harvesting and marketing citrus fruits grown upon land owned by such member. The by-laws which were signed by the stockholders provided that the association should have the sole and exclusive right to pick, grade, pack and market and sell the citrus fruit raised by the members. The court said: "There is nothing in the articles of incorporation of the plaintiff or its by-laws, or in the evidence of its methods, which tends to show that any purpose of the association was to do acts in restraint of trade, or produce an unlawful monopoly." In that case there was no evidence that a price had been fixed at which the fruit was to be marketed, nor any evidence that the purpose or effect of the association was to kill competition. The court held that the authority to form an association for the purposes indicated in that decision is expressly given by the Cartwright Act (Stats. 1909, p. 593).

"We are of the opinion that the evidence produced at the trial of this case clearly shows that contracts entered into by appellant with the association and with the individual members thereof, were in furtherance of the design to prevent competition in the business of cleaning and dyeing wearing apparel, etc., in the counties of Los Angeles and Orange, and are therefore void, as being in restraint of trade and tending towards creating a monopoly."

The judgment is affirmed.

Rehearing denied.

Cal. 1932.
Endicott v. Rosenthal
216 Cal. 721, 16 P.2d 673

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.