# EXHIBIT J

110 Cal.App.4th 375                                                                                                    Page 1

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

▷
Pacific State Bank v. Greene
Cal.App. 3 Dist.,2003.

Court of Appeal, Third District, California.
PACIFIC STATE BANK, Plaintiff and Respondent,
v.
Dawn GREENE et al., Defendants and Appellants.
**No. C039662.**

July 10, 2003.
As Modified on Denial of Rehearing Aug. 7, 2003.
Review Denied Oct. 15, 2003.[FN*]

FN* Chin and Brown, JJ., dissented.

**Background:** Lender brought action against guarantor, seeking to collect on guaranties for four loans, and guarantor asserted affirmative defenses that her consent to guaranties was obtained by mistake, innocent misrepresentation, and fraud regarding the number of loans to be guaranteed. The Superior Court, San Joaquin County, No. CV012688,Bob W. McNatt, J., granted summary judgment for lender. Guarantor appealed.

**Holding:** The Court of Appeal, Kolkey, J., held that: fraud exception under statutory parol evidence rule would not be further narrowed to exclude the introduction of evidence of factual misrepresentations over the content of a writing made at the time of its signing.

Reversed.
West Headnotes
**[1] Evidence 157 ☞385**

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(A) Contradicting, Varying, or Adding to Terms of Written Instrument
            157k385 k. Writings Excluding Extrinsic Evidence in General. Most Cited Cases
The parol evidence rule generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter, or add to the terms of an integrated written instrument, because such evidence cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. West's Ann.Cal.C.C.P. § 1856.

**[2] Constitutional Law 92 ☞2488**

92 Constitutional Law
    92XX Separation of Powers
        92XX(C) Judicial Powers and Functions
            92XX(C)2 Encroachment on Legislature
                92k2485 Inquiry Into Legislative Judgment
                    92k2488 k. Policy. Most Cited Cases
    (Formerly 92k70.3(3))
Qualifying the unqualified language of a statute with unexpressed exceptions premised on legislatively unmentioned policy judgments creates a trap for the unwary reader, undermines the predictive value of statutory language so necessary for jurisprudential stability, imposes transaction costs consisting of lawyer and judicial hours scouring the case law for counterintuitive interpretations, and risks judicial trespass upon the legislature's province by varying the enacted words of the statute.

**[3] Evidence 157 ☞404**

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(A) Contradicting, Varying, or Adding to Terms of Written Instrument
            157k404 k. Contracts of Guaranty and Suretyship. Most Cited Cases
Guaranty agreements were complete and exclusive

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03541-MMC   Document 29-11   Filed 12/10/2007   Page 3 of 18

Page 3 of 18

110 Cal.App.4th 375                                                                        Page 2

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

statements of terms of the agreements, and thus, their terms could not be supplemented by evidence of consistent additional terms; agreements contained merger clauses stating that they "fully incorporate the agreements and understandings of Guarantor with Lender," that "other extrinsic communications between Guarantor and Lender shall have no evidentiary effect whatsoever," that "the Guaranty fully reflects Guarantor's intentions," and that "parol evidence is not required to interpret the terms of this Guaranty." West's Ann.Cal.C.C.P. § 1856(b).

[4] Evidence 157 ⇐448

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(D) Construction or Application of Language of Written Instrument
            157k448 k. Grounds for Admission of Extrinsic Evidence. Most Cited Cases
Parol evidence is properly admitted to construe a written instrument when its language is ambiguous. West's Ann.Cal.C.C.P. § 1856(g).

[5] Evidence 157 ⇐448

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(D) Construction or Application of Language of Written Instrument
            157k448 k. Grounds for Admission of Extrinsic Evidence. Most Cited Cases
The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court to be unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is reasonably susceptible. West's Ann.Cal.C.C.P. § 1856(g).

[6] Evidence 157 ⇐448

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(D) Construction or Application of Language of Written Instrument
            157k448 k. Grounds for Admission of Extrinsic Evidence. Most Cited Cases
The decision whether to admit parol evidence involves a two-step process: first, the court provisionally receives, without actually admitting, all credible evidence concerning the contracting parties' intentions to determine ambiguity, i.e., whether the contractual language is reasonably susceptible to the interpretation urged by a party, and if in light of the extrinsic evidence the court decides the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step, which is interpreting the contract. West's Ann.Cal.C.C.P. § 1856(g).

[7] Evidence 157 ⇐450(11)

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(D) Construction or Application of Language of Written Instrument
            157k449 Nature of Ambiguity or Uncertainty in Instrument
                157k450 In General
                    157k450(11) k. Contracts of Guaranty. Most Cited Cases
Guaranty was not reasonably susceptible to interpretation that it related only to loan secured by trailer, and thus, parol evidence was not admissible to resolve alleged ambiguity; while upper-left-hand corner of pages 2 through 4 of the agreement referred to lender's loan number for trailer loan and guaranty's stated maximum amount of liability may have suggested that only trailer loan was covered, guaranty's definition of "indebtedness" broadly included "all of Borrower's liabilities, now existing or hereinafter incurred or created," provision that "no payments made upon the indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any of the indebtedness which subsequently arises" suggested guaranty anticipated covering more than trailer loan, and provision that any written revocation of guaranty applied "only to advances or new indebtedness created after actual receipt by Lender of Guarantor's written revocation" also suggested that more than trailer loan was intended to be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03541-MMC   Document 29-11   Filed 12/10/2007   Page 4 of 18    Page 4 of 18

110 Cal.App.4th 375                                                                                 Page 3

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

covered. West's Ann.Cal.C.C.P. § 1856(g).

**[8] Evidence 157 €==433(6)**

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(B) Invalidating Written Instrument
            157k433 Mistake
                157k433(6) k. Contracts in General. Most Cited Cases
Guarantor could introduce parol evidence, in lender's action to collect on guaranty, to show mistake, i.e., that guaranty was intended to cover only loan secured by trailer and was not intended to cover other loans to debtor. West's Ann.Cal.C.C.P. § 1856(e).

**[9] Contracts 95 €==93(1)**

95 Contracts
    95I Requisites and Validity
        95I(E) Validity of Assent
            95k93 Mistake
                95k93(1) k. In General. Most Cited Cases
A unilateral mistake can include a mistake about the nature of the agreement. West's Ann.Cal.Civ.Code § 3399.

