EXHIBIT N

Westlaw.

Not Reported in Cal.Rptr.3d                                    Page 1

Not Reported in Cal.Rptr.3d, 2005 WL 2742815 (Cal.App. 2 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

Zevada Enterprises, Inc. v. Sasson
Cal.App. 2 Dist.,2005.
Only the Westlaw citation is currently available.
California Rules of Court, rule 977(a), prohibits
courts and parties from citing or relying on opinions
not certified for publication or ordered published,
except as specified by rule 977(b). This opinion
has not been certified for publication or ordered
published for purposes of rule 977.
Court of Appeal, Second District,
Division 8.
ZEVADA ENTERPRISES, INC., Plaintiff and
Appellant,
v.
Eli SASSON et al., Defendant and Respondent.
**No. B173009.**
**(Los Angeles County Super. Ct. No. BC287499).**

Oct. 25, 2005.

APPEAL from a judgment of the Superior Court of
Los Angeles County. Jane Johnson, Judge.
Reversed and remanded.

Pine & Pine, Norman Pine, Beverly Tillett Pine;
Mazursky, Schwartz, Daniesl & Bradley, Arnold W.
Schwartz, Marcus Bradley; Kroll Law Corporation
and Gerald Kroll for Plaintiff and Appellant.
Alschuler Grossman Stein & Kahan, Daniel
Albertsone and David B. Dreyfus for Defendants
and Respondents.
COOPER, P.J.
**\*1** This appeal from the dismissal of a complaint
following demurrer requires reversal. The trial court
incorrectly applied the parol evidence rule to bar
evidence of a mistake in contract formation. Once
this error is corrected, it may be possible for
plaintiff and appellant to amend the operative
complaint to state a cause of action. The award of
attorney's fees to defendants and respondents also
must be reversed because they are no longer the
prevailing party.

FACTUAL AND PROCEDURAL BACKGROUND

The following summary is from allegations in the
second amended complaint, the operative pleading
and exhibits attached thereto. " 'We treat the
demurrer as admitting all material facts properly
pleaded, but not contentions, deductions or
conclusions of fact or law. [Citation.]....' " (*Blank
v. Kirwan* (1985) 39 Cal.3d 311, 318.)

*The Parties' Contract*

Jose Luis Gonzales and Eli Sasson entered into a
five year lease for property located on Woodman
Avenue (Lease). Gonzales entered the lease on
behalf of Zevada Enterprises (Zevada), a retail
grocery business. Sasson is an individual and also is
the alter ego of the other defendants and
respondents Woodman Investment Group, LP, and
Woodman Investment Group, LLC (collectively
Sasson). The Lease was the result of the
consolidation of several prior agreements. The
Lease consisted of a preprinted form with
nonstandardized addendums.

By "mutual agreement of Jose Luis Gonzales and
Sasson or his agent, both the percentage rental
clause in paragraph 4.3 as well as the landlord's
right of inspection in paragraph 4.4. were stricken
from the lease."The parties had agreed that "[t]he
total rent due under the consolidated lease would
never exceed the base rent ... plus a maximum
annual 'periodic cost-of-living adjustment' equal to
four percent (4%) over the preceding base rent."

Paragraph 4.3. provides in pertinent part: "Tenant
also shall pay a sum equal to the amount, if any, by
which five percent of its gross sales made directly
or indirectly on the Premises during each calendar
year exceeds the minimum rental which Tenant
shall have paid pursuant to Para. 4.1."Paragraph 4.4
provides in pertinent part: "Landlord shall be
entitled during the term and within two years after

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d, 2005 WL 2742815 (Cal.App. 2 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

expiration or termination of this Lease, to inspect and examine all Tenant's books of account, records, cash receipts and other pertinent data, so Landlord can ascertain Tenant's gross sales ."

"By oversight between the parties and contrary to their intention" the Lease "did not have the percentage rental clause (paragraph 4.3) and the landlord's right of inspection (paragraph 4.4.) stricken or excised...." Zevada hired Noveck to perform legal services in connection with the consolidation of the leases. Sasson also hired Noveck to review another commercial lease, and Zevada was not informed of the conflict.