**[10] Evidence 157 €==434(8)**

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(B) Invalidating Written Instrument
            157k434 Fraud
                157k434(8) k. In Contracts in General. Most Cited Cases
Guarantor could introduce parol evidence, in lender's action to collect on guaranty, to show the guaranty was procured through fraud, i.e., that lender's employee had represented, at time of guarantor's execution of guaranty, that guaranty would cover only one loan secured by trailer and therefore would not cover other loans to debtor, though such fraud allegation contradicted language in guaranty broadly defining "indebtedness"; the alleged misrepresentation involved a "fact" regarding content of guaranty rather than a "promise" directly at variance with the writing. West's Ann.Cal.C.C.P. § 1856(f, g).
*See 2 Witkin, Cal. Evidence (4th ed. 2000) Documentary Evidence, §§ 97-98; Cal. Civil Practice (Thomson/West 2003) Business Litigation, § 24:14; Cal. Transactions Forms, Business Transactions, § 6:35 (Thomson/West 2003); Cal. Jur. 3d, Evidence, § 358 et seq.*

**[11] Fraud 184 €==12**

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k8 Fraudulent Representations
            184k12 k. Existing Facts or Expectations or Promises. Most Cited Cases
"Promissory fraud" is a promise made without any intention of performing it.

**[12] Evidence 157 €==434(1)**

157 Evidence
    157XI Parol or Extrinsic Evidence Affecting Writings
        157XI(B) Invalidating Written Instrument
            157k434 Fraud
                157k434(1) k. In General. Most Cited Cases
Fraud exception under statutory parol evidence rule, which is unqualified and therefore does not limit the misrepresentations covered under the exception, would not be further narrowed by the Court of Appeal to exclude the introduction of evidence of factual misrepresentations over the content of a writing made at the time of its signing, though the rule had earlier been judicially narrowed by the Supreme Court to exclude the introduction of evidence of promissory fraud. West's Ann.Cal.C.C.P. § 1856(f, g).

**[13] Contracts 95 €==93(2)**

95 Contracts
    95I Requisites and Validity
        95I(E) Validity of Assent
            95k93 Mistake
                95k93(2) k. Signing in Ignorance of Contents in General. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

As a general principle, a party who signs a contract cannot complain of unfamiliarity with the language of the instrument.

**[14] Contracts 95** 🗝️**94(5)**

95 Contracts
    95I Requisites and Validity
        95I(E) Validity of Assent
            95k94 Fraud and Misrepresentation
                95k94(5) k. Reliance on Representation. Most Cited Cases
The allegedly defrauded party must show a reasonable reliance on the other party's misrepresentation, in order for that misrepresentation to excuse the allegedly defrauded party's failure to familiarize himself or herself with the contents of the contract. Restatement (Second) of Contracts §§ 164, 166.

**\*\*741 \*378** Kroloff, Belcher, Smart, Perry & Christopherson, Orlie L. Curtis, Christopher H. Engh, Stockton, and Allison Cherry Lafferty for Defendants and Appellants.
Parish & Small and Arthur A. Small II, Stockton, for Plaintiff and Respondent.
KOLKEY, J.
This case raises the question whether the parol evidence rule bars a party from offering evidence that her signature on an agreement was procured by a misrepresentation over the content of the physical document to be signed. The aggrieved party claims that she agreed to guarantee a single loan and that a bank employee misrepresented on the day of signing that the guaranty agreements at issue related only to that single loan. But although that single loan's number and amount were specified at the top of the guaranty agreements, the agreements' fine print defined **\*\*742** the "indebtedness" that was to be guaranteed to include "all of Borrower's liabilities," which covered four loans. The bank subsequently brought an action against the aggrieved party to recover on all of the borrower's loans up to the limits of the guarantees. And the trial court sustained the bank's objections to the aggrieved party's offer of the bank employee's misrepresentations pursuant to the parol evidence rule and granted the bank's motion for summary judgment.

[1] We shall reverse. The parol evidence rule " generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to **\*379** the terms of an integrated written instrument"(*Alling v. Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1433, 7 Cal.Rptr.2d 718)" 'because [such evidence] cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. ' [Citation.] [Fn. omitted.]" (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, 92 Cal.Rptr. 704, 480 P.2d 320.)

But at least since the parol evidence rule's codification in this state in 1872, the rule has specified statutory exceptions for mistake, illegality, or fraud. (Code Civ. Proc., § 1856, subds. (e), (f), (g).) Although the California Supreme Court narrowed the scope of the statutory fraud exception nearly 70 years ago so as to exclude "a promise directly at variance with the promise of the writing" (*Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258, 263, 48 P.2d 659(*Pendergrass* )), we conclude that this judicial limitation should not be further extended to preclude parol evidence of a misrepresentation of *fact* over the content of the physical document at the time of signing. Such an extension would conflict with the Legislature's express and unqualified statutory exception for fraud-a policy judgment that we have no power to overrule-and is unnecessary to safeguard the vitality of the parol evidence rule (which was *Pendergrass's* purpose in narrowing the scope of the fraud exception).

In *Pendergrass,* the California Supreme Court limited the scope of the statutory fraud exception in order to avoid the risk that the fraud exception, by permitting evidence of promises at variance with the writing, would swallow up the rule.

[2] But evidence of a mischaracterization of the agreement to be signed does not create the same risk: Factual misrepresentations over the content of a document at the time of signing are more narrow in time and circumstance than allegations of promissory fraud, which can arise at any time

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

during contract negotiations; factual misrepresentations, unlike prior promises, do not go to the heart of that which the parol evidence rule prohibits; and claims of misrepresentation over the content of a document are not easily abused and will rarely be successful because the defrauded party cannot normally complain of unfamiliarity with the language of the document and must show he or she *reasonably* relied on the misrepresentations. (See *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 419-423, 58 Cal.Rptr.2d 875, 926 P.2d 1061.) Most importantly, qualifying the unqualified language of a statute with unexpressed exceptions premised on legislatively unmentioned policy judgments creates a trap for the unwary reader, undermines the predictive value of statutory language so necessary for jurisprudential stability, imposes transaction costs consisting of lawyer and judicial hours scouring the case law for counterintuitive interpretations, and *380 risks judicial trespass upon the Legislature's province by varying the enacted words of the statute. Jurisprudential stability demands**743 predictability, based largely on a judicious respect for the doctrine of stare decisis and reliance on the plain language of our laws (which reliance also serves to restrain the judiciary from overstepping its constitutional role of interpreting, and not rewriting, statutes). Accordingly, we will not interpret the unqualified statutory exception for fraud to exclude factual misrepresentations over the content of a writing at the time of its signing.