When the parties consolidated the leases, "one of the express objectives of Zevada was to strike, excise or otherwise omit the percentage rental clause (paragraph 4.3) and the landlord's right of inspection (paragraph 4.4.), from the terms of the consolidated lease. However, attorney Noveck failed to take steps to ensure that such preprinted provisions were stricken, excised or otherwise omitted from the final lease as written.... Based on attorney Noveck's assurances, Zevada initialed and executed the final lease without reviewing its contents."

**\*2** When Sasson discovered the inclusion of provisions 4.3 and 4.4, it demanded $626,777 "the purported amount unpaid and due for the 15 months between June 1, 2000 and August 31, 2001, under the percentage rental clause in paragraph 4.3." Zevada paid over one million dollars "in order to abide by the terms of the lease as mistakenly written and without waiving any rights to contest the validity of the percentage rental clause...."

The Lease contains a provision entitled " incorporation of prior agreements; amendments" which provides in part: "This Lease contains all agreements of the parties with respect to any matter mentioned herein. No prior agreement or understanding pertaining to any such matter shall be effective."

*Zevada's Complaint*

The first cause of action is for reformation based on both Zevada's unilateral mistake and the parties' mutual mistake. That cause of action alleged "[t]he failure of the written agreement to express the true intention of the parties was the result of a mutual mistake of fact by both Zevada and Sasson, in that both parties mistakenly believed that the total rent due under the consolidated lease would never exceed the base rent ... plus a maximum annual ' periodic cost-of-living adjustment'...."

The second cause of action is for breach of contract based on the demand for $626,777, which does not comply with the terms of the contract if paragraphs 4.3 and 4.4 had been stricken. The third cause of action is for money had and received and is based on the sum paid in order to abide by the terms of the mistakenly written lease.

*Sasson's Demurrer*

Sasson demurrered to the operative complaint, arguing primarily that the causes of action for reformation and breach of contract necessarily fail because the lease is an integrated contract and the parol evidence rule bars extrinsic evidence. Sasson argued the cause of action for money had and received was based on the faulty cause of action for breach of contract.

Sasson requested judicial notice of a complaint for legal malpractice Zevada filed against Noveck. That complaint alleged that Noveck "permitted inclusion in the lease of provisions which, heretofore, had never been inserted in any previous lease negotiated by defendant or plaintiff. Said provision promised that plaintiffs would pay to the lessor a percentage of the gross receipts of their business as part of the leasehold payment. Defendants, and each of them, failed to advise and/or disclose to plaintiffs that said provision had been included in the lease prior to defendant's recommendation to plaintiff that the lease was acceptable and ready for signature."Had Noveck "disclosed the true facts concerning the insertion of the percentage of gross language in the lease, plaintiffs would not have agreed to that provision...."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d                                                      Page 3

Not Reported in Cal.Rptr.3d, 2005 WL 2742815 (Cal.App. 2 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

### Trial Court Rulings

The trial court was persuaded. It sustained Sasson's demurrer without leave to amend. It found the parol evidence rule barred the first and second causes of action. "Plaintiff did not allege that Defendants had knowledge of the purported mistake, Plaintiff admitted it did not read the subject agreement, and the mistake could have been discovered prior to execution through the exercise of reasonable diligence."The court found the third cause of action was based on the same facts as the second cause of action and is also demurrable. Zevada appealed from the judgment of dismissal.

**\*3** The trial court found Sasson to be the prevailing party and awarded it attorneys' fees in the amount $92,965. Zevada also appealed from the award of attorney fees.

### DISCUSSION

" 'When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.].' " (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

Sasson argues the parol evidence rule bars each cause of action, and that Zevada's lack of diligence and Noveck's knowledge prohibit reformation. We discuss each argument separately and then consider the possibility for amendment in the last section.

### I. Parol Evidence Rule

Basic principles of contract formation help explain the scope of the parol evidence rule. A contract is formed where the parties mutually assent to the agreed upon terms. (*Alexander v.Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 140.) If the contract as written does not conform the terms

of the parties' mutual agreement, there is a mutual mistake. Mutual mistake constitutes a defense to contract formation and, if material, the mistake may render a contract voidable or subject to reformation. (Rest.2d Contracts, § 152, p. 385; Civ.Code § 1640 ["When through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded."].) If only one party is mistaken, the mistake is unilateral. Reformation may also be appropriate where a mistake is unilateral, but only if additional requirements are satisfied. (*Id.* at § 153 p. 394; *In re First Capital Life Ins. Co.* (1995) 34 Cal.App.4th 1283, 1288.) A mistake as that term is used in the context of a contract may relate to the contents of the expression of the parties' agreement. (*Id.* at § 151, com. p. 383; *Bonshire v. Thompson* (1997) 52 Cal.App.4th 803, 811.)