### FACTUAL AND PROCEDURAL BACKGROUND

#### I. The Guaranty Agreements

Plaintiff Pacific State Bank (Pacific) made four loans to Dell Merk, Inc., doing business as Uprite Construction (Uprite). Three of the loans were each in the principal amount of $150,000. The fourth loan-loan No. 22004673, dated July 6, 1999, which was secured by a trailer owned by Uprite-was for $32,075.

Defendant Dawn Greene is president of defendant Dawn's Transport. Greene is married to Christopher Dell'Aringa, president of Uprite. Greene agreed with Dell'Aringa to purchase the trailer securing the $32,075 loan by assuming the loan, which had a balance of $27,000. Pacific agreed to the arrangement.

To effect the transfer, Greene signed two guaranty agreements in favor of Pacific, one personally and the other on behalf of Dawn's Transport. The form and terms of the two guaranties were identical, other than the capacity in which Greene signed them. The amount of each guaranty was $27,000-the balance owing on the trailer. And the maximum amount of liability under each guaranty was $27,000 (plus all costs and expenses of enforcement). Although the boxes headed "Loan Date" and "Loan No." on page 1 of the guaranties were left blank, the notations "07-06-1999" and " Loan No[.] 22004673"-the loan date and number of the trailer loan-appeared in the upper left-hand corner of pages 2 through 4 of the guaranties.

Each guaranty provided that the guarantor " absolutely and unconditionally guarantees and promises to pay PACIFIC STATE BANK ('Lender' ) ... the Indebtedness (as that term is defined below) of DELL MERK, INC. DBA UPRITE CONSTRUCTION ('Borrower')" on the terms and conditions set forth in the Guaranty.

But the "DEFINITIONS" section of each guaranty defined the term "Indebtedness" to extend beyond the trailer loan and to include *all* of Uprite's *381 loans: "The word 'Indebtedness' is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created; including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 7 of 18
Case 3:07-cv-03541-MMC   Document 29-11   Filed 12/10/2007   Page 7 of 18

110 Cal.App.4th 375                                                                                      Page 6
110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
(Cite as: 110 Cal.App.4th 375)

individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise."

Each guaranty also contained an "Integration" clause that provided in relevant **744 part: " Guarantor warrants, represents and agrees that this Guaranty, together with any exhibits or schedules incorporated herein, fully incorporates the agreements and understandings of Guarantor with Lender with respect to the subject matter hereof and all prior negotiations, drafts, and other extrinsic communications between Guarantor and Lender shall have no evidentiary effect whatsoever. Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; ... the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty...."

Similarly, each guaranty contained a provision that the guarantor "represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty...."

### II. The Defaults

After Greene signed the guaranties, Dawn's Transport was added to the certificate of title for the trailer. Greene claims that she made all the monthly payments on the trailer in a timely fashion. Uprite, however, defaulted on its loans to Pacific, leaving a principal balance due of over $428,000 on the first three loans and of approximately $23,000 on the trailer loan.

### III. Pacific's Lawsuit

Pacific brought an action against Uprite and amended the complaint to add causes of action for breach of the guaranty agreements against Greene and *382 Dawn's Transport, seeking the full amount of each guaranty for Uprite's indebtedness. In their answer, Greene and Dawn's Transport raised affirmative defenses that their consent to the guaranties was obtained by mistake, innocent misrepresentation, and fraud.

Pacific moved for summary judgment against defendants Greene and Dawn's Transport.[FN1]

> FN1. Uprite failed to respond to the amended complaint, and a default and default judgment were entered against it.

Defendants' opposition was supported by a declaration from Greene stating that "[she] was induced to enter into the guarant[ies] alleged in this action based upon misrepresentations made to [her] by Pacific State Bank."Claiming that the misrepresentations were made during her meeting with Pacific employees Laura Mafae and Connie De Wayne, Greene declared:

"7. Before I signed the documents I asked Ms. Mafae what I specifically was signing for and she stated 'Loan # 22004673,' which was the trailer loan, and she pointed at the loan number at the top of the written guaranty form and verified that at that time, the payoff on the trailer was $27,000. She told me that was all I was signing for.

"8. At this time I specifically asked about any other debts of [Uprite] and I was advised by Ms. Mafae that I was not signing for anything other than the trailer. I made it very clear to Ms. Mafae and Ms. De Wayne that I would not agree to be liable for anything other than the trailer, and Ms. Mafae reassured me that was all that I was signing for.

"9. At that time, I signed a guaranty for the trailer for Dawn's Transport and another guaranty personally. Ms. Mafae told me that my personal guaranty was required in case anything happened to Dawn's Transport such that it was unable to pay off the trailer. She again pointed **745 out the loan numbers at the top of the guaranty forms to me, and explained that the forms were not two separate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

loans, but rather that both of these guarant[ies], my own and that of Dawn's Transport, were for the same loan number, for the trailer loan."

Pacific filed written objections to these paragraphs in Greene's declaration based on, among other things, the parol evidence rule. The court sustained the parol evidence objection.

As a result, the trial court ruled that defendants' evidence was not sufficient to raise a triable issue of fact whether defendants unconditionally guaranteed *383 all the indebtedness of Uprite and entered judgment against Greene and Dawn's Transport in the principal amount of $27,000 *each*-the maximum amount of each guaranty-and well beyond what was owing on the trailer loan. Defendants filed a timely notice of appeal from the judgment.

## DISCUSSION

### I. Standard of Review

"[G]enerally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 107 Cal.Rptr.2d 841, 24 P.3d 493(*Aguilar* ), fn. omitted.) "Once the plaintiff ... has met that burden, the burden shifts to the defendant ... to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, former subd. (*o*) (1), now subd. (p)(1); *Aguilar, supra,* at p. 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." ( *Aguilar, supra,* at p. 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.)

After a grant of summary judgment, "[w]e review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476, 110 Cal.Rptr.2d 370, 28 P.3d 116.) We must view all such evidence and the inferences reasonably drawn therefrom "in the light most favorable to the opposing party." (*Aguilar, supra,* 25 Cal.4th at p. 843, 107 Cal.Rptr.2d 841, 24 P.3d 493.)

### II. The Admissibility of Evidence Under the Parol Evidence Rule

Defendants assert that the trial court erred in sustaining Pacific's objections to Greene's declaration pursuant to the parol evidence rule.

#### A. The Parol Evidence Rule

The parol evidence rule is codified in section 1856 of the Code of Civil Procedure.[FN2] Generally speaking, it prohibits the introduction of extrinsic *384 evidence, whether oral or written, to vary the terms of an integrated written agreement or to add terms to an integrated agreement that is also intended as a complete and exclusive statement of the parties' agreement. (§ 1856, subds.(a) & (b); *Alling v. Universal Manufacturing Corp., supra,* 5 Cal.App.4th at p. 1433, 7 Cal.Rptr.2d 718.)