The parol evidence rule generally prohibits extrinsic evidence to vary the terms of an integrated agreement. (*Pacific State Bank v. Greene* (2003) 110 Cal.App.4th 375, 383-384.) The parol evidence rule presupposes that a valid contract was formed. ( *Halldin v. Usher* (1958) 49 Cal.2d 749, 752.) Mistake, if proven, may be a defense to the formation of a valid and binding contract. ( *Architects & Contractors Estimating Services Inc. v. Smith* (1985) 164 Cal.App.3d 1001, 1007-1008.) Parol evidence admitted for the purpose of demonstrating a mistake does not vary the terms of a contract but demonstrates that the purported contract may be void or require reformation. ( *Pacific State Bank v. Greene, supra,* 110 Cal.App.4th at p. 387.)

**\*4** Statutory law expressly exempts mistake from the parol evidence rule."Where a mistake or imperfection of the writing is put in issue by the pleadings, this section [barring parol evidence] does not exclude evidence relevant to that issue."(Code of Civ. Proc. § 1856, subd (e).) Consistent with this statute, our high court held "In determining whether a mutual mistake has occurred, a court may consider parol evidence ... even if the contracting parties intended the writing to be a complete statement of their agreement."(*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 525 [*Hess* ].) This has

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d, 2005 WL 2742815 (Cal.App. 2 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

been the rule for over a century. (*Murray v. Dake* (1872) 46 Cal.644, 647 ["[t]here is no doubt as to the general rule that parol testimony is inadmissible to contradict, add to, or vary a written contract. The rule does not, however, exclude proof by parol testimony of fraud or mistake in the execution of the contract when a reformation of the instrument is sought"].) The Restatement of Contracts Second recognizes the same principle. "The parol evidence rule does not preclude the use of prior or contemporaneous agreements or negotiations to establish that the parties were mistaken."(Rest.2d Contracts, § 152, com. a p. 386.) "Extrinsic evidence is necessary because the court must divine the true intentions of the contracting parties and determine whether the written agreement accurately represents those intentions."(*Hess, supra,* 27 Cal.4th at p. 525.)

In conflict with these authorities, the trial court found that the parol evidence rule barred any evidence of mistake. The court relied on *American Nat. Ins. Co. v. Continental Parking Corp.* (1974) 42 Cal.App.3d 260 [*American National* ], a case central to respondents' argument. The alleged mistake in *American National* concerned expectations of future business, and the court held that, as a matter of law, this expectation did not fall within the meaning of a mistake. "If mistaken assumptions of prosperity can avoid contracts, few business agreements would survive an unexpected depression."(*Id.* at p. 267.)To qualify as a mistake that supports reformation, the mistake must "relate to the facts as they exist at the time of the making of the contract."(Rest.2d Contracts, § 151, com. a, p. 383.) Thus, in *American National* no recognizable mistake was alleged, and the parol evidence rule bared evidence of a prior agreement. It did not hold as respondents argue, that parol evidence is never admissible to show a mistake. And even if it could be interpreted in that manner, our Supreme Court has concluded otherwise.[FN1]

> FN1. Many of the legal issues in *Hess* were different as respondents argue, but the principle of law that parol evidence is admissible to demonstrate a mistake is applicable here.

Sasson's statement "[t]his is not a contract interpretation case" is significant. The parol evidence rule distinguishes between the use of parol evidence for the purposes of interpreting agreement with the use of parol evidence for the purpose of challenging the validity of the agreement. Code of Civil Procedure section 1856, subdivision (a) provides: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. "However, in contrast subdivision (e) of the same statute provides: "Where a mistake or imperfection of the writing is put at issue by the pleadings, this section does not exclude evidence relevant to that issue."Because this is not a contract interpretation case but a case about a mistake in the writing of a contract, parol evidence is not barred with respect to the cause of action for reformation.[FN2]" [R]epresentation by counsel does not preclude a finding of mutual mistake."(*Hess, supra,* 27 Cal.4th at p. 529.)