> FN2. Unless designated otherwise, all further statutory references are to the Code of Civil Procedure.

Section 1856's principal provisions provide as follows:

**746 "(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

[3] "(b) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03541-MMC     Document 29-11     Filed 12/10/2007     Page 9 of 18      Page 9 of 18

110 Cal.App.4th 375                                                                                  Page 8

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

the writing is intended also as a complete and exclusive statement of the terms of the agreement." FN3

> FN3. The guaranty agreements here clearly qualified as a final, complete, and exclusive statement of the terms of the agreement. Thus, their terms could not be contradicted by parol evidence pursuant to section 1856, subdivision (a), or supplemented by evidence of "consistent additional terms" pursuant to section 1856, subdivision (b). The guaranty agreements provided that they "fully incorporate[ ] the agreements and understandings of Guarantor with Lender," that "other extrinsic communications between Guarantor and Lender shall have no evidentiary effect whatsoever," that "the Guaranty fully reflects Guarantor's intentions," and that "parol evidence is not required to interpret the terms of this Guaranty." These provisions constitute a merger clause that makes each agreement the final, complete, and exclusive statement of the terms of the parties' agreement. (2 Witkin, Cal. Evidence (4th ed. 2000) Documentary Evidence, § 70, pp. 189-190.)

There are a number of statutory exceptions to the parol evidence rule, however. These include the two raised in this case: mistake and fraud.

Section 1856, subdivision (e), provides: "Where a mistake or imperfection of the writing is put in issue by the pleadings, this section does not exclude evidence relevant to that issue."

Section 1856, subdivision (f), provides: "Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue."

And section 1856, subdivision (g), provides: "This section does not exclude other evidence of the circumstances under which the agreement was *385 made or to which it relates, as defined in Section 1860,FN4 or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud."

> FN4. Section 1860 provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Defendants assert the excluded portions of Greene's declaration should have been admitted to prove a meaning to which the contract was reasonably susceptible or to prove mistake or fraud under those exceptions to the parol evidence rule.

### B. Admissibility to Prove the Agreement's Meaning

Defendants first argue that the guaranty agreements were reasonably susceptible to an interpretation that the agreements solely concerned the trailer loan. They reason: "[T]he trailer loan number (22004673) is included at the top of pages 2 through 4 of each guarant[y] and ... the amount of each guarant[y] matches the amount then due on the trailer, $27,000. This evidence is further buttressed by the fact that the alleged consideration for these guarant[ies] was [the] transfer of title to the trailer to Dawn's Transport and that Dawn's Transport made all payments on the trailer thereafter."

But this interpretation, limiting the guaranty agreements to the trailer loan, is contradicted by the broad definition of "Indebtedness" in the agreements, which provided that "[i]ndebtedness" is to be "used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness**747 to Lender, now existing or hereinafter incurred or created...."

[4][5] "We begin by noting the oft-stated rule that parol evidence is properly admitted to construe a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

written instrument when its language is ambiguous. The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court to be unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is 'reasonably susceptible.' [Citation.]" (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165, 6 Cal.Rptr.2d 554, citing *Pacific Gas & E. Co. v. G.W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 37, 69 Cal.Rptr. 561, 442 P.2d 641; see 2 Witkin, Cal. Evidence, *supra,* Documentary Evidence, §§ 74, 77, pp. 192, 196.) This legal proposition, of course, comports with the authorization under section 1856, subdivision (g), that the parol evidence rule "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates ... to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement...."

[6] " *386 The decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is ' reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step-interpreting the contract." (*Winet v. Price, supra,* 4 Cal.App.4th at p. 1165, 6 Cal.Rptr.2d 554.)

But as noted, the language must be " 'reasonably susceptible' to the interpretation urged by a party" in order to admit it to interpret the contract. (*Winet v. Price, supra,* 4 Cal.App.4th at p. 1165, 6 Cal.Rptr.2d 554; accord, *Pacific Gas & E. Co. v. G.W. Thomas Drayage & Rigging Co., supra,* 69 Cal.2d at p. 37, 69 Cal.Rptr. 561, 442 P.2d 641; *Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1236, 108 Cal.Rptr.2d 213; *Walter E. Heller Western, Inc. v. Tecrim Corp.* (1987) 196 Cal.App.3d 149, 158, 241 Cal.Rptr. 677.)

[7] In this case, notwithstanding the reference to the trailer loan number on the upper left-hand corner of pages 2 through 4 of each agreement, the remainder of each agreement is not reasonably susceptible to an interpretation that the guaranty only relates to the trailer loan. First, the definition of the very indebtedness that was guaranteed is not limited to the trailer loan but broadly includes "*all* of Borrower's liabilities ..., now existing or *hereinafter incurred* or created." (Italics added.) Second, each agreement provides that "no payments made upon the indebtedness will discharge or diminish the continuing liability of Guarantor in connection with ... any of the indebtedness which *subsequently* arises ... [italics added]," also suggesting that each agreement anticipated covering more than the trailer loan. And third, any written revocation of the guaranty agreement applies "only to advances or new indebtedness created after actual receipt by Lender of Guarantor's written revocation," again suggesting that more than the trailer loan was intended to be covered.

On the other hand, the text of each guaranty is consistent with the construction that the guaranty covered all of the borrower's indebtedness, whether now existing or hereinafter incurred. The maximum liability of $27,000 for each guaranty may have misled Greene into believing that only the trailer loan was covered, but it is not inconsistent with the concept of a guaranty for all of the borrower's indebtedness with a limit to the guarantor's exposure. And the reference to the trailer **748 loan on the upper left-hand corner of pages 2 through 4 of each guaranty could be reconciled with the agreement's broad terms if it is deemed a mere notation for filing purposes.

In contrast, the broad terms of each guaranty, particularly the expansive definition of indebtedness, cannot be reconciled with an interpretation that *387 each agreement only guarantees a single, discrete loan. Where one interpretation can reasonably reconcile the language of each part of a contract and another interpretation cannot, it is safe to say that the contract is not reasonably susceptible to the second interpretation. (See Civ.Code., §§ 1641, 1644.)