> FN2. The Restatement is consistent. " Evidence of the circumstances in which the contract was made may be relevant to ... [fraud or mistake] even though it also shows an agreement or proposal superseded by a later integrated contract."( Rest.2d Contracts, § 214, com. d, p. 134.) The example given in the Restatement is as follows: "A and B make an integrated agreement by which A promises to sell and B promises to buy a tract of land described in the agreement. Owing to a mutual mistake the description is not an accurate one of the tract in regard to which both A and B were bargaining. Prior oral agreements may be shown to establish the right to reformation of the integration so that it shall accurately describe the tract intended."(Rest.2d Contracts, § 214, illus. 7, p. 135.)

*II. Alleged Lack of Diligence*

**\*5** Respondents argue that the alleged mistake is the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in Cal.Rptr.3d, 2005 WL 2742815 (Cal.App. 2 Dist.)
**(Cite as: Not Reported in Cal.Rptr.3d)**

result of Zevada's own lack of diligence because he failed to read the contract prior to signing it. According to respondents, the contract therefore cannot be reformed.

While diligence is a relevant criteria, it is not dispositive at this early stage in the proceedings. The failure to read a contract might undermine an argument that a contract must be reformed because of a mistake. (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667 [holding that plaintiff could not avoid arbitration provision on grounds that she failed to read the contract]; Rest.2d Contracts, § 157, com. b, p. 417.) However, "a party who adheres to the other party's standard terms does not assent to a term if the other party has reason to believe that the adhering party would not have accepted the agreement if he had known that the agreement contained the particular term."( Rest.2d Contracts § 211, com. f, p. 122.)

The allegations in the operative complaint do not expressly state that Sasson had reason to believe Zevada would not have accepted the agreement if he had known the agreement contained the particular term. However, the trial court should have allowed Zevada an opportunity to amend its complaint to include in its cause of action based on mutual mistake specific allegations regarding whether Sasson had reason to believe Zevada would not have accepted provisions 4.3 and 4.4 if the agreement had contained those provisions. While Zevada deleted the "allegation that the unilateral mistake of fact by Zevada 'was known or suspected by Sasson'... from the second amended complaint because it [concluded the allegation] was superfluous and unnecessary," the failure to apprehend the importance of the allegation is not a basis to sustain a demurrer. The appropriate standard of review is to consider whether there is a reasonable possibility that the pleading can be cured by amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

For similar reasons, Zevada may be able to state a cause of action for reformation based on unilateral mistake. Reformation based on unilateral mistake is appropriate if the mistake renders the enforcement of the contract unconscionable or the other party

had reason to know of the mistake or caused the mistake. (Rest.2d Contracts, § 153, p. 394.) Zevada should be allowed to amend its complaint to allege that Sasson had reason to know of the mistake or caused the mistake.

Zevada alleges that the contract is unconscionable, but as a matter of law it is not. (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 851 [whether a contract is unconscionable is a question of law].) Unconscionability contains both procedural and substantive elements. (*Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165.) " ' "The procedural element focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice.... Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." ' " (*Id.* at p. 1165.)Zevada alleges that he entered into negotiations with Sasson and agreed to a compromise undermining any claim that he was not provided an opportunity to negotiate. The contract attached to the complaint shows that the objected to provisions are not hidden, but clearly listed under the heading "rent." In addition, the only allegation of substantive unconscionability is that Zevada is required to pay a higher percentage of its profits. Because the allegations in the complaint contradict any claim of procedural unconscionability, Zevada may proceed on his cause of action for unilateral mistake only if he can allege that Sasson had reason to know of the mistake or caused the mistake.

### III. *Noveck's Alleged Negotiation*

**\*6** Sasson argues that "Mr. Noveck's knowledge of the contents of the lease is imputed to plaintiff and, as a matter of law, negates any right to reformation." That argument implies that Noveck had actual knowledge sections 4.3. and 4.4 were included in the Lease. That implied fact is not appropriate at this stage of the proceedings. The complaint alleges Noveck knew provision 4.3 and 4.4. "were not to be contained in the lease...." And the malpractice

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.