Accordingly, we conclude that the parol evidence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

was not admissible to interpret the existing language of the guaranties.FN5

> FN5. Alternatively, defendants state in their brief that "[i]t even can be argued that it is unconscionable, in this instance, to require that [defendants] assume responsibility for over a half million dollars in debt in order to pay off and acquire a truck only worth about 5 [percent] of that debt." But defendants do not develop this argument or provide any authorities. This claim is therefore not properly made, and we need not consider it. (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19, 32 Cal.Rptr.2d 762, 878 P.2d 521.)

### *C. Mistake or Fraud Inducing the Agreement*

Although the evidence in Greene's declaration is not admissible to interpret the agreements, it is admissible under the statutory mistake and fraud exceptions to the parol evidence rule.

Parol "[e]vidence to prove that the instrument is void or voidable for mistake, fraud, duress, undue influence, illegality, alteration, lack of consideration or other invalidating cause is admissible. This evidence does not contradict the terms of an effective integration, because it shows that the purported instrument has no legal effect. [Citations.] [¶] Comment c of **Rest** [atement Second of] **Contracts**[, section] 214, ... explains: ' What appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration, or it may be voidable for fraud, duress, mistake, or the like, or it may be illegal. Such invalidating causes need not and commonly do not appear on the face of the writing. They are not affected even by a " merger" clause.' " (2 Witkin, Cal. Evidence, *supra,* Documentary Evidence, § 95, pp. 217-218; Code Civ. Proc., § 1856, subds. (e), (g); *Hershey v. Los Angeles Pacific Co.* (1915) 171 Cal. 353, 355, 153 P. 230; *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.* (1995) 32 Cal.App.4th 985, 995, 38 Cal.Rptr.2d 783.)

#### *1. Mistake.*

Under section 1856, subdivision (e), the parol evidence rule does not exclude evidence of "a mistake or imperfection of the writing."

As recently observed by the California Supreme Court, "[i]n determining whether a mutual mistake has occurred, a court may consider parol evidence. *388 [Citation.] Such evidence is admissible to show mutual mistake even if the contracting parties intended the writing to be a complete statement of their agreement. [Citation.] 'It is the rule that, where the writing itself, through mistake, does not express the intention of the parties who entered into it ... and the writing does not therefore contain the real contract between the parties, the objection as to parol evidence is without merit.' [Citation.] Extrinsic evidence is necessary because the court must divine the true intentions of the contracting parties and determine whether the written agreement accurately represents those intentions. [Citation.]" (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 525, 117 Cal.Rptr.2d 220, 41 P.3d 46.)

**749 [8] Greene's declaration raises a triable issue of fact concerning the defendants' mutual mistake defense. It states that Pacific's employee told Greene several times that the guaranties applied only to the trailer loan-a position with which Greene agreed. Indeed, Greene states that she only agreed to assume the balance owing on the trailer loan. Considering all the inferences reasonably drawn from the evidence and viewing the evidence in the light most favorable to the opposing party (*Aguilar, supra,* 25 Cal.4th at p. 843, 107 Cal.Rptr.2d 841, 24 P.3d 493), a triable issue of fact exists as to whether the written agreements did not express the intention of the parties who entered into them as a result of a mutual mistake, based on both parties' failure to focus on the fine print of the definition of " [i]ndebtedness."

Pacific argues that "the elements of mutual mistake have not been satisfied because [Pacific] does not join [defendants'] contention that there is any mistake, let alone a mutual mistake." But this argument misconceives the nature of summary judgment. On summary judgment, we cannot

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03541-MMC    Document 29-11    Filed 12/10/2007    Page 12 of 18                Page 12 of 18

110 Cal.App.4th 375                                                                                    Page 11

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

credit Pacific's evidence over Greene's evidence. We can only determine whether a triable issue of material fact exists, viewing the evidence in the light most favorable to the opposing party. (*Aguilar, supra,* 25 Cal.4th at p. 843, 107 Cal.Rptr.2d 841, 24 P.3d 493.) The statements that Greene attributes to Pacific's employee are inferential, if not direct, support for her proposition that both Pacific and Greene mistakenly believed that the written agreements guaranteed the trailer loan only. (Evid.Code, § 600, subd. (b).)

[9] Defendants' answer to the complaint additionally appears to claim unilateral mistake. A remediable mistake may be "a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected ...." (Civ.Code, § 3399.) [FN6] And a unilateral mistake can include a mistake *389 about the nature of the agreement, as here. (See *Reid v. Landon* (1958) 166 Cal.App.2d 476, 482-484, 333 P.2d 432 [agreement rescinded where defendant signed option-to-purchase agreement under the mistaken belief, known to plaintiffs, that she was instead signing right of first refusal]; *Nelson v. Meadville* (1937) 19 Cal.App.2d 68, 64 P.2d 1116.)

> FN6. Civil Code section 3399 provides: " When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

Accordingly, defendants' evidence of mistake was admissible under the statutory exception for mistake under the parol evidence rule. (§ 1856, subd. (e).)

### 2. Fraud.

"It is ... settled that parol evidence of fraudulent representations is admissible as an exception to the parol evidence rule to show that a contract was induced by fraud." (*Richard v. Baker* (1956) 141 Cal.App.2d 857, 863, 297 P.2d 674; accord, § 1856, subds. (f) & (g); *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 42, 61 Cal.Rptr.2d 518; 2 Witkin, Cal. Evidence, *supra,* Documentary Evidence, § 97, p. 218.)

[10] In this case, viewing the evidence in the light most favorable to the opposing party (*Aguilar, supra,* 25 Cal.4th at p. 843, 107 Cal.Rptr.2d 841, 24 P.3d 493), as we must, Greene's declaration raises a triable issue of fact as to fraud in the inducement or execution of the guaranty agreements. (See *Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 415, 58 Cal.Rptr.2d 875, 926 P.2d 1061.) [FN7] **750 Greene claims that Pacific's employee represented that the agreements only related to the trailer loan, pointed out the trailer loan number on the agreements, and noted that the $27,000 amount of the guaranty was the payoff for the trailer loan-notwithstanding the fact that the definition of "[i]ndebtedness" refuted the notion that the guaranties applied to only a single loan. A trier of fact could infer that the bank employee was familiar with the terms of the documents drafted by the bank and that the employee's representations as to the agreements' contents were therefore intended to deceive.

> FN7. The Supreme Court in *Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at page 415, 58 Cal.Rptr.2d 875, 926 P.2d 1061, distinguished between fraud in the execution of a contract and fraud in the inducement of a contract: "In brief, in the former case ' "the fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void.* ..." ' [Citation.] Fraud in the inducement, by contrast, occurs when ' " the promisor knows what he is signing but his consent is *induced* by fraud, mutual

assent is present and a contract is formed, which, by reason of the fraud, is *voidable....*" ' [Citation.]" The parties have not briefed this distinction, and we need not address what type of fraud is involved here in order to reach our decision.

Pacific, however, invokes a well-settled limitation on the fraud exception to the parol evidence rule: " [T]he California Supreme Court has declared the *390 fraud exception does not apply if the evidence is offered to show a promise contradicting the written agreement." (*West v. Henderson* (1991) 227 Cal.App.3d 1578, 1583, 278 Cal.Rptr. 570, citing *Pendergrass, supra,* 4 Cal.2d at p. 263, 48 P.2d 659; accord, *Alling v. Universal Manufacturing Corp., supra,* 5 Cal.App.4th at pp. 1436-1437, 7 Cal.Rptr.2d 718; *Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 1009-1011, 285 Cal.Rptr. 870; *Continental Airlines, Inc. v. McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 418-421, 264 Cal.Rptr. 779.)

In *Pendergrass,* our state high court said: "Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing." (*Pendergrass, supra,* 4 Cal.2d at p. 263, 48 P.2d 659.) The Supreme Court explained that the use of promissory fraud to invalidate an integrated agreement would nullify the parol evidence rule: " ' Such a principle would nullify the rule: for conceding that such an agreement [that is, an oral promise not to enforce a term in the contract] is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms, would always be guilty of fraud.... For reasons founded in wisdom and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement ....' "(*Ibid.*)

In short, the perceived necessity for this promissory fraud limitation lies in the recognition that without it, the fraud exception could swallow the rule. Any party who claimed a promise contrary to that contained in the contract could claim that the contrary contract constituted proof of promissory fraud-that is, that the earlier or contemporaneous promise was false and made without any intention of performing it, as evidenced by its absence in the subsequent agreement. Although this judicial rule has been criticized as inconsistent with the unqualified language in the statutory exception for fraud (*Coast Bank v. Holmes* (1971) 19 Cal.App.3d 581, 591, 97 Cal.Rptr. 30), we are bound by the California Supreme Court's ruling. **751(*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

[11] But we disagree that the *promissory* fraud limitation precludes admission of a misrepresentation of *fact* over the content of a physical document at the time of execution. " ' Promissory fraud' is a promise made without any intention of performing it." (*Alling v. Universal Manufacturing Corp., supra,* 5 Cal.App.4th at p. 1436, 7 Cal.Rptr.2d 718.) The Supreme Court's limitation on the fraud exception expressly bars "a promise directly at variance with the promise of *391 the writing"(*Pendergrass, supra,* 4 Cal.2d at p. 263, 48 P.2d 659), not a misrepresentation of fact. (*Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th at p. 42, 61 Cal.Rptr.2d 518; 2 Witkin, Cal. Evidence, *supra,* Documentary Evidence, § 98, p. 219.)

Significantly, *Pendergrass* and most of its progeny have involved promissory fraud, not misrepresentations of fact. (*Continental Airlines, Inc. v. McDonnell Douglas Corp., supra,* 216 Cal.App.3d at p. 419, 264 Cal.Rptr. 779; *Banco Do Brasil, S.A. v. Latian, Inc., supra,* 234 Cal.App.3d at pp. 996-997, 1003-1004, 1009-1011, 285 Cal.Rptr. 870; *West v. Henderson, supra,* 227 Cal.App.3d at p. 1581, 278 Cal.Rptr. 570.)

For example, in *Pendergrass, supra,* 4 Cal.2d 258, 48 P.2d 659, the California Supreme Court ruled that parol evidence was not admissible to prove a bank's promise that it would *defer* the defendant ranchers' obligation to pay their indebtedness if they executed a new note and mortgage-in direct contravention of the unconditional promise

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03541-MMC    Document 29-11    Filed 12/10/2007    Page 14 of 18    Page 14 of 18

110 Cal.App.4th 375                                                                    Page 13

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

contained in the note. This was a clear claim of promissory fraud, not a misrepresentation of a fact.

In *Continental Airlines, Inc. v. McDonnell Douglas Corp., supra,* 216 Cal.App.3d at page 419, 264 Cal.Rptr. 779,"the unequivocal promise in the brochures ... that the wing fuel tank and fuel lines ' will not rupture,' varied and contradicted the qualified language of the Detail Specification," which was part of the parties' contract and which instead provided that failure of the landing gear was "not likely" to rupture the wing fuel tanks or fuel lines. Thus, that case also involved a promise at variance with the ultimate contract.

In *Banco Do Brasil, S.A. v. Latian, Inc., supra,* 234 Cal.App.3d at pages 996-997, 1003-1004, and 1009-1011, 285 Cal.Rptr. 870, the Court of Appeal concluded that a claimed oral promise of a $2 million line of credit that was to have been a condition to any obligations under a written guaranty was inconsistent with the integrated guaranty agreement, which provided that its obligations were absolute and unconditional. Again, the fraud was promissory. The court explained that the fraud exception to the parol evidence rule had no application where " 'parol evidence is offered to show a fraudulent promise directly at variance with the terms of the written agreement.' "(*Id.* at p. 1009, 285 Cal.Rptr. 870.)

And in *West v. Henderson, supra,* 227 Cal.App.3d at page 1581, 278 Cal.Rptr. 570, we ruled that " [t]he parol evidence rule prevents [the lessee's] rescission of [her] lease because [the leasing agent's] alleged fraudulent misrepresentations are contradicted in the *subsequent* written lease." (Italics added.) While we initially characterized the misrepresentations as ones of fact, the misrepresentations were in fact misrepresentations of "prior agreement[s]" of the lease terms, as we later acknowledged: "The lease names Johnston *as a tenant* and sets the *392 term at *15 years.* These provisions contradict the prior agreements for a *five-year lease* with Johnston as a *guarantor.* The lease also prohibited any sign not approved in writing by the landlord. [The lessee's] claim the prior agreement was for [the leasing agent] to put a sign near the street at the landlord's expense contradicts the lease provision stating [the lessee] would pay for **752 all signs." (*Id.* at p. 1584, 278 Cal.Rptr. 570, italics added.) Thus, the misrepresentations were promissory, not ones of fact mischaracterizing the content of the physical document at the time of execution.

[12] We believe that a distinction between promissory fraud and misrepresentations of fact over the content of an agreement at the time of execution is a valid one and that the latter circumstance should fall within the statutory exception for fraud for the following reasons: The language of the statutory exception is unqualified and does not limit the misrepresentations covered; it is not necessary to extend *Pendergrass* to cover factual misrepresentations over the content of the writing in order to safeguard the vitality of the parol evidence rule; and a further extension of *Pendergrass* would unduly restrict the statutory exception for fraud.

First, a further judicial narrowing of the fraud exception to the parol evidence rule, so as to exclude evidence of factual misrepresentations over the contents of the writing, would fly in the face of the broad language of two statutory exceptions to the parol evidence rule. Section 1856, subdivision (f), provides: "Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue." And subdivision (g) of the same statute provides in relevant part: " This section does not exclude other evidence ... to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud."

Indeed, the Restatement Second of Contracts recognizes that parol evidence is admissible to justify reformation of a contract by showing that "a party's manifestation of assent is induced by the other party's fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement ... [¶] (a) if the recipient was justified in relying on the misrepresentation...." (Rest.2d Contracts, § 166, *id.,* com. c, p. 452.) The right to use such parol evidence-which is consistent with the language of the statutory exception in subdivision (g) of section

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1856 and is recognized by the Restatement-would be curtailed, without any legislative imprimatur, if the *Pendergrass* limitation was extended to include misrepresentations over the content of an agreement.

[13][14] Second, while *Pendergrass* may have been justified in judicially restricting the breadth of the statutory exception for fraud in order to protect the vitality of the parol evidence rule, the right to introduce misrepresentations of facts ***393** over the content of the physical document to be signed does not threaten to swallow up the rule. In the case of promissory fraud, an earlier or contemporaneous promise is proffered in variance with the promises in the agreement; evidence of such a contrary promise goes to the heart of that which the parol evidence rule is intended to protect against. But a claim of a mischaracterization of the content of the physical document to be signed is more narrow in time and circumstance: It can only occur at the time of signing, whereas a claim of promissory fraud can arise from a purported promise made at any time at or before the agreement is signed. And the need to prove the element of reasonable reliance in order to successfully make out a misrepresentation claim also protects against abuse: In light of the general principle that a party who signs a contract "cannot complain of unfamiliarity with the language of the instrument"(*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710, 131 Cal.Rptr. 882, 552 P.2d 1178), the defrauded party must show a reasonable reliance on the misrepresentation that excuses the failure to familiarize himself or herself with the contents of the document. (Rest.2d Contracts, §§ 164, 166; *California Trust Co. v. Cohn* (1932) 214 Cal. 619, 7 P.2d 297.) For ****753** instance, a "party's *unreasonable* reliance on the other's misrepresentations, resulting in a failure to read a written agreement before signing it, is an insufficient basis, under the doctrine of fraud in the execution ..." for permitting that party to void the agreement. (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 423, 58 Cal.Rptr.2d 875, 926 P.2d 1061.) Thus, the particular circumstances of the contract's execution, including the prominent and discernible provisions of the contents of the writing in issue, must make it reasonable for the party claiming fraud to have nonetheless relied on the mischaracterization. This is not an easily met burden of proof, which also prevents this type of evidence from swallowing up the parol evidence rule.

But in this case, the guaranty agreements contained a number of provisions (e.g., the guarantee amount and loan number) consistent with defendants' purported understanding that they only agreed to guarantee the trailer loan. It was the fine print of a definition that undermined this seeming conformity with defendants' understanding. Further, in an ordinary business transaction to purchase encumbered property, the purchaser of the property would not anticipate assuming any debt obligation unrelated to the property. Thus, considered in the light most favorable to defendants, they met their burden of showing a triable issue of reasonable reliance on the misrepresentations.[FN8]

> FN8. In a petition for rehearing, Pacific disputes that a triable issue of fact exists on the issue of reasonable reliance because the guaranty agreements contained an acknowledgment that the signatories had read them and "the purported[ly] inaccurate representation is revealed simply by reading the document before signing it." But the acknowledgment in the agreements, in and of itself, cannot extinguish an existing triable issue of material fact: "A party to a contract who has been guilty of fraud in its inducement cannot absolve himself from the effects of his fraud by any stipulation in the contract" because the fraud renders the whole contract voidable, including the waiver provision. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 410, pp. 368-369; *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.* (1995) 32 Cal.App.4th 985, 996, 38 Cal.Rptr.2d 783 *Danzig v. Jack Grynberg & Associates* (1984) 161 Cal.App.3d 1128, 1138, 208 Cal.Rptr. 336.) Moreover, even assuming that Greene had actually read the guaranty agreements, there would be a triable issue of material fact whether she nonetheless reasonably relied on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

Pacific's representations concerning the agreements' more limited scope in light of the language in the agreements which was consistent with those representations and in the context of a transaction in which the guarantor would not ordinarily expect to guarantee more than the loan encumbering the acquired property.

**\*394** To be sure, there can occasionally be a fine line between a *promise* that induces an agreement and a misrepresented *fact* concerning the physical content of an agreement at the time of signing. For instance, had defendants' evidence in this case been limited to the existence of a prior oral promise that they would only be required to guarantee the trailer loan-a promise that induced defendants' consent to the guaranties-this would have been a case of promissory fraud. But instead, this is a case where at the time of the contract's execution, its physical content was mischaracterized-a factual misrepresentation, not a false promise.

Pacific relies heavily on *Bank of America v. Lamb Finance Co.* (1960) 179 Cal.App.2d 498, 3 Cal.Rptr. 877(*Lamb Finance* ), which refused to admit evidence of a fraudulent misrepresentation. That case correctly articulated the *Pendergrass* limitation, but then misapplied it to the facts of that case. There, the Court of Appeal agreed that the trial court properly struck **\*\*754** the testimony of the plaintiff-the sole shareholder of Lamb Finance Company-that she had been induced by fraud on the part of a bank to sign a guaranty. She claimed that at the time of signing, the bank advised her that she would have no personal liability, in contravention of the terms of the written guaranty. The Court of Appeal characterized this as an "oral false promise that no personal liability would attach to [the guarantor] as a result of the transaction"(*Lamb Finance, supra,* at p. 503, 3 Cal.Rptr. 877) and cited the *Pendergrass* rule that "[a] distinction has been made by our courts in cases in which the fraud sought to be proved consists of a false promise. They have held that ... if the false promise relates to the matter covered by the main agreement and contradicts or varies the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible." (*Lamb Finance,* at p. 502, 3 Cal.Rptr. 877.) It therefore concluded that plaintiff's "testimony relating to the alleged false promise which contradicted the plain language of the guarant[y], was properly stricken as incompetent under the parol evidence rule." (*Id.* at p. 503, 3 Cal.Rptr. 877.)

While the court in *Lamb Finance* properly recited the *Pendergrass* rule, it mischaracterized, as a promise, a factual mischaracterization of the terms of the written guaranty.

**\*395** Significantly, the two cases upon which *Lamb Finance* relied for its decision are cases of promissory fraud, and not of factual misrepresentation. The *Lamb Finance* court stated that "[t]he application of the [promissory fraud] rule is clear, particularly in promissory note cases, and controlling here is *Shyvers v. Mitchell* [ (1955) ] 133 Cal.App.2d 569, 284 P.2d 826, in which a like contention was made that a guarantee on a note was void because its execution was induced by the fraudulent representation of one Partridge [the president] of the bank that the signer would never be liable thereunder." (*Lamb Finance, supra,* 179 Cal.App.2d at p. 503, 3 Cal.Rptr. 877.)

But unlike *Lamb Finance,* in *Shyvers* the fraudulent representation did not misrepresent the terms contained in the document signed, but concerned the bank's promise not to enforce those terms (like *Pendergrass, supra,* 4 Cal.2d 258, 48 P.2d 659). Specifically, the signer testified that Mr. Partridge of the bank told him that the bank " 'wouldn't come back on' him" if the loan covered by the guaranty was not repaid. (*Shyvers v. Mitchell, supra,* 133 Cal.App.2d at p. 570, 284 P.2d 826.) This was not a mischaracterization of its terms, but a promise not to enforce the guaranty. The Court of Appeal there properly ruled that "evidence of the promises of Partridge ... would in our opinion violate the parol evidence rule." (*Id.* at p. 573, 284 P.2d 826.) The Court of Appeal nonetheless allowed testimony that Mr. Partridge also made misrepresentations of fact that the bank had other adequate security for the loan (which, of course, implied that the bank would not need to enforce the guaranty), which the court held "were sufficient alone to justify the defense of fraud ... against the obligation contained in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

guaranty ...."(*Id.* at p. 575, 284 P.2d 826.)

*Lamb Finance, supra,* 179 Cal.App.2d at page 502, 3 Cal.Rptr. 877, also relied on *Newmark v. H and H Products Mfg. Co.* (1954) 128 Cal.App.2d 35, 274 P.2d 702, but that case, too, involved *promises* that were inconsistent with the terms of the agreement. There, the buyers claimed that the seller had misrepresented the quality, condition, and quantity of promised personal property, but that "[t]hese representations were exactly contrary to and inconsistent **755 with the express terms of the written contract the parties had entered into"(*id.* at p. 38, 274 P.2d 702), which sold the property in an " 'as-is condition' " (*id.* at p. 37, 274 P.2d 702) and without warranty as to quality and quantity (*ibid.*).

Thus, *Lamb Finance* found, as relevant and controlling, cases that were not analogous, but which dealt with true cases of promissory fraud. We conclude that *Lamb Finance's* analysis-which fails to address the distinction between promissory and factual fraud and relies on promissory fraud cases-goes beyond the *Pendergrass* limitation and cannot be reconciled with the broad language in the statute that makes an unqualified exception for fraud.

Indeed, the California Supreme Court has admitted parol evidence of a misrepresentation of the nature of an agreement pursuant to the fraud exception to *396 the parol evidence rule. In *Maxson v. Llewelyn* (1898) 122 Cal. 195, 54 P. 732(*Maxson* ), plaintiff's agent offered defendant a particularly favorable insurance policy. Defendant signed the written application for the policy, but the policy, while consistent with the application, was "in essential particulars ... a different policy, and one less favorable to the insured than that ... represented." (*Id.* at p. 197, 54 P. 732.) Accordingly, the defendant returned the policy and refused to pay the premium. Plaintiff sued. On appeal, the plaintiff objected to evidence of the parol representations of his agent. (*Id.* at pp. 198-199, 54 P. 732.) The court ruled: "[T]he application itself, prepared by the special agent, was of such a nature as not to be readily understandable, if understandable at all, by one not versed in insurance matters. It seems not to have been understood by the defendant, for he asked specifically whether the application which he sent would bring the desired policy. It thus appears that defendant's signature to the application was procured by misrepresentation and fraud sufficient to vitiate the transaction. [Former] Section 856 of the Code of Civil Procedure, which declares that no evidence may be received of the terms of an agreement which has been reduced to writing, other than the contents of the writing, expressly admits evidence to establish illegality or fraud." (*Id.* at p. 199, 54 P. 732.) The high court concluded that " ' [t]his principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it.' " (*Ibid.*)

*Maxson* thus favors admission of a misrepresentation over the nature of the writing to be signed, notwithstanding the parol evidence rule. It, not *Lamb Finance,* must control.

Accordingly, we conclude that just as the fraud exception must be construed so as not to swallow up the parol evidence rule, this judicial limitation on the fraud exception, pronounced in *Pendergrass, supra,* 4 Cal.2d 258, 48 P.2d 659, and meant to fortify the rule, must not be expanded so as to undermine the vitality of statutory fraud exception itself. The fraud exception, codified by the Legislature, is itself a policy judgment that we may not overrule or unduly narrow but must instead construe to effect its object and to reconcile with the rule to which it is an exception. (See Civ.Code, § 4.) We conclude that the *Pendergrass* limitation on the fraud exception to the parol evidence rule should not **756 be extended to preclude parol evidence of a mischaracterization-that is, a misrepresentation of *fact*-over the content of an agreement at the time of the signing. Evidence of such fraud to invalidate an agreement is expressly authorized by Code of Civil Procedure section 1856, subdivisions (f) and (g).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 18 of 18

Case 3:07-cv-03541-MMC   Document 29-11   Filed 12/10/2007   Page 18 of 18

110 Cal.App.4th 375                                                                 Page 17

110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671
**(Cite as: 110 Cal.App.4th 375)**

*397 *D. Conclusion*

We therefore conclude that the trial court erred in excluding evidence of factual misstatements over the content of the guaranty agreements. Such evidence was admissible to show mistake or fraud under section 1856, subdivisions (e), (f), and (g). Once this improperly excluded evidence is considered, it is clear that a triable issue of mistake and fraud was raised, which would have afforded defendants a defense to enforcement of the guaranty agreements.

## DISPOSITION

The judgment is reversed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 27(a)(1).)

We concur: SCOTLAND, P.J., and MORRISON, J.
Cal.App. 3 Dist.,2003.
Pacific State Bank v. Greene
110 Cal.App.4th 375, 1 Cal.Rptr.3d 739, 03 Cal. Daily Op. Serv. 6057, 2003 Daily Journal D.A.R. 7671

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.